UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------------------------------------

Donna Hodge, Annette Hall, Karen Grant Williams, Alexi Arias, Albert E. Percy, and Percy Jobs and Careers Corporation an IRC 501(c)(3) non-profit, as Class Representative,

       Plaintiffs,

       -against-

All American School Bus Corp.; Allstate Administrators, LLC d/b/a Allstate ASO; Amerifalls, LLC D/B/A Niagara Rehabilitation and Nursing Center; Assistcare Home Health Services, LLC d/b/a Preferred Home Care of New York; Atlanticare Management LLC d/b/a Putnam Ridge; Avalon Gardens Rehabilitation & Health Care Center, LLC d/b/a Brookside Multicare Nursing Center and B&B Management LLC; Bay Park Center for Nursing & Rehabilitation LLC; Bay Park Center for Nursing and Rehabilitation LLC; South Point Plaza Nursing and Rehabilitation Center d/b/a Bayview Manor LLC; Bayview Rest Home, LLC d/b/a Bayview Home for Adults; Besure Home Health Services, Inc.; Birchwood Suites Realty LLC d/b/a Birchwood Rest Home; Blue Star Staffing, LLC; BNH Beach 17th St. LLC; Brookhaven Rehabilitation and Health Care Center, LLC; Caring Companion Services; Caring Professionals, Inc.; Cayuga Ridge, LLC d/b/a Cayuga Ridge Extended; Clear Choice Medical PC; Cold Spring Acquisition, LLC; Comfort Loving Care, Inc.; Comprehensive at Dunkirk LLC D/B/A Symphony Living at Dunkirk; Comprehensive at Lancaster LLC D/B/A Symphony Manor at Lancaster; Comprehensive at Orleans LLC, Comprehensive at Orleans-Payroll LLC,; Comprehensive at Williamsville LLC; Comprehensive at Williamsville-Payroll LLC; Comprehensive Cleaning Corp. D/B/A Comprehensive Cleaning Company; Curis Medical Staffing, LLC D/B/A Curis Medical Staffing, LLC; Diamond Hill Operator LLC D/B/A Diamond Hill Nursing and Rehabilitation Center; Eagle Home Care LLC D/B/A Eagle Home Care LLC; Eastchester Rehabilitation and Health Care Center, LLC; Elcor Management, LLC; Elcor Operating Company, LLC; Expert Care Staffing, LLC; Fair Management Consulting Company, LLC D/B/A Fair Management Consulting Co.; Garden Care Center, Inc.; Garden Home Care, LLC; Golden Gate Rehabilitation and Health Care Center LLC; Golden Living Centers, LLC; Greater New York Home Care, Inc.; Greater New York Home Care, LLC D/B/A Greater New York Services Inc.; Greenbriar Adult Home, LLC D/B/A Greenbriar Home for Adults; Harry's Nurses Registry, Inc.; HCS Certified Home Care NY, Inc. D/B/A Girling Home Care of NY, Inc.; HCS Home Care of Westchester D/B/A  A&J Home Care, Inc. & Careseekers; Heart to Heart Home Care D/B/A  Mrs. Mary's Place HCS, Inc.; Heart to Heart Management LLC; Highgate LTC Management LLC D/B/A Northwoods Rehabilitation & Extended Care - Cortland; Highgate LTC Management LLC D/B/A Northwoods Rehabilitation & Extended Care - Hilltop; Highgate LTC

**COMPLAINT**
Case No:

Management LLC D/B/A Northwoods Rehabilitation & Extended Care - Rosewood; Highgate LTC Management LLC D/B/A Northwoods Rehabilitation & Extended Care; Highgate LTC Management, LLC d/b/a Northwoods Rehabilitation & Extended Care – d/b/a Northwoods Rehabilitation & Extended Care; Home Attendant Service of Hyde Park, Inc.; Home Health Care Services of New York Inc. D/B/A HCS Home Care; Hudson Pointe Acquisition LLC D/B/A Hudson Pointe at Riverdale Center for Nursing & Rehabilitation; Kingsbridge Heights Receiver, LLC; Laconia Nursing Home, Inc.; Little Neck Care Center, LLC; Little Neck Nursing Home LLC ("Little Neck"); Magna Management, LLC; MB Consultants, Ltd D/B/A Murray's Chicken; MB Food Processing, Inc.; Monsey Family Drugstore LLC; Morans Rest Home LLC; NAE Edison, LLC D/B/A Edison Home Health Care, LLC ; Nassau Operating Company, LLC; New Carlton Rehab & Nursing Center LLC; New Surfside Nursing Home; Niskayuna Operating Co., LLC d/b/a Pathways Nursing & Rehabilitation Center; NMC Acquisition, LLC d/b/a Nathan Miller Center for Nursing Care; North Sea Associates, LLC; Norwich Operating Co., LLC d/b/a Norwich Rehabilitation and Nursing Center; Omega Care Services, Inc. D/B/A Living Waters Home Care Agency; Optima Care Smithtown LLC D/B/A Brookside Multicare Nursing Center F/K/A Avalon Gardens Rehabilitation and Health Care Center, LLC; Optima Care Smithtown, LLC; Palffy Group, LLC; Park Avenue Operating Company, LLC; Parkview Care and Rehabilitation Center, Inc; Pharney Group, LLC; Premier Rehab Solutions, LLC d/b/a Sunharbor Manor; Prokeep Inc.; Ramapo Manor Nursing Center, Inc; Receiver Services, LLC D/B/A Harbour Health Multicare Center for The Living; Rosewood Care, LLC d/b/a Rosewood Rehabilitation and Nursing Center; Rosewood D/B/A Northwoods Rehabilitation & Extended Care –Troy; Ross Health Care Center, Inc.; Sanford Home for Adults, LLC; SC & BP Services, Inc.  D/B/A SC & Bp Services, Inc.; Sentosa Care, LLC; Shorefront Operating, LLC d/b/a Seagate Rehabilitation & Healthcare Center; Stat Portable X-Ray, Inc.; Sunharbor Acquisition I, LLC d/b/a Sunharbor Acquisition, LLC; TCPRNC LLC d/b/a The Plaza Rehab & Nursing; Throgs Neck Operating Company, LLC; Townhouse Operating Company, LLC; Troy Operating Center, LLC d/b/a Diamond Hill Nursing and Rehabilitation Center; Upstate Dairy Farms, Inc.; West Lawrence Care Center Inc. d/b/a West Lawrence Care Center, LLC; White Plains Center for Nursing, LLC; Willoughby Rehabilitation & Health CareCenter LLC; Woodmere Dialysis, LLC; The Five Towns Premier Nursing Home and Rehabilitation Center; Woodmere Rehabilitation and Health Care Center, Inc. d/b/a Five Towns Premier Rehabilitation and Nursing,

Employer Defendants,

Gabor Adler; George Adler; Kwame Amoafo-danquah; Agnes Arnestein; Anthony Bacchi; Matthew Barbara; Paul Barbara; Aaron Becher; Pola Becher; Hershel Bedansky; Howard Belford; Scott Bialick; Robert Bleier; David Bloom; Paula Bokow; Joel Brach; Natan Brach; Barry Braunstein; Murray Bresky; Steven Brown; Philip Buchsbaum; Richard Busell; Colin

C. Hart; Ira Cammeyer; Alan Chopp; Joshua Chopp; David Cohen; David Crytryn; David Dachs; Solomon Eidlisz; Neil Einhorn; Scott Einiger; Abraham Eisen; Sam Eisen; Steve Eisman; Ignatius Elefant; Philipson Family Trust; Martin Farbeblum; Benjamin Farbenblum; Edward Farbenblum; Martin Farbenblum; Michael Farbenblum; Ed Farbenblum; Esther Farkovitz; Martin Farbenblum; Jordan Fensterman; Lori Fensterman; Robert Fensterman; Staci Fensterman; Samuel Ferrara; Mayer Fischl; Benjamin Fishoff; Patrick Formato; John Francher; David Freid; Moshe Freilich; Andrew Freundlich; Sigmund Freundlich; Leo Friedman; David Gast; Louis Gellis; William Gillick; Rivky Goldberger; Leon Goldenberg; Jeffrey Goldstein; Anne Gottlieb; Miklows Gottlieb; Niklos Gottlieb; Solomon Green; Joel Greenberg; Eric Greenberger; Eli Greenspan; Steven Greenstein; Avrumi Grossman; Marton Guttman; Valarie Henry; Johanan Hirsch; Leopold Hirsch; Libe Hirsch; Ruth Hirsch; David Hoffman; Pinchus Hoffman; Steven J Eisman; Anthony J. Bacchi; Jack Janklowicz; Leonard Janklowicz; Jack Janklowitz; Leonard Janklowitz; Shorefront Jewish Geriatric Center; David Jones; Judith Jones; Mendel Kaff; Eric Kalt; Yoel Karpen; Miriam Karpf; Allen Kass; Martin Kass; Martin Katz; Shelley Katz; Manny Kaufman; Yosef Kaufman; C Kenneth Tesslar; Alan Kessler; Arnold Klapper; George Klein; Larry Klein; Eleanor Kluger; Robert Kolman; Dean Korlik; William Korn; Irina Kostetsky; Howard Krant; Ephram Lahasky; Benjamin Landa; David Landa; Yechiel Landa; Nathan Landau; James Lapolla; Tibor Lebovich; Morty Lehasky; David Leifer; Barry Leistner; Chana Lerner; Michael Levitan; Rich Levitan; Teddy Lichtscein; Neuman LJ Partners; Isaac Madeb; Dovi Marc Faivish; Sam Mayerovitz; Girshas Minster; Neuman MN Partners; Gavriel Mordechaev; Gabriel Mordechey; Sharyn Mukamal; Katherine Muller; Laurie Netzer; Neuman Nn Partners; Leo Oberlander; Sander Oberlander; Milton Ostreicher; Susan Ostreicher; Irwin Peckman; Ben Philipson; Deborah Philipson; Bent Phillipson; Robert Pines; Israel Pollack; Jacob Pollack; Natan Pollack; Sylvia Pollack; Renee Pollak; Theodore Pollak; Michael Pruzansky; Diana R. Koehler; Jonathan Redner; Lawrence Reichenberger; Mark Reisman; Bursek Richard; Mayer Rispler; Brian Rosenman; Kenneth Rozenberg; Berish Rubenstein; Dina Rubenstein; Rivkie Rubenstein; Ira Rubin; Malky Saffran; Boruch Schepps; Pamela Schepps; Nat Scherman; Richard Schildron; Samuel Schlesinger; Jacob Schoenberger; Michael Scwartz; Leslie Shafrank; Henry Shayovitz; Agnes Shemia; Jeff Shemia; Alexander Sherman; Israel Sherman; Leah Sherman; Nat Sherman; Samuel Sherman; Warren Sherman; Hindy Sirkis; Moshe Sirkus; Motel Sirkus; Alexander Skoczlas; Joseph Skoczylas; Tali Skoczylas; Dominic Spira MD; Jonathan Steinberg; Miriam  Steinberg; Ronald Stern; Mariam Sternberg; Lorraine Takesky; Mitch Teller; Kenneth Tessler; Aaron Unger; Eila Vinitzky; Julia Vinocurova; Jeffrey Vogel; Sherman Vogel; Peggy Weberman; Philip Weberman; Toby Weinberger; Zoltan Weinberger; Regina Weinstock; Ari Weiss; Berish Weiss; Berry Weiss; Michael Weiss; Robyn Weiss; Shlomie Weiss; Chaya Willinger; Robert Wolf; Peyman Younesi; Mark Zaffrin; Ephraim Zagelbaum; Kenneth

Zitter; David Zohler,
                              Owner Operator Defendants,

Local 1199 of the Service Employees International Union,
                              Union Defendant,

Oriska Insurance Company,
                              Carrier Defendant,

Rashbi Management, Inc.,
                              Trust Defendant,

Oriska Corporation derivatively to the Carrier Defendant and by
Subrogation to the Class,
                              Derivative Defendant.
-----------------------------------------------------------------------------------------

The Plaintiffs, Donna Hodge, Annette Hall, Karen Grant Williams, Alexi Arias, Albert E. Percy, Percy Jobs and Careers Corporation an IRC 501(c)(3) non-profit, as Class Representative, by their attorney James M. Kernan, ask the indulgence of the reader, as we try to describe the events in which we are even now continuing to be engulfed, for all of the deficiencies by this Complaint that have dared on this pleading to bring forth so great an urgency, state as follows:

## INTRODUCTION

1. This case is about negligent failure of the Employer Defendants to monitor and supervise the operation of their Employee Income Security Retirement Act ("ERISA") Plan for the benefit of the employee Class Plaintiff.

## JURISDICTION

2. Federal question jurisdiction exists in this case based on preemption of Plaintiffs' claims under the Employee Retirement Income Security Act of 1974, ("ERISA"), 29 U.S.C. § 1001 et seq. (1132(a)). This court has original jurisdiction over ERISA actions and subject matter jurisdiction to entertain this action under 28 U.S.C. §§ 1331 and 1345, 29 U.S.C. § 1132(e), 29 U.S.C. § 1001 et seq. and "prohibited transaction penalty proceedings" (as defined in §2570.2(o) under section 502(i) of the ERISA). To the extent that any claim in the Complaint is not preempted, it forms part of the same case or controversy under 28 U.S.C. § 1367(a).

3. Federal question jurisdiction also exists in this case based upon the Occupational Security Occupational Safety and Health Act of 1970 ("OSHA"), 29 U.S.C. § 651 et seq.

4. Federal question jurisdiction also exists in this case based upon the Civil Rights Act of 1964 as amended in 1991, 42 U.S.C. § 2000 E-2 et seq.

## DEFINITIONS

5.    The five prerequisites for an ERISA welfare benefit plan, program or fund are a: "(1) plan, fund or program, (2) established or maintained, (3) by employers, (4) for purpose of providing for health, statutory disability, workers' compensation, apprenticeship, training, continuing education, safety to participants or their beneficiaries of the Employers."

6.    The assets of a plan, fund or program under by ERISA, may be used only for two purposes: (1) to pay benefits to participants and beneficiaries, (2) to pay the reasonable expenses of administering their Plan.

7.    The Class named herein is the real party in interest with standing to sue under ERISA Section 502(a)(2) for relief under ERISA Section 409, 29 U.S.C. § 1109 and Section 409(a).

8.    The Employer Defendants are plan sponsors of their Plan and Program.

9.    Trust Defendant Rashbi Management, Inc. is the settlor and administrator of a trust for the Plan and Program.

10.   The Class asserts claims for relief for benefits under the Plan and Program.

11.   Under ERISA, the Employer Defendants' Plan is required to be administered "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of ... providing benefits to participants and their beneficiaries." 29 U.S.C. § 1104(a)(1).

12.   The Plan assets must be maintained in a Plan trust to provide payment for benefits, to comply with the Program and ERISA.

13.   The Employee Retirement Income Security Act (ERISA), codified at 29 USC§ 1001 et seq., governs "employee welfare funds", which are defined, 29 USC§1002(1) "as: any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries."

14.   The Program was established and maintained by the Employer Defendants for the purpose of providing benefits for its participants or their beneficiaries, through the purchase of insurance covering health, disability and workers' compensation.

15.   Each of the Employer Defendants are plan sponsors ("Plan Sponsors") under the Program, the employer-sponsored Program governed by ERISA, in which the Class of employees participate.

16.   Employer Defendants, as a result of exercising control and management over Fund Assets under 29 U.S.C. 186(c)(5) "employee benefit plans" within the meaning of 29 U.S.C. 1002(37), (1), (2) and (3), the Employer Defendants are fiduciaries under ERISA, as defined in 29 U.S.C. § 1002(1)(a) of ERISA.

17. Under ERISA, a fiduciary is required to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries, for the exclusive purpose of providing benefits to [them]." 29 U.S.C. §1104(a)(1).

18. The Owner Operator Defendants are Parties in Interest and/or fiduciaries, along with a myriad of other persons named as Parties in Interest pursuant to ERISA § 3(14), 29 U.S.C. § 1002(14) which defines a "party in interest" to an employee benefit plan, in relevant part, as:"(A) any fiduciary (including, but not limited to, any administrator, officer, trustee, or custodian), counsel, or employee of such employee benefit plan; (B) a person providing services to such plan; (C) an employer any of whose employees are covered by such plan; and (D) an employee organization any of whose members are covered by such plan."

19. ERISA Section 502(a)(2) provides for relief under ERISA Section 409, 29 U.S.C. § 1109 and Section 409(a) which provides that a fiduciary is personally liable to a plan for any losses their Plan suffers as a result of the fiduciary's breach and must restore to their Plan any profits the fiduciary realized as a result of a misuse of plan assets to the damage of Plaintiffs. Carrier Defendant is subrogated to the rights of the Defendant Class.

20. ERISA § 406, 29 U.S.C. § 1106, prohibits certain transactions between their Plan and Parties in Interest. Specifically, ERISA § 406(a) (1), 29 U.S.C. § 1106(a) (1), provides: "A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect(A) sale or exchange, or leasing, of any property between the plan and a party in interest;(B) lending of money or other extension of credit between the plan and a party in interest;(C) furnishing of goods, services, or facilities between the plan and a party in interest;(D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan; or (E) acquisition, on behalf of the plan, of any employer security or employer real property in violation of section 1107(a) of this title."

21. Under 29 U.S.C.S. §1003(b)(3), their Plan of the Employer Defendants must be maintained solely for the purpose of complying with applicable workers' compensation laws, therefore their Plan and Program is preempted by ERISA, 29 U.S.C.S. § 1001 et seq.

22. As part of the scheme the Employer Defendants as fiduciaries used Fund Assets to satisfy other personal or business obligations or otherwise underfunded the obligations, breaching their fiduciary duty under ERISA. Under ERISA, any person who is a fiduciary with respect to the plan who breaches any one of the responsibilities, obligations, or duties imposed upon fiduciaries is personally liable "to make good to such plan any losses to the plan resulting from each such breach, and to restore the plan any profits of such fiduciary which have been made through the use of assets of the plan by the fiduciary..." 29 U.S.C. §1109(a).

**This case is to recover damages from the Employer Defendants and their Owner Operator Defendants for liability to the employee Class Plaintiff for mismanagement of employment activities and practices regarding an ERISA Plan**

23. The Employer Defendants and the Owner Operator Defendants established a Plan, "established or is maintained for the purpose of providing benefits for its participants or their beneficiaries, through the purchase of insurance or otherwise," the beneficiaries being employee Class Plaintiff. Reference Intervention Pg 107 Par 229.

24. Each Employer Defendants retained authority of their Plan assets and payments from their Plan as fiduciaries. Under ERISA, any person who is a fiduciary with respect to the plan who breaches any one of the responsibilities, obligations, or duties imposed upon fiduciaries is personally liable "to make good to such plan any losses to the plan resulting from each such breach, and to restore the plan any profits of such fiduciary which have been made through the use of assets of the plan by the fiduciary..." 29 U.S.C. §1109(a). Intervention Pg 136 Par 336.

25. The Employer Defendants and their Owner Operator Defendants failed to manage employment benefits and breached fiduciary duties to members of the Class Plaintiff. This Case is for benefits that were not provided by the Employer Defendants under an Employee Retirement Income Security Act ("ERISA") Plan and Program. The Plan under the Program is established and maintained by Employer Defendants engaged in commerce or industry or activity affecting commerce, governed by 29 U.S.C. § 1003, as an "employee benefit plan" defined as a "welfare benefit plan" under 29 U.S.C. § 1002(3).

26. The Employer Defendants and their Owner Operator Defendants have a duty arising from governance and fiduciary responsibility over Plan assets, which has been breached causing liability arising out of mismanagement of employment activities and practices by:

   a. Failing to have in place policies and procedures to manage benefits expensed for their employees, the Class Plaintiff;
   b. Failing to establish and monitor material internal control of payment and transfer of funds within and out of the Plan pursuant to the plan deficiencies, such as the handling of Plan assets or poor plan administration or accounting procedures;
   c. Failing to identify and monitor the Plan activities and transfer of funds, now discovered by the Plaintiffs to be prohibited transactions involving the Plan;
   d. Failing to monitor the flow of funds within the Plan in order to determine that the contributions to the plan were used exclusively for and timely applied to the purposes of Plan for the Plan beneficiaries and participants;
   e. Failing test to determine whether contributions to the Plan were used exclusively for the beneficiaries of the Plan;
   f. Failing to review and supervise the operation of the Plan to determine that Plan assets were utilized to the purposes of the Plan;

g.  Failing to review and supervise the disposition of any and all Plan assets to determine compliance with ERISA;

h.  Failing to assure that Plan assets which were accrued and expensed by the Employer Defendants were maintained in trust to provide benefits;

i.  Failing to assure that the financial statements of the Plan fairly presented the financial condition of the Plan, and to detect any fraud that would affect the operation of the Plan to check for prohibited transactions, or other ERISA violations.

27.  It is foreseeable to the Employer Defendants and the Owner Operator Defendants that the members of the Class Plaintiff are employees within the zone of persons covered by these duties, the breach of which has caused damages to the employee Class Plaintiff.

28.  This mismanagement of Plan assets resulted in staff that was sorely unprepared, unskilled, and untrained, lacking basic safety and risk management knowledge, tools and supervision to protect themselves as the Class, the patients they care for, and the public. Then the COVID-19 pandemic struck, causing illness, injury and death.

29.  COVID-19 is a communicable disease, communicable as were other diseases through history, such as tuberculosis, smallpox, polio, various strains of flu, and other pestilence identified as far back as biblical times. The training, knowledge, equipment, and supervision to address COVID-19 are the same protocols known for ages: quarantine, sterilization, proper use of protective equipment, just basic good practices. Much literature existed from the State and the Center for Disease Control ("CDC"), but that knowledge was not imparted to staff. The Plan assets should not have been diverted from benefiting the employee Class, ignoring the need for training and continuing education, as well as ignoring the ERISA purpose to provide benefits for disability, medical and lost wage reimbursement.

30.  From the ATTORNEY GENERAL REPORT of January 30, 2021 COVID-19 pandemic and the OAG investigation findings to date: The pandemic has laid bare the risks to vulnerable nursing home residents that are inherent in deficient staffing. AG Report page 23.

31.  When in March 2020 the pandemic struck, the images of workers in bubble suits, personal protection equipment, was not visible, as it is today.

32.  As nursing home residents and staff COVID-19 infections rose during the initial wave of the pandemic, staffing absences increased at many nursing homes. As a result, pre-existing low staffing levels decreased further to especially dangerous levels in some homes, even as the need for care increased due to the need to comply with COVID-19 infection control protocols and the loss of assistance from family visitors. AG Report page 23.

33.  There were complaints of alleged critically low staffing levels at the facility and one resident's son voiced concern about the care his mother was receiving. His mother was

never tested for COVID-19, but later died while exhibiting COVID-19 symptoms. For several weeks, the facility was short of caregivers due to COVID-19 illness and quarantine, and most of its management was either out ill or working remotely. AG Report page 24.

34. During one period of time between late March and early April of 2020, at one facility the director of nursing, the assistant director of nursing, and the medical director were all out ill and the administrator was working from home, leaving onsite management of the entire facility in the hands of just two nurse supervisors. Two to three weeks later, residents started dying from COVID-19. During the week of April 5, 2020, 33 residents died – 15 percent of all the patients in the facility. In mid-April, the administrator was overwhelmed and stated that the facility's greatest need was staffing. The OAG Report found insufficient staffing, especially on the weekends. AG Report page 24.

35. An RN stated that during a weekend late in May, during the day shift, one nurse called out and another nurse was a "no call no show," leaving one nurse for the entire building. The same RN stated that on a later day in May, she worked an overnight shift for which she was the only nurse for three units. Facility records indicate that only one nurse was on duty during the day shift the following day. AG Report page 24.

36. Another employee alleged that the staffing levels at the facility were so low that CNAs, rather than nurses licensed to do so, were dispensing medications to residents. According to various staff members, the facility required staff who were not licensed clinicians to take an eight-hour temporary CNA course and to cover shifts working as CNAs. AG Report page 24.

37. For-profit nursing homes in the New York City area with low staffing levels were decreased further in March due to staff illness and quarantine from COVID-19. A nursing supervisor alleged in mid-April that she had been working for 21 days straight, 14 hours per day, and described a facility stretched to the absolute limit to care for its residents. The following week, the nurse and the administrator conveyed that staffing levels had improved and that staff who had been out sick and quarantined were returning to work, staff were working extra shifts, and the facility used agency staffing of direct caregivers to supplement care provided by facility employees. AG Report page 24.

38. Then there occurred the now-reversed DOH March 25, 2020 directive regarding nursing homes, which reads: "No resident [of a nursing home] shall be denied re-admission or admission to the NH (nursing home) solely based on a confirmed or suspected diagnosis of COVID-19. NHs are prohibited from requiring a hospitalized resident who is determined medically stable to be tested for COVID-19 prior to admission or readmission."

39. Pre-pandemic low staffing model simply snapped under the stress of the pandemic, AG Report page 24.

40. Staff would have been tried and proven if the Employer Defendants' ERISA Plan had been allowed to function for the benefit of the employee Class Plaintiff. The Employer

9

Defendants' Plan meets the five prerequisites for an ERISA welfare benefit plan: "(1) plan, fund or program, (2) established or maintained, (3) by employers, (4) for purpose of providing for health, statutory disability, workers' compensation, apprenticeship, training, continuing education, safety to participants or their beneficiaries of the Employers." Intervention Pg. 107 Par 230 (refers to the Amended Complaint in Intervention[1]).

41. The assets of their Plan, under ERISA, may be used only for two purposes: (1) to pay benefits to participants and beneficiaries, (2) to pay the reasonable expenses of administering their Plan. Intervention Pg. 108 Par 231.

42. The Class named herein is the real party in interest with standing to sue under ERISA Section 502(a)(2) for relief under ERISA Section 409, 29 U.S.C. § 1109 and Section 409(a). Intervention Pg. 108 Par 232.

43. The Employer Defendants are plan sponsors of the Program. Intervention Pg. 108 Par 233.

44. The Class asserts claims for relief for benefits under the Program. Intervention Pg. 108 Par 234.

45. A sub-class of employees (the "Defendant Sub Class") is those injured on the job while working for the Employer Defendants. Intervention Pg. 108 Par 235.

46. An additional sub-class of employees is black and Spanish surnamed persons previously certified as a class as hereinafter set forth (the "Percy Sub- Class ").

47. Under ERISA, the Employer Defendants' Plan is required to be administered "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of … providing benefits to participants and their beneficiaries." 29 U.S.C. § 1104(a)(1). Intervention Pg. 108 Par 236.

48. Employer Defendants have failed to maintain their Plan assets in a Plan trust to provide payment for benefits, negligently failing to comply with the Program and ERISA. Intervention Pg. 108 Par 237.

49. This case is about failure to monitor and supervise the operation of their Plan to invest in staff, the employee Class Plaintiff, the benefit funds as set forth herein. Staff referred to herein, and by the report of the New York State Attorney General, referenced here as the AG Report, is the employee Class Plaintiffs for these Employer Defendants.

50. If the benefits had been provided, especially the training, apprenticeship, and continuing education, the debacle now known as the COVID-19 pandemic, would have been

---

[1] Intervention refers to the Amended Complaint in Intervention in an intervention by Order of Justice Libert in Nassau County Action Index number 609877/2019,which was not appealed and is final, now removed to related Case 20-cv-06291.

To access the document in the link above you may need to register for a Free Pacer Account. https://pacer.psc.uscourts.gov/pscof/registration.jsf

manageable. These are welfare benefits regulated by ERISA, benefit funds paid into a Plan under ERISA, a Plan that was not administered for the benefit the employee Class Plaintiff. The diversion easily proven is traced from Medicaid/Medicare payment to the Employer Defendants, Owner Operator Defendants and Parties-in-Interest Defendants. The diversion in fact exceeds \$68 million when considering all the Employer Defendants identified in this Complaint.

51. The negligence of the Employer Defendants may never have been discovered but for the advent of the spread of the COVID-19 pandemic.

52. The defalcation regarding the ERISA Plan assets that the Employer Defendants and Owner Operator Defendants failed to detect, as set forth herein became known when Oriska Corporation commenced actions against some of the Employer Defendants to subrogate for the injuries sustained due to the unsafe workplace, negligence and culpability of the Employer Defendants, in the following cases which have all been removed to Federal Court in their respective listed districts. Intervention Pg. 13 Par 18. The Amended Complaint in Intervention in an Action in Nassau County Index 09877/2019 references the following lawsuits:

1 NASSAU EFCA 615390/2019, EDNY Case No. 2:21-cv-00454-JMA-ARL Pg. 13 Par 18
2 RICHMOND EFCA 152540/2019, EDNY Case No. 2:21-cv-00454-JMA-ARL Pg. 13 Par 18
3 SCHENECTADY 2019-2469, 1:21-cv-00104-MAD-DJS Pg. 13 Par 18
4 BRONX EFCA 33061/2019E, SDNY Case No. 1:21-cv-00762-LJL Pg. 13 Par 18
5 QUEENS EFCA 718647-2019, EDNY Case No. 2:21-cv-00454-JMA-ARL Pg. 13 Par 18
6 NASSAU EFCA 615382/2019, EDNY Case No. 2:21-cv-00454-JMA-ARL Pg. 13 Par 18
7 QUEENS EFCA 718651-2019, EDNY Case No. 2:21-cv-00454-JMA-ARL Pg. 13 Par 18
8 SCHENECTADY 2019-2470, NDNY Case No. 1:21-cv-00109-MAD-DJS Pg. 13 Par 18
9 WESTCHESTER EFCA 68209-2019, SDNY Case No. 1:21-cv-00762-LJL Pg. 13 Par 18
10 SUFFOLK EFCA 621892/2019, EDNY Case No. 2:21-cv-00454-JMA-ARL Pg. 13 Par 18
11 NASSAU EFCA 615418/2019, EDNY Case No. 2:21-cv-00454-JMA-ARL Pg. 13 Par 18
12 NASSAU EFCA 615476/2019, EDNY Case No. 2:21-cv-00454-JMA-ARL Pg. 13 Par 18
13 NASSAU EFCA 615372-2019, EDNY Case No. 2:21-cv-00454-JMA-ARL Pg. 14 Par 19
14 KINGS EFCA 524009-2019, EDNY Case No. 2:21-cv-00454-JMA-ARL Pg. 14 Par 18
15 BRONX EFCA 33057/2019E, SDNY Case No. 1:21-cv-00762-LJL Pg. 14 Par 18
16 NASSAU EFCA 615360-2019, EDNY Case No. 2:21-cv-00454-JMA-ARL Pg. 14 Par 18
17 RENSSELAER 2019-264821, NDNY 1:21-cv-00106-MAD-DJS Pg. 14 Par 18
18 QUEENS EFCA 718683-2019, EDNY Case No. 2:21-cv-00454-JMA-ARL Pg. 14 Par 18
19 WESTCHESTER EFCA 68230-2019, SDNY Case No. 1:21-cv-00762-LJL Pg. 14 Par 18
20 KINGS EFCA 524028-2019, EDNY Case No. 2:21-cv-00454-JMA-ARL Pg. 14 Par 18
21 NASSAU EFCA 615348-2019, EDNY Case No. 2:21-cv-00454-JMA-ARL Pg. 14 Par 18
22 SUFFOLK EFCA 621891_2019, EDNY Case No. 2:21-cv-00454-JMA-ARL Pg. 14 Par 18
23 BRONX EFCA 33547_2019, SDNY Case No. 1:21-cv-00762-LJL Pg. 14 Par 18
24 NASSAU EFCA 615286_2019, EDNY Case No. 2:21-cv-00454-JMA-ARL Pg. 14 Par 18
25 QUEENS EFCA 718613-2019, EDNY Case No. 2:21-cv-00454-JMA-ARL Pg. 14 Par 18

26 BRONX EFCA 33060_2019, SDNY Case No. 1:21-cv-00762-LJL Pg. 14 Par 18

53.   Certain identified Employer Defendants sued in Nassau County Action Index 09877/2019 to recover $53 million, which was diverted to a Bermuda insurance enterprise from monies paid by the Employer Defendants.

54.   Within days of Oriska Corporation seeking recovery for the injuries which occurred to injured members of the Class of employees, the Employer Defendants scrambled to retract the Complaint to recover $53 million for insurance fraud in Nassau County Case Index 09877/2019. Intervention Pg. 14 Par 18.

55.   The excess of $68 million obviously exceeds the $53 million that the certain Employer Defendants have admitted.

56.   Defendant Oriska Corporation moved to intervene on behalf of the employees of the Employer Defendants in November 2020, against the Employer Defendants in claiming the $53 million sought by the Complaint filed July 19, 2019 in Nassau County under Index number 609877/2019, uniting in the relief demanded in the July 19, 2019 Complaint reproduced in its entirety at pages 16 through 38 of the Nassau County Amended Complaint in Intervention, but demanding that the recovery be paid into trust.

57.   The employee Class Plaintiffs are the real party in interest as identified by the Nassau County Supreme Court by order of Honorable Jack L. Libert, dated October 7, 2020[2]. This Action was then removed to the EDNY and is now Case 20-cv-06291.

58.   The Plan assets should have been held for the payment of benefits for employees of the Class Plaintiffs for medical care, lost wages, and expenses. But instead, the Employer Defendants did conspire, convert, divert, and embezzle the funds expensed in Cost Reports and financial reports. Employer Defendants accrued and reported benefit expenses to the DOH, but then instead of paying the funds to the trust to self-insure or to a commercial carrier, they paid the funds to operators, managers, and Parties in Interest of the enterprise, a racket to embezzle Plan assets that were paid to Employer Defendants by Medicaid, Medicare, private insurance and private pay, assets supposed to be dedicated by the Plan and Program to provide benefits. Intervention Pg. 14 Par 19.

59.   Oriska Corporation, as the Plaintiff in Intervention, sought return of the $53 million Risk Retention fund identified in the Nassau County Intervention Complaint, as Plan assets. Intervention Pg. 14 Par 20.

60.   The Employer Defendants amended their complaint, removing the causes of action and facts setting forth fraud causing $53 million to be diverted by the Philipson Defendants, replaced with a single cause of action for breach of a contract for money lent of $50,000, pretending that the $53 million causes of action do not exist, are gone, evaporated, the

---

[2] Order of Honorable Jack L. Libert dated October 7, 2020 filed in EDNY Case 20-cv-06291 Document 1 Attachment 2, an Order which was not appealed and is final.

same as the security fund identified in the Complaint as the Risk Retention fund in Action in Nassau County Index 09877/2019. Intervention Pg. 15 Par 21.

61.    It is obvious that the Employer Defendants cannot be trusted to pursue and protect the $53 million or any of the monies identified in this Complaint. Oriska Corporation has been permitted to intervene to prevent a miscarriage of justice by the Employer Defendants by the attempted replacement of the $53 million Risk Retention fund with $50,000. Intervention Pg. 15 Par 22.

62.    Nassau County Plaintiff in Intervention Oriska Corporation repeated and realleged the original Complaint in Nassau County under Index number 609877/2019 filed July 19, 2019, the original Complaint to recover $53 million for the defalcation involving certain Employer Defendants, by reproducing on page 100, paragraph 219 of the Amended Complaint and is likewise realleged here as if more fully set forth. Intervention Pg. 15 Par 23.

63.    Rights of subrogation of Oriska Corporation arises out of common law rights of subrogation, exoneration and contribution, and Workers' Compensation Law §§26, 26-a, 50 and 52, requiring that the Employer Defendants by law disgorge and forfeit funds that have been diverted and wrongfully converted, including but not limited to the security fund identified in the Nassau County Complaint removed to the EDNY in Action Nassau County Index 09877/2019, funds diverted from the Program established and maintained by the Employer Defendants for the purpose of providing benefits for its participants and/or their beneficiaries, by self-insurance or through the purchase of insurance covering health, disability, including training, safety, loss control, risk-management and workers' compensation under the Program. Intervention Pg. 39 Par 24, Pg. 100 Par 216.

64.    The Plaintiffs in Nassau County Action Index number 609877/2019 are certain Employer Defendants of the Class. There are additional Employer Defendants identified in this Complaint covered by the Program as hereinafter described. Intervention Pg. 40 Par 29.

65.    The Trust Defendant Rashbi Management, Inc. is the settlor and administrator of a trust for the Program as hereinafter identified at Intervention Pg. 53 Par 34.

66.    The Employer Defendants, as Plan Sponsors, sponsored the benefit plan (the "Plan" or "Program") for health, disability, apprenticeship and safety training, loss control, risk management and workers' compensation benefits which are the obligations of their Plan. Intervention Pg. 54 Par 35.

67.    The Class are participants in the Program sponsored by the Employer Defendants, with their Plan providing benefits to Class members. Intervention Pg. 54 Par 36.

68.    In this Complaint the Plaintiffs Class encompasses and replaces the individually named Employee Defendants in Nassau County under Index number 609877/2019. Intervention Pg. 13 Par 17.

69.   The Plaintiff Class Representatives of the Defendant Class are Donna Hodge, Annette Hall, Karen Grant Williams, and Alexi Arias, a Class of employees of Employer Defendants. The Class is a class of all employees of the Employer Defendants working for the Employer Defendants covered by the Program identified in this Complaint. The Employee Defendants in the 26 subrogation actions are a sub-class to the Class, being employees injured on the job while working for the Employer Defendants. Intervention Pg. 40 Par 28.

70.   The real Parties in Interest are the employees, the Class, and the Rashbi Trust, being persons damaged by the actions of the Employer Defendants and Owner Operator Defendants, and they must respond in damages in amount set forth at the Second, Third, Fifth, Sixth and Seventh Causes of Action herein.

## FINDINGS OF ATTORNEY GENERAL REPORT of January 30, 2021 Attachment #1 hereto

71.   The New York Attorney General ("AG" or "OAG") has ratified what the employee Class now knows: extreme irreparable harm has been visited upon everyone, in particular staff employees, members of the Class Plaintiff, primarily due to shortcoming in staffing training and competency.

72.   Pre-existing, insufficient staffing levels put residents and staff at increased risk of harm during the pandemic. As nursing home resident and staff COVID-19 infections rose during the initial wave of the pandemic, staffing absences increased at many nursing homes. As a result, already-low staffing levels decreased even further, to especially dangerous levels in some homes, even as the need for care increased due to the need to comply with COVID-19 infection control protocols and the loss of assistance from family visitors Attorney General James Releases Report on Nursing Homes Response to COVID-19 New York State Attorney General page 4.

   COVID-19 exposure is documented to:
        Health care workers
        First responders
        Transportation workers
        Corrections officers
        Food service workers
        Retail workers

73.   The AG Report's found that nursing home operators failed to comply with the State's infection control protocols. The problem is that this triage is all after the fact. Lack of reasonable preparation in readiness was sorely lacking. The OAG Report found that operators failed to properly isolate COVID-positive residents; failed to adequately screen or test employees; forced sick staff to continue working and caring for residents; failed to train employees in infection control protocols; and failed to obtain, fit, and train caregivers with PPE.

74. Staffing in the Nursing Home - Many nursing homes had staff absent with symptoms, self-quarantining, or at home due to child-care issues, since schools are closed and there are few alternative child-care options. Staffing agencies are being stretched thin and have limited ability to fill in gaps. Moreover, agency staff increase risk as these staff may be working in numerous buildings.

75. While New York has minimal staffing level requirements for nursing homes, nursing homes require sufficient staffing levels on a daily basis and over the long haul in order to be able to provide the care required by New York law, including by individualized resident care plans.

76. The main direct caregivers in a nursing home are Certified Nursing Assistants (CNA), Licensed Practical Nurses (LPN), and Registered Nurses (RNs). These staffers are the bulk of the caregivers in a facility and have primary, daily contact with residents. CNAs provide assistance with activities of daily living, such as ambulation, transfers to/from bed, feeding, hygiene, toileting, bathing, dressing, bed cleaning and adjustments, turning and positioning of immobile patients, and other care and comfort. LPNs primarily focus on medication administration, monitoring vital signs, and providing certain treatments. RNs primarily focus on acute care needs, complex treatments, compliance with medical orders, communication with physicians and specialists, record-keeping, and complex health assessments. AG Report page 22.

77. CNAs, LPNs, and RNs are the bulk of the caregivers who have primary, daily contact with residents. CNAs aid with activities of daily living, such as ambulation, transfers to/from bed, feeding, hygiene, toileting, bathing, dressing, bed cleaning and adjustments, turning and positioning of immobile patients, and other care and comfort. LPNs primarily focus on medication administration, monitoring vital signs, and providing certain treatments. RNs primarily focus on acute care needs, complex treatments, compliance with medical orders, communication with physicians and specialists, record-keeping, and complex health assessments AG Report page 22.

78. According to the AG Report, the business model in too many for-profit nursing homes that: (1) seeks admission of increased numbers of residents to increase income per occupied bed; (2) assign low numbers of staff to cover the care needs of as many residents as feasible; and (3) transfers facility funds to related parties and investors that the home could otherwise invest in staffing to care for residents – essentially taking profit prior to ensuring care AG Report page 23.

79. Then, on March 25, 2020 DOH issued an order under the authority of providing that "no resident shall be denied re-admission or admission to the nursing home solely based on a confirmed or suspected diagnosis of COVID-19. Nursing homes are prohibited from requiring a hospitalized resident who is determined medically stable to be tested forCOVID-19 prior to admission or re-admission." The guidance was rescinded on May 10, 2020 in Executive Order 202.30. From March 25 to May 8, 2020, 6, 326 hospital patients were admitted to 310 nursing homes. The peak of these admissions was the week

of April 14. [Footnote 44 of AG Report] The peak single day in reported resident COVID-19 deaths was April 8, 2020 with 4,000 reported deaths occurring after that date. AG Report page 36.

80.   Many nursing home industry and other commentators have criticized DOH's March 25, 2020 guidance as a directive that nursing homes had to accept COVID-19 patients who were infectious. [Footnote 45 of the AG Report]. At the same time, the March 25 guidance was consistent with the CMS guidance on March 4, 2020 that said nursing homes should accept residents they would have normally admitted, even if from a hospital with COVID-19, and that patients from hospitals can be transferred to nursing homes if the nursing homes have the ability to adhere to infection prevention and control recommendations. AG Report page 36.

81.   The AG reported data linking the number of nursing home deaths to the admissions policy contained in the March 25, 2020 guidance is obscured by that same guidance, which also prohibited nursing homes from requiringCOVID-19 testing as a criterion for admission. This phenomenon was compounded by both the March 21, 2020 directive that largely paused the testing of downstate residents, and the under-reporting of nursing home deaths generally (as previously discussed). AG Report page 37. [Footnote 43 AG Report] DOH, Advisory: Hospital Discharges and Admissions to Nursing Homes, March 25, 2020 DOH Revised Report at pp. 4-5. AG Report page 71.

82.   New York law requires a nursing home to "accept and retain only those residents for whom it can provide adequate care." See Footnote 45 AG Report and10 NYCRR § 415.26(i)(1)(ii). AG Report page 72.

83.   DOH's March 25, 2020 order directing nursing homes to accept incoming residents known to have the corona virus, an order that the Commissioner of the DOH did not rescind until May 10, stands out as foolish and disastrous, especially because New York was warned of the danger.

84.   The CDC's guidance at the time of the March 25, 2020 state order was that COVID-19 patients who are medically stable can be discharged from a hospital to a nursing home, but only if the nursing home can implement all recommended infection control procedures.

85.   The March 25, 2020 advisory has been removed from the state website, and the state's directive to nursing homes is now much different. DOH issued an executive order on May 10, 2020 which states that hospitals "shall not discharge a patient to a nursing home, unless the nursing home operator or administrator has first certified that it is able to properly care for such a patient." The order also requires that a patient must be tested for COVID-19, and the test must be negative.

86.   The CDC's guidance at the time of the March 25, 2020 state order was that COVID-19 patients who are medically stable can be discharged from a hospital to a nursing home, but only if the nursing home can implement all recommended infection control

procedures. That's because the March 25, 2020 memo did not say anything about making sure that a nursing home can care for a patient before making an admission decision and said they "must comply with the expedited receipt of residents."[3]

87.   Why it issued its March 25, 2020 advisory to nursing home administrators, directors of nursing and hospital discharge planners: the explanation was that there was an "urgent need" to free up space in hospitals for seriously ill coronavirus patients. The advisory said all nursing homes "must comply with the expedited receipt of residents returning from hospitals to" nursing homes, and that hospitals must declare residents medically stable before they are sent back to the nursing homes.

88.   Since the mandate took effect, recuperating patients across New York state were discharged to nursing homes, especially where the Employer Defendants have facilities in Staten Island, Queens, Brooklyn, Bronx and Long Island.

89.   Employer Defendants failed to comply with infection control protocols put staff and residents at increased risk of harm during the covid-19 pandemic, AG Report page 17. A facility is required to have an infection control program in which the facility:

> » investigates, controls, and takes action to prevent infections in the facility;

> » determines what procedures, such as isolation, should be utilized for an individual resident to prevent continued transmission of a disease;

> » maintains a record of incidence and corrective actions related to infections. AG Report page 17;

> » restricts all visitors except for compassionate care, such as end-of-life situations;

> » restrict all volunteers and nonessential personnel;

> » Cancels all group activities and communal dining;

> » Screens residents and personnel for fever and respiratory symptoms. AG Report page 18, and incorporates COVID-19 into written emergency plans and instructions on infection control policies. AG Report page 18.

90.   AG investigations indicate that nursing homes, such as Employer Defendants, significantly lacked compliance with infection control protocols resulted in increased risks to residents at a number of facilities. AG Report page 22.

91.   When low staffing levels dropped further due to staff COVID-19 illness or quarantine, there were even fewer staff available to care for residents' needs at these facilities. At the same time, when residents had COVID-19, their individual and collective care needs increased due to the need to comply with COVID-19 infection control protocols. This

---

[3] The CDC's guidance at the time of the March 25, 2020 state order was that COVID-19 patients who are medically stable can be discharged from a hospital to a nursing home, but only if the nursing home can implement all recommended infection control procedures. CMS, a federal agency that regulates nursing homes, issued similar guidance, and also said that preferably, coronavirus patients should be cared for in a dedicated unit.

need increased the workload for the remaining staff providing direct care in several respects, even as low staffing numbers dropped further. These decreases in staffing levels occurred at the same time that necessary visitation restrictions removed the supplemental caregiving provided pre-pandemic by many family visitors at low staff facilities. AG Report page 25.

92.   AG investigations indicate that when there were insufficient staff to care for residents, some nursing homes pressured, knowingly permitted, or incentivized existing employees who were ill or met quarantine criteria to report to work and even work multiple consecutive shifts, in violation of infection control protocols. Thus, poor initial staffing before the pandemic meant even less care for residents during the pandemic, subtraction of any caregivers from an already under-staffed facility, results in increased interaction among possibly infectious staff and residents, with less time for the staff to adhere to proper infection control precautions. AG Report page 25.

93.   Multiple Complaints of Insufficient Staffing: the Office of the AG received several other complaints and allegations of insufficient staffing due to COVID-19 in facilities that had pre-pandemic low staffing, AG Report page 26.

94.   An employee complained that an Employer Defendant for-profit nursing home on Long Island had an insufficient number of staff due to staff being out sick. The facility reportedly tried to fill vacant positions by using staffing agencies but said there was a limited pool of personnel from which it could hire. AG Report page 26.

95.   Government Agencies issued policy may have led to an increased risk to residents in some facilities and obscured the data available to assess the risk. AG Report page 36.

96.   The Employer Defendants failed to implement the Program aspects of an alternative employment practice hereinafter described, including implementing "a system for preventing, identifying, reporting, investigating, and controlling infections and communicable diseases for all residents, staff, volunteers, visitors, and other individuals providing services; " and "precautions to be followed to prevent spread of infections." [Reference to footnote 92 of AG Report] The plan is supposed to be reviewed annually and updated as necessary and the facility must hire an infection preventionist who is responsible for the infection control plan. [Reference to footnote 93 of AG Report]

97.   Finally correcting the State issued policy, the regulation outlining infection control was updated on May 8, 2020 to include specific reporting and communication requirements relating to COVID-19.94 AG Report page 46.

98.   Many nursing homes severely lacked PPE for workers. In some instances, nursing home owners forewent infection control protocols, telling staff that masks and other PPE were not mandatory because they did not have enough supplies. In other cases, re-use of PPE may have contributed to the spread of infection. Nursing homes should be required to have a sufficient inventory of PPE in case of a future outbreak. AG Report page 50.

99.     Employer Defendant facilities were so understaffed due to staff quarantining, working
        from home, and pre-existing low staffing, that the onsite management of the entire
        facility was left in the hands of just a few supervisory nurses, Attorney General James
        Releases Report on Nursing Homes ⅃ Response to COVID-19 New York State Attorney
        General Pg. 4.

100.    The Employer Defendants failed to properly isolate residents who tested positive for
        COVID-19; failing to adequately screen or test employees for COVID-19; demanded that
        sick employees continue to work and care for residents or face retaliation or termination;
        failed to train employees in infection control protocols; and failed to obtain, fit, and train
        caregivers with PPE Attorney General James Releases Report on Nursing Homes ⅃
        Response to COVID-19 New York State Attorney General Pg. 3.

101.    The Office of the AG received reports that nursing homes did not properly screening staff
        members before allowing them to enter the facility to work with residents. Among those
        reports, OAG received an allegation that a for-profit nursing home north of New York
        City failed to consistently conduct COVID-19 employee screening. It was reported that
        some staff avoided having their temperatures taken and answering a COVID-19
        questionnaire at times when the screening station at the facility's front entrance had no
        employees present to take that information or when staff entered the facility through a
        back entrance, avoiding the screening station altogether. Attorney General James
        Releases Report on Nursing Homes ⅃ Response to COVID-19 New York  State Attorney
        General.

102.    The AG reported that in one instance in late April, a nurse supervisor had set up bins in
        front of the units with gowns and N95 masks to make it appear that the facility had an
        adequate supply of appropriate PPE for staff. The nurse alleged that the nurse supervisor
        came in to work unusually early the day of the first inspection and brought out all new
        PPE and collected all of the used gowns. Although the initial DOH survey conducted that
        day did not result in negative findings, DOH returned to the facility for follow-up
        inspections, issued the facility several citations, and ultimately placed the facility in
        "Immediate Jeopardy." Attorney General James Releases Report on Nursing Homes ⅃
        Response to COVID-19 New York State Attorney General Pg. 4.

103.    Insufficient personal protective equipment (PPE) for nursing home staff put residents at
        increased risk of harm during the COVID-19 pandemic in some facilities AG Report page
        6.

104.    Insufficient COVID-19 testing for residents and staff in the early stages of the pandemic
        put residents at increased risk of harm in some facilities. AG Report page 6.

105.    The AG Report identifies in the report what is identified by the Class Plaintiffs in this
        Complaint, by saying: "The current state reimbursement model for nursing homes gives
        a financial incentive to owners of for-profit nursing homes to transfer funds to related

parties (ultimately increasing their own profit) instead of investing in higher levels of staffing and PPE. AG Report page 6."

106. The DOH failed to require nursing homes to comply with labor practices that prevent nursing homes from pressuring employees to work while they have COVID-19 infection or symptoms, while ensuring nursing homes obtain and provide adequate staffing levels to care for residents' needs. AG Report page 7.

107. Employer Defendants did not invest sufficiently in effective training so staff can fully comply with infection control protocols. The State should have held Owner Operator Defendants accountable for failure to have clinically appropriate policies in place and to effectively train staff to comply with them. AG Report page 7.

108.  There was inadequate planning regarding post-mortem care needs and implement and train staff on policies for dignified care of the remains of deceased residents. AG Report page 8.

109. Basic protocols were not followed by the Employer Defendants nursing homes: not followed were required isolation of residents, properly sterilize and store all equipment to prevent the spread of infection. Facilities are required to mandate basic infection control practices including ensuring staff wash their hands after each direct resident contact and properly handle and store linens. AG Report page 18. Lax employee screening put all residents and staff at increased risk of harm, AG Report page 21.

110. The Program sponsoring Employer Defendants so negligently oversaw the operation of the Program by failing to maintain proper controls, policies and procedures regarding control of the Plan assets so as to carelessly and recklessly allow Parties in Interest Prohibited Transaction Defendants, Owner Operator Defendants, and the Employer Defendants themselves, to take, keep and divert tens of millions of dollars of the Plan assets intended for the Program, taken for illegal and unauthorized uses, the various Defendants utilizing these Plan assets for their own purposes, which were purposes not permitted or allowed by the Program because they are prohibited transactions under ERISA.

111. The 42 U.S.C. 2000e-2 cause of action is for refusal of the Employer Defendants to adopt and implement the Program as an alternative employment practice ("Alternative Employment Practice") demonstrated to and purchased by the Employer Defendants. The denial of the Alternative Employment Practice is directed at disadvantaged persons based upon race and color, proof permitted on a 42 U.S.C. 2000e-2 action, a violation shown by the refusal to adopt the Alternative Employment Practice, injuring the Class as disadvantaged persons based on race and color, warranting the award of damages and injunctive relief as detailed herein. Intervention Pg. 8 Par 6.

112. The Union Defendant failed to implement training. The Union Defendant made peace with the Employer Defendants failing to pursue and implement apprentice training to provide the skill level and knowledge necessary to handle a communicable disease, such

as COVID-19. The Union Defendant is part of the problem having failed in its duty to protect the interests of its members, the Union Defendant is part of the mess, the Union Defendant is part of the default in protecting the interests of the employee Class Defendant.

113.   What happened is that the Employer Defendants and the Owner Operator Defendants, in the course of the management of the Program deviated violated drastically from the purposes of the Program and ERISA by failing to put their Plan assets in trust, but instead allowed funds of their Plan to be used for other personal purposes of wrongdoing parties-in-interest, permitting these persons to utilize Plan assets for prohibited personal transactions, all of which had nothing to do with their Plan or Program. The Employer Defendants continued to misuse or allow others to misuse the Employer Defendants' fiduciary control over the Plan assets. This Complaint describes a pattern of conduct of the Employer Defendants and Owner Operator Defendants, who were aided and abetted by State Officers, which has caused their Plan to deny benefits to the employee Class Plaintiff. Intervention Pg. 9 Par 8.

## PARTIES

114.   The Class Representatives of the Plaintiff Class are Donna Hodge, Annette Hall, Karen Grant Williams, and Alexi Arias, a Class of employees of Employer Defendants, as the interests of the Class may here appear. The Class is a class of all employees of the Employer Defendants working for the Employer Defendants covered by the Program identified in this Complaint. The Employee Defendants in the 26 subrogation actions are a sub-class to the Class, being employees injured on the job while working for the Employer Defendants.

115.   Plaintiffs Albert E. Percy, ("Percy") certified as the class representative of the certified class by Judge Lasker in the Memorandum/Order at 384 F Supp 800, page 811 [S.D.N.Y. 1974] in Case 73-cv-04279, the Class certified in Percy v. Brennan, Federal District Court SDNY Case 73-cv-04279, reported at 384 F. Supp 800, at Page 808, docketed in EDNY Case 20-cv-06131, Docket 22, Attachment 2, (the "Class") is fully capable of learning to perform and/or performing skilled occupations as apprentices and journeypersons. The Class defined and certified by Judge Lasker in Case 73-cv-04279 was "all black and Spanish-surnamed persons who are capable of performing, or capable of learning to perform" with Plaintiffs Albert Percy designated as the Class Representative (384 F Supp 800, at page 811 and also at EDNY Case 20-cv-06131, Docket 22, Attachment 2). Percy, as the Complaining Party, a member of the Class, was denied equal employment opportunities, and remains a proper representative of the Class. Percy's personal and business interests and the claims hereinafter set forth are fully aligned with those of the Class.

116.   Plaintiffs Percy Jobs and Careers Corporation is an Internal Revenue Code 501(c)(3) non-profit managing apprentice training at the Maritime College State University Of New York, PO Box 351, 6 Pennyfield Ave, Bronx, NY 10465.

117.    The Employer Defendants are the employers of the Class and are the same as the Plaintiffs as listed in the Complaint in Action in Nassau County Index 09877/2019, plus additional employers covered by the Program as hereinafter described. These additional Employer Defendants are:

120.1.   All American School Bus Corp. ("All American School Bus"), 1108 30th Ave, Queens, NY 11102.

120.2.   Allstate Administrators, LLC d/b/a Allstate ASO ("Allstate"), 462 Ocean Parkway, Brooklyn, NY 11218.

120.3.   Amerifalls, LLC D/B/A Niagara Rehabilitation and Nursing Center, ("Amerifalls"), 822 Cedar Avenue, Niagara Falls, NY 14301.

120.4.   Assistcare Home Health Services, LLC d/b/a Preferred Home Care of New York, ("Preferred Home Care"), 1267 57th St #1P, Brooklyn, NY 11219.

120.5.   Atlanticare Management LLC d/b/a Putnam Ridge, ("Putnam Ridge"), 46 Mount EBO Road North, Brewster, NY 10509.

120.6.   Avalon Gardens Rehabilitation & Health Care Center, LLC d/b/a Brookside Multicare Nursing Center and Optima Care Smithtown, LLC, ("Brookside"), 7 Route 25A, Smithtown, NY 11787.

120.7.   B&B Management LLC, 1624 Webster Ave, The Bronx, NY 10457.

120.8.   Bay Park Center for Nursing & Rehabilitation LLC, ("Baypark"), 3015 West 29th Street, Brooklyn, NY 11224.

120.9.   South Point Plaza Nursing and Rehabilitation Center d/b/a Bayview Manor LLC, ("Southpoint")  One Long Beach Road Island Park, NY 11558.

120.10. Bayview Rest Home, LLC d/b/a Bayview Home for Adults, ("Bayview Home"), 143 E Main Street, Babylon, NY 11702.

120.11.  Besure Home Health Services, Inc. ("BeSure"), 736 Allerton Ave, The Bronx, NY 10467

120.12.  Birchwood Suites Realty LLC d/b/a Birchwood Rest Home, ("Birchwood"), 423 Clay Pitts Rd., East Northport, NY 11731.

120.13.  Blue Star Staffing, LLC, ("Blue Star"), 1463 66th Street, Brooklyn, NY 11201.

120.14.  BNH Beach 17th St. LLC, ("BNH"), 250 Beach 17th Street Far Rockaway, NY 11691.

120.15.  Brookhaven Rehabilitation and Health Care Center, LLC ("Brookhaven"), 250 Beach 17th Street Far Rockaway, NY 11691.

120.16.  Caring Companion Services, Inc. ("Caring Companion"),  2431 Healy Avenue, Far Rockaway, NY 1169.1

120.17.  Caring Professionals, Inc. ("Caring Professionals"), 70-20 Austin Street, Suite 135, Forest Hills, NY 11375.

120.18.  Cayuga Ridge, LLC d/b/a Cayuga Ridge Extended, ("Cayuga Ridge"), 1229 Trumansburg Road, Ithaca, NY 14850.

120.19.  Clear Choice Medical PC, 309 Rutledge St Ste 2B, Brooklyn NY 11211.

120.20. Cold Spring Acquisition, LLC, ("Cold Spring"), 378 Syosset-Woodbury Road, Woodbury, NY 11797.

120.21.  Comfort Loving Care, Inc., ("Comfort Loving"), 10 Nesher Court, Monsey, NY 10952.

120.22. Comprehensive at Dunkirk LLC ("Comprehensive Dunkirk"), D/B/A Symphony Living at Dunkirk, 319 Washington Ave, Dunkirk, NY, 14048.

120.23. Comprehensive at Lancaster LLC (Comprehensive Lancaster"), D/B/A Symphony Manor at Lancaster, 5539 Broadway, Lancaster, NY 14086.

120.24. Comprehensive at Orleans LLC ("Comprehensive Orleans"), 14012 Route 31, Albion, NY 14411.

120.25. Comprehensive at Williamsville LLC ("Comprehensive  Williamsville"), 147 Reist Street, Williamsville, NY 14221.

120.26. Comprehensive Cleaning Corp. ("Comprehensive Cleaning"), D/B/A  Comprehensive Cleaning Company,, 18 Chester Avenue, Brooklyn NY 11218.

120.27. Curis Medical Staffing, LLC ("Curis"), D/B/A Curis Medical Staffing, LLC, 121 State St, Albany, NY, 12207.

120.28. Diamond Hill Operator LLC ("Diamond Hill"), D/B/A  Diamond Hill Nursing and Rehabilitation Center, 100 New Turnpike Rd, Troy, NY 12182.

120.29. Eagle Home Care LLC ("Eagle Home Care"), D/B/A  Eagle Home Care LLC, 3048 Brighton 1st St, Brooklyn, NY 11235.

120.30. Eastchester Rehabilitation and Health Care Center, LLC ("Eastchester"), 2700 Eastchester Road Bronx, NY 10469.

120.31. Elcor Management, LLC, ("Elcor"), 48 Colonial Dr, Horseheads, NY 14845.

120.32. Elcor Operating Company, LLC, ("Elcor"), 48 Colonial Drive, Horseheads, NY 14845.

120.33. Expert Care Staffing, LLC, ("Expert Care Staffing"), 144-12 75th Ave, Flushing New York 11367.

120.34. Fair Management Consulting Company, LLC, ("Fair Management Consulting Co"), D/B/A Fair Management Consulting Co., 2107 Ditmas Avenue, Brooklyn, NY 11226.

120.35. Garden Care Center, Inc. ("Garden Care"), 135 Franklin Avenue, Franklin Square, NY 11010.

120.36. Garden Home Care LLC, ("Garden Care"), 3456 Delaware Ave, Buffalo NY 14217.

120.37. Golden Gate Rehabilitation and Health Care Center LLC ("Golden Gate"), 191 Bradley Avenue Staten Island, NY 10314.

120.38. Golden Living Centers, LLC, ("Golden Living"), 193 South Union Road; Williamsville, NY 14221.

120.39. Greater New York Home Care ("Greater New York"), 6321 New Utrecht Ave., 2nd Fl, Brooklyn, NY 11219.

120.40. Greenbriar Adult Home, LLC ("Greenbriar"), D/B/A Greenbriar Home for Adults, 26 Old Rte 82, Millbrook, NY 12545.

120.41. Harry's Nurses Registry, Inc. ("Harrys Nurses"), 88-25 163rd St, Jamaica, NY 11432.

120.42. HCS Certified Home Care NY, Inc. ("HCS Home Care") D/B/A Girling Home Care of Ny, Inc. 118A Battery Ave, Brooklyn, NY 11209.

120.43. HCS Home Care of Westchester D/B/A  ("HCS Home Care"), A&J Home Care, Inc. & Careseekers, 280 N Bedford Rd #204, Mt Kisco, NY 10549.

120.44. Heart to Heart Home Care ("Ms. Mary's"), D/B/A , Mrs. Mary's Place HCS, Inc., 395 Pearl Street, Brooklyn NY 11201.

120.45. Heart to Heart Management LLC, ("Heart to Heart"), 227 Empire Blvd., Brooklyn NY 11225.

120.46. Highgate LTC Management LLC ("Highgate-Northwoods"), D/B/A Northwoods Rehabilitation & Extended Care - Cortland, 28 Kellogg Road Cortland, NY 13045.

120.47. Highgate LTC Management LLC ("Highgate-Niskayuna"),D/B/A Northwoods Rehabilitation & Extended Care - Hilltop, 1805 Providence Avenue, Niskayuna, NY 12309.

120.48. Highgate LTC Management LLC ("Highgate-Rosewood"),D/B/A Northwoods Rehabilitation & Extended Care - Rosewood 284 Troy Road, Rensselaer, NY 12144.

120.49. Highgate LTC Management LLC ("Highgate-Troy"),D/B/A Northwoods Rehabilitation & Extended Care - Troy , 100 New Turnpike Road, Troy, NY 12182.

120.50. Highgate LTC Management, LLC ("Highgate-Morovia"),d/b/a Northwoods Rehabilitation & Extended Care – d/b/a Northwoods Rehabilitation & Extended Care 7 Keeler St, Moravia, NY 13118.

120.51. Home Attendant Service of Hyde Park, Inc., ("Home Attendant Services"), 1273 53rd St, Brooklyn, NY 11219.

120.52. Home Health Care Services of New York Inc. ("HCS Home Care"), D/B/A  HCS Home Care, 1989 Coney Island Ave, Brooklyn, NY 11223.

120.53. Hudson Pointe Acquisition LLC ("Hudson Point"), D/B/A Hudson Pointe at Riverdale Center for Nursing & Rehabilitation, 3220 Henry Hudson Pkwy, The Bronx, NY 10463.

120.54. Kingsbridge Heights Receiver, LLC, ("Kingsbridge"), 32 East 57th Street, 10th Floor, New York New York 10022.

120.55. Laconia Nursing Home, Inc. ("Laconia"), 1050 E. 230th Street, Bronx, NY 10466.

120.56. Little Neck Care Center, LLC ("Little Neck Care"), , 260-19 Nassau Boulevard, Little Neck, NY 11362.

120.57. Little Neck Nursing Home LLC ("Little Neck"), , 260-19 Nassau Boulevard, Little Neck, NY 11362.

120.58. Magna Management, LLC, ("Magna"), 40 Wall St, New York, NY 10005.

120.59. MB Consultants, Ltd ("Murray's Chicken")D/B/A Murray's Chicken, 5190 S Fallsburg Main, South Fallsburg, NY 12779.

120.60. MB Food Processing, Inc., ("MB Food Processing"), 5190 S Fallsburg Main St, South Fallsburg, NY 12779.

120.61. Monsey Family Drugstore LLC, ("Monsey Family Drugstore"), 108 B Rt 59 Monsey, NY 10952.

120.62. Morans Rest Home LLC, ("Morans"), 1741 State Route 32, Modena, NY 12548.

120.63. NAE Edison, LLC ("Edison"), D/B/A Edison Home Health Care, LLC , 946 McDonald Ave, Brooklyn, NY 11218.

120.64. Nassau Operating Company, LLC ("Nassau"), 1 Greenwich Street Hempstead, NY 11550.

120.65. Neuman LJ Partners, address unknown

120.66. Neuman MN Partners, address unknown

120.67. Neuman Nn Partners, address unknown

120.68. New Carlton Rehab & Nursing Center LLC, ("New Carlton"), 405 Carlton Avenue, Brooklyn, NY 11238.

120.69. New Surfside Nursing Home, ("New Surfside"), 22-41 New Haven Avenue Far Rockaway, NY 11691.

120.70. Niskayuna Operating Co., LLC ("Pathways"), d/b/a Pathways Nursing & Rehabilitation Center, 1805 Providence Avenue, Niskayuna, NY 12309.

120.71. NMC Acquisition, LLC ("Nathan Miller"), d/b/a Nathan Miller Center for Nursing Care , 37 Dekalb Avenue, White Plaints NY 10605.

120.72. North Sea Associates, LLC ("North Sea"), 64 County Road 39 Southampton, NY 11968.

120.73. Norwich Operating Co., LLC ("Norwich Rehab"), d/b/a Norwich Rehabilitation and Nursing Center, 88 Calvary Drive, Norwich, NY 13815.

120.74. Omega Care Services, Inc. ("Living Waters"), D/B/A Living Waters Home Care Agency, 32 E Kingsbridge Road, Suite 2E, Bronx, NY 10468.

120.75. Optima Care Smithtown LLC ("Avalon") D/B/A Brookside Multicare Nursing Center F/K/A Avalon Gardens Rehabilitation and Health Care Center, LLC 7 Route 25A, Smithtown, NY 11787.

120.76. Palffy Group, LLC, ("Palffy"), 755 East Monroe Street, Little Falls, NY 13365.

120.77. Park Avenue Operating Company, LLC ("Park Avenue"), 425 National Boulevard Long Beach, NY 11561.

120.78. Parkview Care and Rehabilitation Center, Inc ("Parkview"), 5353 Merrick Road, Massapequa, NY 11758.

120.79. Pharney Group, LLC, ("Pharney"), 20 Wood Court, Tarrytown, NY 10591.

120.80. Premier Rehab Solutions, LLC ("Sunharbor"), d/b/a Sunharbor Manor, 255Warner Avenue, Roslyn Heights, NY 11577.

120.81. Prokeep Inc., ("Prokeep"), 199 Lee Avenue, Suite 950, Brooklyn NY, 11211.

120.82. Ramapo Manor Nursing Center, Inc., ("Ramapo"), 30 Cragmere Rd., Airmont, NY 10901.

120.83. Receiver Services, LLC ("Harbour Health"), D/B/A Harbour Health Multicare Center for The Living, 1205 Delaware Ave., Erie, Buffalo, NY, 14209.

120.84. Rosewood Care, LLC ("Rosewood"), d/b/a Rosewood Rehabilitation and Nursing Center, 284 Troy Road, Rensselaer, NY 12144.

120.85. Ross Health Care Center, Inc., ("Ross Health"), 839 Suffolk Avenue, Brentwood, NY 11717.

120.86. Sanford Home for Adults, LLC, ("Sanford"), 14040 Sanford Ave, Queens, NY 11355.

120.87. SC & BP Services, Inc.  ("SC & BP"), D/B/A SC & BP Services, Inc., 1055 63rd Street, Brooklyn NY 11219.

120.88. Sentosa Care, LLC ("Sentosa"), 100 Daniel Drive, Webster, NY 14580.

120.89. Shorefront Operating, LLC ("Seagate"), d/b/a Seagate Rehabilitation & Healthcare Center, 3015 W 29th St, Brooklyn, NY 11224.

120.90. Stat Portable X-Ray, Inc., ("STAT Portable"), 21118 Union Turnpike, Oakland Gardens, NY 11364.

120.91. Sunharbor Acquisition I, LLC ("Sunharbor"), d/b/a Sunharbor Acquisition, LLC, 255 Warner Avenue, Roslyn Heights, NY 11577.

120.92. TCPRNC LLC ("The Plaza Rehab"), d/b/a The Plaza Rehab & Nursing, 100 West Kingsbridge Road, Bronx, NY 10468.

120.93. Throgs Neck Operating Company, LLC ("Throgs Neck"), 707 Throgs Neck Expressway Bronx, NY 10465.

120.94. Townhouse Operating Company, LLC ("Townhouse"), 755 Hempstead Turnpike Uniondale, NY 11553.

120.95. Troy Operating Center, LLC ("Diamond Hill"), d/b/a Diamond Hill Nursing and Rehabilitation Center, 100 New Turnpike Road, Troy, NY 12182.

120.96. Upstate Dairy Farms, Inc., ("Upstate Dairy"), 54 Walworth St, Brooklyn, NY 11205.

120.97. West Lawrence Care Center Inc. ("West Lawrence"), d/b/a West Lawrence Care Center, LLC, 1410 Seagirt Blvd., Far Rockaway, NY 11691.

120.98. White Plains Center for Nursing, LLC, ("White Plains"), 220 West Post Road, White Plains, NY 10606.

120.99. Willoughby Rehabilitation & Health Care Center LLC ("Willoughby"),  660 Louisiana Avenue Brooklyn, NY 11239.

120.100.    Woodmere Dialysis, LLC, ("Woodmere"), The Five Towns Premier Nursing Home and Rehabilitation Center, 1050 Central Ave, Woodmere, NY 11598.

120.101.    Woodmere Rehabilitation and Health Care Center, Inc. ("Woodmere"), d/b/a Five Towns Premier Rehabilitation and Nursing, 1050 Central Avenue, Woodmere, NY 11598.

118.   The Owner Operator Defendants are the owners and operators of the Employer Defendants known at this time as follows:

120.102.    Gabor Adler, 7 Balint Dr Apt 323, Yonkers NY 10710, is an Owner Operator of Baypark Center Nursing & Rehabilitation;

120.103.    George Adler, 1 Greenwich Street Hempstead, NY 11550, is an Owner Operator of Baypark Center Nursing & Rehabilitation;

120.104.    Kwame Amoafo-danquah, 1825 65th St Ste 1, Brooklyn, NY, 11204, is an Owner Operator of Living Water Home Care Agency;

120.105.    Agnes Arnestein, 220 West Post Road, White Plains, NY 10606, is an Owner Operator of Baypark Center Pursing & Rehabilitation;

120.106.    Anthony Bacchi, 99 Golden Hill Drive, Kingston, NY 12401, is an Owner Operator of Brookside Multicare Nursing Center;

120.107.    Matthew Barbara, 1 Greenwich Street Hempstead, NY 11550, is an Owner Operator of Baypark Center Nursing & Rehabilitation;

120.108.    Paul Barbara, 3015 West 29th Street, Brooklyn, NY 11224, is an Owner Operator of Baypark Center Nursing & Rehabilitation;

120.109.    Aaron Becher, 355 Broadway, Lawrence, NY 11598, is an Owner Operator of Baypark Center Nursing & Rehabilitation;

120.110.    Hershel Bedansky, 1273 53rd St, Brooklyn, NY, 11219, is an Owner Operator of Hyde Park;

120.111.    Howard Belford, 3015 West 29th Street, Brooklyn NY 11224, is an Owner Operator of Baypark Center Nursing & Rehabilitation;

120.112.    Scott Bialick, 250 Beach 17th Street, Far Rockaway NY 11691, is an Owner Operator of Baypark Center Nursing & Rehabilitation;

120.113.    Robert Bleier, 22-41 New Haven Avenue, Far Rockaway, NY 11691, is an Owner Operator of Baypark Center Nursing & Rehabilitation;

120.114.    David Bloom, 136 Beach 117th St Apt 513, Rockaway Park NY 11694, is an Owner Operator of Baypark Center Nursing & Rehabilitation;

120.115.    Joel Brach, 40 Robert Pitt Dr, Monsey, NY 10952, is an Owner Operator of Monsey Family Drugstore LLC;

120.116.    Barry Braunstein, 144 S. Oxford Street, Brooklyn NY 11217, is an Owner Operator of Baypark Center Nursing & Rehabilitation;

120.117.    Murray Bresky, 5190 Main Street, South Fallsburg, NY 12779, is an Owner Operator of Baypark Center Nursing & Rehabilitation;

120.118.    Steven Brown,  3015 West 29th Street, Brooklyn, NY 11224, is an Owner Operator of Baypark Center Nursing & Rehabilitation;

120.119.       Philip Buchsbaum, 121 Franklin Place Woodmere, NY 11598, is an Owner Operator of Baypark Center Nursing & Rehabilitation;

120.120.       Richard Busell, 725 Equestrian Way, Westbury, NY 11590, is an Owner Operator of Baypark Center Nursing & Rehabilitation;

120.121.       Colin C. Hart, 168 W Main St, Springville, NY, 14141, is an Owner Operator of Fiddlers Green Manor Rehabilitation and;

120.122.       Ira Cammeyer, 1 Greenwich Street Hempstead, NY 11550, is an Owner Operator of Throgs Neck Operating Company, LLC dba Throgs Neck Extended Care Facility;

120.123.       Alan Chopp, 5401 Collins Ave  #635 Miami Beach FL 33140, is an Owner Operator of Brookside Multicare Nursing Center;

120.124.       David Crytryn,  250 Beach 17th Street, Far Rockaway NY 11691, is an Owner Operator of Brookhaven Rehabilitation & Health Care;

120.125.       Solomon Eidlisz, 250 Beach 17th Street, Far Rockaway NY 11691, is an Owner Operator of Brookhaven Rehabilitation & Health Care;

120.126.       Neil Einhorn, 3015 West 29th Street, Brooklyn, NY 11224., is an Owner Operator of Throgs Neck Operating Company, LLC dba Throgs Neck Extended Care Facility;

120.127.       Scott Einiger, 3015 West 29th Street, Brooklyn, NY 11224, is an Owner Operator of Baypark Center Nursing & Rehabilitation;

120.128.       Sam Eisen, 7605 New Utrecht Avenue, Brooklyn NY 11214, is an Owner Operator of Mega Staffing;

120.129.       Steve Eisman, 801 Coop City Blvd, Bronx NY 10475, is an Owner Operator of Bay Park Center Nursing & Rehabilitation;

120.130.       Ignatius Elefant, 6355 Broadway, Bronx, NY, 10471, is an Owner Operator of Riverdale Manor Home;

120.131.       Philipson Family Trust, 3400 Cannon Pl, The Bronx, NY 10463, is an Owner Operator of Kingsbridge Heights Receiver, LLC;

120.132.       Martin Farbeblum, 495 Pinehurst Court, Roslyn NY 11576, is an Owner Operator of Brookside Multicare Nursing Center;

120.133.

120.134.       Michael Farbenblum, 495 Pinehurst Court, Roslyn NY 11576, is an Owner Operator of Eastchester Rehabilitation & Health Care Center, LLC;

120.135.       Benjamin Farbenblum, 147 Avenue O, 1st Floor, Brooklyn NY 11204, is an Owner Operator of Eastchester Rehabilitation & Health Care Center, LLC;

120.136.       Ed Farbenslum, 2365 Union Road Cheektowaga, NY 14227, is an Owner Operator of Golden Hill Health Care Center & Rehabilitation;

120.137.       Esther Farkovitz, 37 Mesier Avenue, Wappinger Falls, NY 12508, is an Owner Operator of Nassau Operating Company, LLC dba Nassau Extended Care Facility;

120.138.       Esther Farkovitz, 3400 Cannon Pl, The Bronx, NY 10463, is an Owner Operator of Kingsbridge Heights Receiver, LLC;

120.139.       Lori Fensterman, 801 Coop City Blvd, Bronx NY 10475, is an Owner Operator of Bay Park Center Nursing & Rehabilitation;

120.140.       Jordan Fensterman, 3 Dakota Drive, Lake Success NY 11042, is an Owner Operator of Baypark Center Nursing & Rehabilitation;

120.141.       Lori Fensterman, 3 Dakota Drive, Lake Success NY 11042, is an Owner Operator of Bay Park Center Nursing & Rehabilitation;

120.142.    Robert Fensterman, 3015 West 29th Street, Brooklyn, NY 11224, is an Owner Operator of Bay Park Center Nursing & Rehabilitation;

120.143.    Robert Fensterman, 3015 West 29th Street, Brooklyn, NY 11224, is an Owner Operator of Bay Park Center Nursing & Rehabilitation;

120.144.    Staci Fensterman, 3015 West 29th Street, Brooklyn, NY 11224, is an Owner Operator of Bay Park Center Nursing & Rehabilitation;

120.145.    Samuel Ferrara, address unknown, is an owner of Baypark 3015 West 29th Street, Brooklyn, NY 11224, is an Owner Operator of Bay Park Center Nursing & Rehabilitation;

120.146.    Mayer Fischl, 2 Sienna Way, Lakewood NJ 08701, is an Owner Operator of Baypark Center Nursing & Rehabilitation;

120.147.    Benjamin Fishoff, 240 Viola Road, Monsey NY 10952, is an Owner Operator of Bay Park Center Nursing & Rehabilitation;

120.148.    Benjamin Fishoff, 240 Viola Road, Monsey NY 10952, is an Owner Operator of Bay Park Center Nursing & Rehabilitation;

120.149.    Patrick Formato, 3015 West 29th Street, Brooklyn, NY 11224, is an Owner Operator of Baypark Center Nursing & Rehabilitation;

120.150.    John Francher, 46 Cortland St, Homer, NY, 13077,, is an Owner Operator of Greenbriar Home for Adults;

120.151.    David Freid, 2510 Avenue K, 1st Floor, First Door, Brooklyn NY 11210, is an Owner Operator of Brookhaven Rehabilitation & Health Care;

120.152.    Moshe Freilich,1273 53rd Street, Brooklyn, NY 11219, is an Owner Operator of Greater New York Nursing Services;

120.153.    Andrew Freundlich, 52 Elmwood Pl Short Hills, NJ 07078, is an Owner Operator of Throgs Neck Operating Company, LLC dba Throgs Neck Extended Care Facility;

120.154.    Sigmund Freundlich, 3015 West 29th Street, Brooklyn, NY 11224, is an Owner Operator of Throgs Neck Operating Company, LLC dba Throgs Neck Extended Care Facility;

120.155.    Leo Friedman, 3400 Cannon Pl, The Bronx, NY 10463, is an Owner Operator of Kingsbridge Heights Receiver, LLC;

120.156.    David Gast, 14012 State Route 31, Albion, NY, 14411, is an Owner Operator of Comprehensive At Orleans;

120.157.    Louis Gellis, 3015 West 29th Street, Brooklyn, NY 11224, is an Owner Operator of Highgate LTC Management LLC dba Northwoods Rehabilitation & Extended Care - Rosewood;

120.158.    William Gillick, 1205 Delaware Ave, Buffalo, NY, 14209, is an Owner Operator of Harbour Health Multi Care Center;

120.159.    Rivky Goldberger, 250 Beach 17th Street, Far Rockaway NY 11691, is an Owner Operator of Brookhaven Rehabilitation & Health Care;

120.160.    Jeffrey Goldstein, 3015 West 29th Street, Brooklyn, NY 11224, is an Owner Operator of Fiddlers Green Manor Rehabilitation and;

120.161.    Jeffrey Goldstein, 3015 West 29th Street, Brooklyn, NY 11224, is an Owner Operator of North Sea Associates, LLC dba The Hamptons Center for Rehabilitation and Nursing;

120.162.    Anne Gottlieb, 1462 East 27th Street, Brooklyn, NY 11210, is an Owner Operator of White Plains Center for Nursing, LLC;

120.163.    Niklos Gottlieb, 121 Franklin Place Woodmere NY 11598, is an Owner Operator of Woodmere Rehabilitation & Health Care Center, Inc. ;

120.164.     Joel Greenberg, 3015 West 29th Street, Brooklyn, NY 11224, is an Owner Operator of Baypark Center Nursing & Rehabilitation;

120.165.     Eric Greenberger, 46 Mt Ebo Road North, Brewster, NY, 10509, is an Owner Operator of Putnam Ridge;

120.166.     Eli Greenspan, 11 Virginia Avenue, Clifton, NY 07012, is an Owner Operator of Baypark Center Nursing & Rehabilitation;

120.167.     Steven Greenstein, 3015 West 29th Street, Brooklyn, NY 11224, is an Owner Operator of Baypark Center Nursing & Rehabilitation;

120.168.     Avrumi Grossman, 1055 63rd Street, Brooklyn, NY 11224, is an Owner Operator of SC & BP;

120.169.     Marton Guttman, 54 Walworth St, Brooklyn, NY, 11205, is an Owner Operator of Upstate Dairy Farms, Inc.;

120.170.     Valarie Henry, 736 Allerton Ave Ste 207, Bronx, NY, 10467, is an Owner Operator of BeSure Home Health Services, Inc.;

120.171.     Ruth Hirsch, 20 Briarwood Lane, Suffern, NY 10901, is an Owner Operator of Eastchester Rehabilitation & Health Care Center, LLC;

120.172.     Johanan Hirsch, 1714 60th Street, Middle Door, Brooklyn NY 11204, is an Owner Operator of Eastchester Rehabilitation & Health Care Center, LLC;

120.173.     Leopold Hirsch, 551 Fifth Avenue, Suite 2500, New York, NY 10176, is an Owner Operator of Eastchester Rehabilitation & Health Care Center, LLC;

120.174.     Pinchos Hoffman, 70-35 Vleigh Place, Flushing NY 11367, is an Owner Operator of North Sea Associates, LLC dba The Hamptons Center for Rehabilitation and Nursing;

120.175.     David Hoffman, 233 E 69TH ST, New York NY 10021, is an Owner Operator of Throgs Neck Operating Company, LLC dba Throgs Neck Extended Care Facility;

120.176.     Steven J Eisman, 3015 West 29th Street, Brooklyn, NY 11224, is an Owner Operator of Baypark Center Nursing & Rehabilitation;

120.177.     Leonard Janklowicz, 1353 47th Street, Brooklyn, NY 11219, is an Owner Operator of Willoughby Rehabilitation & Health CareCenter LLC dba Spring Creek Rehabilitation & Nursing Care Center;

120.178.     Jack Janklowitz, 1353 47th Street, Brooklyn, NY 11219, is an Owner Operator of Willoughby Rehabilitation & Health CareCenter LLC dba Spring Creek Rehabilitation & Nursing Care Center;

120.179.     David Jones, 4 Cedar St, Massapequa, NY 11758, is an Owner Operator of Parkview Care and Rehabilitation Center, Inc;

120.180.     Judith Jones, 5353 Merrick Road Massapequa, NY 11758, is an Owner Operator of Parkview Care and Rehabilitation Center, Inc;

120.181.     Mendel Kaff, 1273 53rd Street, Brooklyn, NY 11219, is an Owner Operator of Greater New York Nursing Services;

120.182.     Eric Kalt, 3015 West 29th Street, Brooklyn, NY 11224, is an Owner Operator of North Sea Associates, LLC dba The Hamptons Center for Rehabilitation and Nursing;

120.183.     Yoel Karpen, 3048 Brighton 1st St Ste 4, Brooklyn, NY, 11235, is an Owner Operator of Eagle Home Care;

120.184.     Miriam Karpf, 5353 Merrick Road Massapequa, NY 11758, is an Owner Operator of Parkview Care and Rehabilitation Center, Inc;

120.185.     Allen Kass, 131 Hickory Kingdom Rd, Bedford, NY 10506, is an Owner Operator of Baypark Center Nursing & Rehabilitation;

120.186.     Martin Kass, 2061 58th Street, Brooklyn NY 11204, is an Owner Operator of Baypark Center Nursing & Rehabilitation;

120.187.     Shelley Katz, 2061 58th Street, Brooklyn NY 11204, is an Owner Operator of Baypark Center Nursing & Rehabilitation;

120.188.     Manny Kaufman, 100 New Turnpike Rd, Troy, NY, 12182, is an Owner Operator of Diamond Hill Nursing and Rehabilitation;

120.189.     Alan Kessler,129 Prospect Avenue, Cedarhurst, NY 11516, is an Owner Operator of Baypark Center Nursing & Rehabilitation;

120.190.     Arnold Klapper, 2311 Olean Street, Brooklyn, NY 11210, is an Owner Operator of Eastchester Rehabilitation & Health Care Center, LLC;

120.191.     George Klein, 2824 Clubhouse Rd, Merrick NY 11566, is an Owner Operator of Throgs Neck Operating Company, LLC dba Throgs Neck Extended Care Facility;

120.192.     Larry Klein, 3015 West 29th Street, Brooklyn, NY 11224., is an Owner Operator of Throgs Neck Operating Company, LLC dba Throgs Neck Extended Care Facility;

120.193.     Eleanor Kluger, 30 Cragmere Rd, Suffern, NY, 10901, is an Owner Operator of Ramapo Manor;

120.194.     Robert Kolman, 121 Franklin Place Woodmere, NY 11598, is an Owner Operator of North Sea Associates, LLC dba The Hamptons Center for Rehabilitation and Nursing;

120.195.     Dean Koplik, 5190 S Fallsburg Main St South Fallsburg NY 12779, is an Owner Operator of MB Food Processing, Inc.;

120.196.     Dean Korlik, 5190 S Fallsburg Main St, South Fallsburg, NY 12779, is an Owner Operator of Baypark Center Nursing & Rehabilitation;

120.197.     William Korn, 4706 Beach 47th Street, 1st Floor, Brooklyn NY 11224, is an Owner Operator of Throgs Neck Operating Company, LLC dba Throgs Neck Extended Care Facility;

120.198.     Irina Kostesky, 1 Greenwich Street Hempstead, NY 11550, is an Owner Operator of Throgs Neck Operating Company, LLC dba Throgs Neck Extended Care Facility;

120.199.     Howard Krant, 5353 Merrick Road Massapequa, NY 11758, is an Owner Operator of Highgate LTC Management LLC dba Northwoods Rehabilitation & Extended Care - Cortland;

120.200.     Yechiel Landa, 182 Briarwood Crossing, Lawrence, NY 11559, is an Owner Operator of Brookhaven Rehabilitation & Health Care;

120.201.     Ben Landa,182 Briarwood Crossing, Lawrence, NY 11559, is an Owner Operator of Brookhaven Rehabilitation & Health Care;

120.202.     Benjamin Landa, 182 Briarwood Crossing, Lawrence, NY 11559, is an Owner Operator of Brookside Multicare Nursing Center;

120.203.     Benjamin Landa, 193 S Union Rd, Williamsville, NY, 14221, is an Owner Operator of Golden Living Centers LLC;

120.204.     Ben Landa,182 Briarwood Crossing, Lawrence, NY 11559, is an Owner Operator of Pathways Nursing & Rehabilitation Center;

120.205.     Ben Landa,182 Briarwood Crossing, Lawrence, NY 11559, is an Owner Operator of Rosewood Rehabilitation and Nursing Cent;

120.206.     David Landa, 169 Davenport Ave, New Haven, CT 06519, is an Owner Operator of The Landa Group;

120.207.     Nathan Landau, 420 Broadway, Brooklyn, NY 11211, is an Owner Operator of Clinical Staffing Resources Corp.;

120.208.     James Lapolla, 424 E 147th St # 4, Bronx, NY,, is an Owner Operator of Home Health Management Services;

120.209.     Tibor Lebovich, 99 Golden Hill Dr, Kingston, NY 12401, is an Owner Operator of Golden Hill Health Care Center & Rehabil;

120.210.     Morty Lehasky,14012 State Route 31, Albion, NY, 14411, is an Owner Operator of Comprehensive At Orleans;

120.211.     Morty Lehasky, 147 Reist St, Williamsville, NY, 14221, is an Owner Operator of Comprehensive of Williamsville;

120.212.     David Leifer, 1273 53rd St, Brooklyn, NY, 11219, is an Owner Operator of Home Attendant Services of Hyde Park;

120.213.     Barry Leistner, 3015 West 29th Street, Brooklyn, NY 11224, is an Owner Operator of Baypark Center Nursing & Rehabilitation;

120.214.     Chana Lerner, 1020 Ocean Parkway, Brooklyn, NY 11230, is an Owner Operator of Baypark Center Nursing & Rehabilitation;

120.215.     Michael Levitan, 3015 West 29th Street, Brooklyn, NY 11224, is an Owner Operator of Baypark Center Nursing & Rehabilitation;

120.216.     Rich Levitan, 121 Franklin Place Woodmere, NY 11598, is an Owner Operator of Baypark Center Nursing & Rehabilitation;

120.217.     Teddy Lichtscein, 12 Mark Drive, Spring Valley, NY 10977, is an Owner Operator of Brookhaven Rehabilitation & Health Care;

120.218.     Sam Mayerovitz, address unknown, is an Owner Operator of The Landa Group;

120.219.     Girshas Minster, 1 Greenwich Street Hempstead, NY 11550, is an Owner Operator of Throgs Neck Operating Company, LLC dba Throgs Neck Extended Care Facility;

120.220.     Gabriel Mordechey, 250 Beach 17th Street, Far Rockaway NY 11691, is an Owner Operator of Brookhaven Rehabilitation & Health Care;

120.221.     Sharyn Mukamal, 3015 West 29th Street, Brooklyn, NY 11224, is an Owner Operator of Bay Park Center Nursing & Rehabilitation;

120.222.     Laurie Netzer, 3015 West 29th Street, Brooklyn, NY 11224., is an Owner Operator of Throgs Neck Operating Company, LLC dba Throgs Neck Extended Care Facility;

120.223.     Leo Oberlander, 78 Birchwood Dr, Huntington Station, NY, 11746, is an Owner Operator of Birchwood Rest Home d/b/a S & L Birchwood, LLC;

120.224.     Sander Oberlander, 2107 Ditmas Ave, Brooklyn, NY, 11226, is an Owner Operator of Ditmas Park Care;

120.225.     Milton Ostreicher, 250 Beach 17th Street, Far Rockaway NY 11691, is an Owner Operator of Brookhaven Rehabilitation & Health Care;

120.226.     Irwin Peckman, 3015 West 29th Street, Brooklyn NY 11224, is an Owner Operator of Baypark Center Nursing & Rehabilitation;

120.227.     Deborah Philipson, 22 Pleasant Ridge Road, Spring Valley, NY 10977, is an Owner Operator of Brookhaven Rehabilitation & Health Care;

120.228.     Bent Philipson, 22 Pleasant Ridge Road, Spring Valley, NY 10977, is an Owner Operator of Brookside Multicare Nursing Center;

120.229.     Ben Philipson, 22 Pleasant Ridge Road, Spring Valley, NY 10977, is an Owner Operator of Brookside Multicare Nursing Center;

120.230.     Robert Pines, address unknown, is an owner of Baypark 3015 West 29th Street, Brooklyn, NY 11224, is an Owner Operator of Baypark Center Nursing & Rehabilitation;

120.231.      Israel Pollack, 25 Calvert Drive, Unit 1, Monsey NY 10952, is an Owner Operator of North Sea Associates, LLC dba The Hamptons Center for Rehabilitation and Nursing;

120.232.      Jacob Pollack, 25 Calvert Drive, Unit 1, Monsey NY 10952, is an Owner Operator of North Sea Associates, LLC dba The Hamptons Center for Rehabilitation and Nursing;

120.233.      Theodore Pollak, 250 Beach 17th Street, Far Rockaway NY 11691, is an Owner Operator of Brookhaven Rehabilitation & Health Care;

120.234.

120.235.      Renee Pollak, 121 Franklin Place Woodmere, NY 11598, is an Owner Operator of Woodmere Rehabilitation & Health Care Center, Inc;

120.236.      Michael Pruzansky, 64 County Road 39 Southampton, NY 11968, is an Owner Operator of North Sea Associates, LLC dba The Hamptons Center for Rehabilitation and Nursing;

120.237.      Diana R. Koehler, 3015 West 29th Street, Brooklyn, NY 11224, is an Owner Operator of Highgate LTC Management LLC dba Northwoods Rehabilitation & Extended Care - Hilltop;

120.238.      Jonathon Redner, 273 53rd St, Brooklyn, NY, 11219,, is an Owner Operator of Home Attendant Services of Hyde Park;

120.239.      Lawrence Reichenberger, 3015 West 29th Street, Brooklyn, NY 11224., is an Owner Operator of Baypark Center Nursing & Rehabilitation;

120.240.      Mark Reisman, 2357 60th St, Brooklyn, NY 11204, is an Owner Operator of Edison Home Health Care;

120.241.      Richard Bursek, 99 Golden Hill Dr, Kingston, NY 12401, is an Owner Operator of Golden Hill Health Care Center & Rehabil;

120.242.      Mayer Rispler, 755 Hempstead Turnpike, Uniondale, NY 11553, is an Owner Operator of Townhouse Center for Rehab & Nursing;

120.243.      Berish Rubenstein, 951 Broadway, Woodmere, NY 11598, is an Owner Operator of Baypark Center Nursing & Rehabilitation;

120.244.      Malky Saffran, 121 Franklin Place Woodmere, NY 11598, is an Owner Operator of Woodmere Rehabilitation & Health Care Center;

120.245.      Samuel Schlesinger,1040 EAST 22ND Street, Brooklyn, NY 11210, is an Owner Operator of Allstate ASO;

120.246.      Jacob Schoenberger, 65 Lafayette St, Spring Valley, NY, 10977, is an Owner Operator of Evergreen Court Home for Adults;

120.247.      Michael Schwartz, 51 Villas Circle, Melville, NY 11747, is an Owner Operator of Nassau Operating Company, LLC dba Nassau Extended Care Facility;

120.248.      Leslie Shafrank, 755 Hempstead Turnpike, Uniondale, NY 11553Lorraine Takesky, address unknown, is an Owner Operator of Throgs Neck Operating Company, LLC dba Throgs Neck Extended Care Facility;

120.249.      Henry Shayovitz, 3015 West 29th Street, Brooklyn, NY 11224, is an Owner Operator of Baypark Center Nursing & Rehabilitation;

120.250.      Agnes Shemia, 1989 Coney Island Ave, Brooklyn, NY 11223, is an Owner Operator of HCS Homecare;

120.251.      Jeff Shemia, 1989 Coney Island Ave, Brooklyn, NY 11223, is an Owner Operator of HCS Homecare;

120.252.      Israel Sherman, 822 Cedar Avenue, Niagara Falls, NY 14301, is an Owner Operator of Amerifalls, LLC;

120.253.      Samuel Sherman, 822 Cedar Avenue, Niagara Falls, NY 14301, is an Owner Operator of Amerifalls, LLC;

120.254.      Leah Sherman,168 W Main St, Springville, NY, 14141,, is an Owner Operator of Fiddlers Green Manor Rehabilitation and;

120.255.      Warren Sherman,1273 53rd St, Brooklyn, NY, 11219,, is an Owner Operator of Home Attendant Services of Hyde Park;

120.256.      Sam Sherman, 822 Cedar Avenue, Niagara Falls, NY 14301, is an Owner Operator of Sunharbor Acquisition, LLC;

120.257.      Nat Sherman, 220 West Post Road, White Plains, NY10606, is an Owner Operator of Throgs Neck Operating Company, LLC dba Throgs Neck Extended Care Facility;

120.258.      Samuel Shernan,168 W Main St, Springville, NY, 14141,, is an Owner Operator of Fiddlers Green Manor Rehabilitation and;

120.259.      Hindy Sirkis, 5814 17th Ave, Brooklyn, NY 11204, is an Owner Operator of Baypark Center Nursing & Rehabilitation;

120.260.      Moshe Sirkis, 220 West Post Road, White Plains, NY10606, is an Owner Operator of Baypark Center Nursing & Rehabilitation;

120.261.      Dominic Spira Md,1335 Portland Ave, Rochester, NY, 14621, is an Owner Operator of New Roc Nursing & Rehabilitation;

120.262.      Jonathan Steinberg, 70-20 Austin St., Suite 135 Forest Hills, NY 11375, is an Owner Operator of Caring Companion Services, Inc;

120.263.      Miriam Steinberg, 1400 Pelham Parkway South, New York NY 10461, is an Owner Operator of Caring Companion Services, Inc;

120.264.      Ronald Stern, 6 Donde Lane, East Northport NY 11720,, Preferred Home Care of NY;

120.265.      Kenneth Tessler, 2214 Avenue I Brooklyn, NY 11210, is an Owner Operator of Baypark Center Nursing & Rehabilitation;

120.266.      Aaron Unger, 14744 76th Ave, Flushing, NY 11376, is an Owner Operator of Brookhaven Rehabilitation & Health Care;

120.267.      Eila Vinitzky, 144-12 75th Ave, Flushing, New York 11367, is an Owner Operator of Expert Care Staffing, LLC & Staffing Age;

120.268.      Yuliya Vinokurova, 99 Golden Hill Dr, Kingston, NY 12401, is an Owner Operator of Golden Hill Health Care Center & Rehabil;

120.269.      Jeffrey Vogel, 3015 West 29th Street, Brooklyn, NY 11224, is an Owner Operator of Baypark Center Nursing & Rehabilitation;

120.270.      Sherman Vogel, 3015 West 29th Street, Brooklyn, NY 11224, is an Owner Operator of Baypark Center Nursing & Rehabilitation;

120.271.      Toby Weinberger, 250 Beach 17th Street, Far Rockaway NY 11691, is an Owner Operator of Brookhaven Rehabilitation & Health Care;

120.272.      Zoltan Weinberger, 54 Walworth St, Brooklyn, NY, 11205, is an Owner Operator of Upstate Dairy Farms, Inc.;

120.273.      Regina Weinstock, 28 Burton Avenue, Woodmere, NY 11498, is an Owner Operator of Eastchester Rehabilitation & Health Care Center, LLC;

120.274.      Michael Weiss, 3015 West 29th Street, Brooklyn, NY 11224, is an Owner Operator of Baypark Center Nursing & Rehabilitation;

120.275.   Shlomie Weiss, 6321 New Utrecht Ave., 2nd Floor, Brooklyn, NY 11219-5425, is an Owner Operator of Clinical Staffing Resources Corp.;

120.276.   Ari Weiss,  2357 60th Street, Brooklyn NY 11204, is an Owner Operator of Edison Home Health Care;

120.277.   Robyn Weiss, 3015 West 29th Street, Brooklyn, NY 11224., is an Owner Operator of Park Avenue Operating Company, LLC dba Park Avenue Extended Care Facility;

120.278.   Berish Weiss,  2357 60th Street, Brooklyn NY 11204, is an Owner Operator of Preferred Home Care of NY;

120.279.   Chaya Willinger, 46 Mt Ebo Road North, Brewster, NY 10509, is an Owner Operator of Putnam Ridge;

120.280.   Robert Wolf, 250 Beach 17th Street, Far Rockaway NY 11691, is an Owner Operator of Brookhaven Rehabilitation & Health Care;

120.281.   Peyman Younesi, 309 Rutledge Street, Suite 2B, Brooklyn, New York 11211, is an Owner Operator of Clear Choice Medical PC;

120.282.   Mark Zaffrin, 3015 West 29th Street, Brooklyn, NY 11224, is an Owner Operator of Baypark Center Nursing & Rehabilitation;

120.283.   Ephraim Zagelbaum, 88 Calvary Dr, Norwich, NY, 13815, is an Owner Operator of Norwich Rehabilitation and Nursing;

120.284.   Ephraim Zagelbaum, 755 East Monroe St, Little Falls, NY, 13365, is an Owner Operator of Palffy Group, LLC;

120.285.   David Zohler, 1055 63rd Street, Brooklyn, NY 11219, is an Owner Operator of SC & BP;

119.   Union Defendant Local 1199 of the Service Employees International Union maintains its principal headquarters located at 498 7th Avenue, New York, NY 10018.

120.   Trust Defendant Rashbi Management, Inc. is the settlor and administrator of a trust for the Program as hereinafter identified.

121.   Carrier Defendant is Oriska Insurance Company ("Oriska Insurance"). Oriska Insurance is a property and casualty insurance company with home offices in Kings County, New York and with primary operation offices maintained at 1310 Utica St., Oriskany, New York. The Carrier Defendant is licensed for the business of accident and health, disability, workers' compensation and surety bonding as specified in paragraphs 3 and 15 of Section 1113(a) of the New York Insurance Law, required for the loss sensitive Oriska 24-Hour Protection Program, the Alternative Employment Practice demonstrated to and purchased by the Employer Defendants, but ignored in the overriding scheme to divert plan funds, as hereinafter described. These licenses were granted by the New York State Department of Financial Services ("DFS") to Plaintiffs in 1993. The licenses were necessary for the rate and form approvals by the DFS pursuant to Insurance Law §2307, first approved by the DFS for Carrier Defendant in 1994 as stated in paragraph 10 hereof and were revised and ratified by DFS approval in 2003, 2005 and 2007.

122.   Derivative Defendant Oriska Corporation, also Plaintiff in Intervention in Nassau County removed action EDNY 20-cv-06291], doing business in Oneida County, New York, is the Plaintiff in twenty-six actions against the Employer Defendants as set forth above,

brought in subrogation for the injuries sustained to employees, a sub-class of the Class described above, due to the unsafe workplace, negligence and culpability of the Employer Defendants.

**CLASS ACTION ALLEGATIONS**

**Facts Common to All Causes of Action**

**ERISA Plan**

123.   In June 2012 effective June 2010, the Employer Defendants and each of them contracted with a Policy Manager Allstate ASO, Inc./Allstate Administrators, Inc. to obtain coverage for health, disability, safety training, loss control and workers' compensation benefits coverage as set forth in certain administrative agreements, calling for a manager to negotiate coverages and policies of insurance to provide benefits under the Program, with ultimate control of all aspects of their Plan and Program retained by the Employer Defendants.

124.   The Plan is an ERISA welfare benefit plan: "(1) plan, fund or program, (2) established or maintained, (3) by employers, (4) for purpose of providing for health, statutory disability, workers' compensation, apprenticeship, training, continuing education, safety to participants or their beneficiaries of the Employers." Intervention Pg. 107 Par 230. The assets of the Plan may be used only for two purposes: (1) to pay benefits to participants and beneficiaries, (2) to pay the reasonable expenses of administering their Plan. Intervention Pg. 108 Par 231.

125.   The Employer Defendants at all times retained authority over the Plan assets. The Employer Defendants indemnified the actions of the manager and Employer Defendants retained authority over their Plan with the right to terminate the manager at the Employer Defendants' option. The manager was to provide "Administrative Oversight of a facilities Workers' Compensation, Health and Disability Program", but control over the Fund Assets was not delegated to manager, but rather was retained by the Employer Defendants.

126.   The Employer Defendants funding of the Program was pooled as Plan assets to be held in trust for the Class Plaintiffs of employees under the fiduciary responsibility of the Employer Defendants.

127.   The Plan and Program remains in full force and effect until all obligations of the Employer Defendants are fully satisfied.

128.   Employee benefits under the Program were provided in the following categories:

   Health
   Disability
   Worker' Compensation
   Risk Management
   Safety training, apprenticeship, continuing education in safety and skills

129. Health benefits were self-insured under the Program and administered by the American Plan Administrators.

130. Disability benefits were provided under the Program by purchasing insurance policies from the following insurance carriers:

> United Health Administrators Inc
> Standard Security Life Insurance Company
> First Insurance Funding Corp
> HCC Life Insurance Company
> First Rehabilitation Life
> The United States Life Insurance Company
> Oxford Health Plans
> Zurich American Insurance Company
> Arch Insurance Group
> National Continental Ins. Company
> New York Life Insurance Company
> Progressive Casualty Insurance
> The Hartford
> Patriot Underwriters Inc.
> United Financial Casualty Company
> Dongbu Insurance

131. Health, risk management, safety training, apprenticeship, and continuing education in safety and skills were self-insured under the Plan and Program. Workers' compensation benefits were provided under the Plan and Program by a self-funded large deductible under the coverage provided by Carrier Defendant.

132. Funding from Employer Defendants into their Plan to the pooled Plan bank accounts holding the Plan assets, with a reasonable degree of accounting certainty, is tabulated as set forth below as follows:

| **Employer Defendant** | **Plan Funding** |
|---|---|
| All American School Bus | $6,420,957 |
| Allstate | $22,112 |
| Amerifalls | $3,981,186 |
| Avante Care Management | $1,524 |
| Baypark | $30,547,086 |
| Bayview Home | $1,192,968 |
| BeSure | $768,940 |
| Birchwood | $7,734,351 |
| Blue Star | $17,242 |
| Bronx Gardens | $2,186,809 |
| Brookhaven | $9,073,157 |
| Brookside | $17,389,191 |

| | |
|---|---|
| Caring Companion | $28,526 |
| Caring Professionals | $13,487,942 |
| Cayuga Ridge | $1,569,154 |
| Clinical Staffing Resources | $2,475,251 |
| Clinical Staffing Resources Corp. | $253,231 |
| Cold Spring | $19,502,930 |
| Comfort Loving | $944,006 |
| Comprehensive Orleans | $1,290,280 |
| Comprehensive Williamsville | $1,367,387 |
| Cypress Gardens | $2,862,088 |
| Diamond Hill | $2,460,187 |
| Ditmas | $131,174 |
| Eagle Home Care | $2,732,906 |
| Eastchester | $9,425,237 |
| Edison | $9,366,183 |
| Elcor | $4,725,953 |
| Evergreen Court | $1,585,560 |
| Exclusive Nursing Staff Inc | $1,853,655 |
| Expert Care Staffing | $1,273,630 |
| Fair Management Consulting Co | $131,174 |
| Fiddlers Green | $2,903,640 |
| Garden Care | $4,777,141 |
| Golden Gate | $6,545,540 |
| Golden Hill | $16,034,532 |
| Golden Living | $3,061,260 |
| Grace Plaza | $9,835,286 |
| Greater New York | $4,824,738 |
| Greenbriar | $35,973 |
| Hamptons | $9,135,547 |
| Harbour Health | $5,528,749 |
| Harrys Nurses | $3,514,515 |
| HCS Home Care | $8,624,514 |
| HDA NY LLC | $4,190,736 |
| Home Health Management | $6,374,873 |
| Hudson Pointe | $2,387,599 |
| King David Center | $2,947,763 |
| Kingsbridge | $4,880,857 |
| Laconia | $2,508,938 |
| Little Neck | $5,145,347 |
| Living Waters | $448,414 |
| MB Food Processing | $24,880,409 |
| Monsey Family Drugstore | $14,838 |
| Nassau | $10,501,866 |

| | |
|---|---|
| Nathan Miller | $229,891 |
| New Carlton | $580,473 |
| New Roc | $515,345 |
| New Surfside | $4,386,620 |
| Norwich Rehab | $119,560 |
| Palffy | $264,775 |
| Park Avenue | $8,171,085 |
| Parkview | $4,238,560 |
| Pathways | $8,731,607 |
| Pharney | $231,940 |
| Preferred Home Care | $1,178,392 |
| Prokeep | $42,434 |
| Putnam Ridge | $3,645,736 |
| Riverdale | $7,184,053 |
| Rosewood | $2,058,560 |
| Ross Health | $2,013,898 |
| SC & BP | $9,364,874 |
| Seagate | $7,001,441 |
| Sentosa | $302,591 |
| Southpoint | $5,952,754 |
| Springcreek | $4,698,830 |
| STAT Portable | $22,662 |
| Sunharbor | $7,393,486 |
| The Landa Group | $24,671,576 |
| The Plaza Rehab | $12,148,576 |
| Throgs Neck | $7,971,552 |
| Townhouse | $11,955,687 |
| Upstate Diary | $1,613,166 |
| West Lawrence | $2,891,446 |
| White Plains | $2,567,654 |
| Woodmere | $10,469,718 |

133. The amounts set forth above were accrued and expensed in tax returns and other financial disclosure reports represented to provide employee benefits. Most of the funding came from the New York State Department of Health ("DOH") to the Employer Defendants, paying the Medicaid/Medicare per occupied bed rate, a bed rate arrived at by Cost Reports submitted by Employer Defendants to the DOH.

134. New York participates in Medicaid/Medicare under a State plan whereby New York's method for reimbursement of nursing facilities is described in Subpart 82-2 of the Commissioners Administrative Rules and Regulations. (10 NYCRR). Nursing facilities are compensated based on the Long-Term Care Case Mix Reimbursement System ("LTCCMRS"). The component of the LTCCMRS at issue in this case is the direct cost

component. Specifically, the annual Cost Reports identify accrued and expensed employee benefits. This is the starting point of a tracing analysis.

135. The accrued and expensed employee benefit funds have been traced to bank accounts at one bank, see paragraph 322 hereof.

136. The funds flowing through the Plan bank accounts were paid to cover the following Plan expenses and benefits for administrative, health & disability, and workers compensation.

137. Certain transactions have been identified as transactions prohibited under ERISA, plus unidentified transactions, all of which transactions that had nothing to do with benefits under the Plan or administration of the Plan. The total prohibited transactions were $68 million, unaccounted for, not secured in trust as required by ERISA, benefits that were never provided but benefits that should have been provided to staff, the Class Plaintiff.

138. The Plan assets were to be held in trust under NY Regulation 114 (11 NYCRR §126) to pay or provide benefits by self-insuring or purchasing insurance to pay ongoing present and actuarially determined future obligations of the Program

139. The Plan and Program provides that the Employer Defendants are jointly and severally liable under the Program including, but not limited to, the obligations to pay premiums, fund and maintain all required balances in the Loss Fund, and provide collateral to pay all obligations incurred under the Program. Any default by the Employer Defendants either jointly or individually in meeting financial obligations under the Program may be satisfied from any Loss Fund balances or collateral provided under the Program.

140. The Plan was "established or is maintained for the purpose of providing benefits for its participants or their beneficiaries, through the purchase of insurance or otherwise", the beneficiaries being employee Class Plaintiff. Reference Intervention Pg. 107 Par 229.

141. The Plan as organized by the Employer Defendants failed to provide any mechanisms for the Employer Defendants to manage the operation of their Plan under the Program. The Employer Defendants failed to monitor their Plan, failed to protect their Plan assets required for the Program and failed to supervise their Plan to make certain their Plan and Program functioned within the law as designed. Their Plan as organized failed to provide any mechanisms to monitor, supervise and audit to ascertain that the funds were properly being administered from the time Employer Defendants paid funds to provide employee benefits until the funds were spent for Plan and Program purposes; the Employer Defendants were required to, but did not, establish, supervise and maintain the operation of their Plan and Program pursuant to authorization of ERISA and in accordance with the Program approved by the State. Intervention Pg. 8 Par 4.

142. During the entire period of their Plan, these Employer Defendants, Owner Operator Defendants, party in interest Prohibited Transaction Defendants, in concert with State Officer Defendants, continued to wrongfully divert funds intended exclusively for their Plan to other purposes which had no relationship to the Program, although the

diversions had personal significance to the Prohibited Transaction Defendants who were allowed by the Employer Defendants to divert the Plan assets. Intervention Pg. 9 Par 7.

143. The Employer Defendants breached their fiduciary duties under ERISA by failing to make or arrange for payment of benefits to the Class, by failure to maintain plan assets in a fiduciary capacity, by failing to have adequate policies and procedures in place to monitor the operation of their Plan, by negligently and with malicious ulterior motives described herein, the Employer Defendants by cover of Muller, diverted, converted and did hide Plan assets rather than place them in trust protection as required by the Program and ERISA. Intervention Pg. 79 Par 152.

144. Evidence shows that the negligent management of Plan assets cover the period from 2010 to the present, although the Employer Defendants were sponsoring the Plan as far back as 2002, which ancient records prior to 2016 have yet to be uncovered because the Employer Defendants neglected to file the required Internal Revenue Code 5500 Returns until some of the Employer Defendants filed partial 5500 Returns beginning at the end of 2016, but even then neglecting to report the full extent of Plan assets that were accumulated in Plan bank accounts. By the negligent management of the Plan assets away from their intended purpose of providing benefits to the employee Class, they were ensnared in prohibited transactions under ERISA, transactions neglected to be identified in the IRC 5500 Returns.

145. Even though the Employer Defendants accrued and expensed funding for the benefits, the funds never made it to trust to be held by the Trustee Plaintiff. The benefits were to improve the skills of members of the Class Plaintiffs through apprentice training and continuing education, health, disability, Worker's Compensation, disability benefits, health benefits, as selected by each Employer Defendant for its Plan, selected from the benefits available under a Program approved by the State in 1994, for the purpose of investing in the welfare of employees of Employer Defendants, to provide skills for opportunities, but now even more important for safety of the well-trained employee, the persons they work or care for, and the general public, the funding was for the welfare benefit of the employee Class Plaintiffs for investment in their welfare by investing in the employees.

## Numerosity

146. The real Parties in Interest are the Class of employees of the Employer Defendants. Intervention Pg. 98 Par 202.

147. The number of members of the Class are essentially unenumerable but are not indeterminate. The members of the Class can be identified by payroll records, 940 and 941 reports to the Internal Revenue Service, and NYS 45 Reports to the State of New York filed by the Employer Defendants. Intervention Pg. 98 Par 203.

148. There are two subclasses to the Class: Intervention Pg. 98 Par 204.

149. First- the sub-class of the Class being all employees injured on the job while working for the Employer Defendants. Intervention Pg. 98 Par 204.

150. Second- the sub-class of the Class being "black or Spanish-surnamed persons who are capable of performing, or capable of learning to perform" in skilled occupations (herein the "Percy Sub-Class") entitled to apprentice training and continuing education in safety and skills. Intervention Pg. 99 Par 204.

151. Both sub-classes are united in interest with the Class. Intervention Pg. 99 Par 205.

152. The Class Defendant of Employees replaces the redacted names of persons listed as Defendant Employees in the motion to intervene, to protect the confidentiality of the individuals by proceeding as a Class of Employees entitled to benefits. Donna Hodge, Annette Hall, Karen Grant Williams and Alexi Arias are the class representatives of the Defendant Class. Intervention Pg. 99 Par 206.

**Common Issues of Law and Fact**

153. There is a commonality of the members of the Class as participants in a welfare plan sponsored by the Employer Defendants, for health, disability and workers' compensation, apprenticeship, training, continuing education, safety benefits. Intervention Pg. 99 Par 207.

154. The Employer Defendants failed to have policies and procedures in place to provide common sense control of the use of Plan assets; it was and is as though no one was monitoring the use of Plan assets to assure they benefit the Class of employees working for the Employer Defendants for whom the Plan assets were paid as represented by the Employer Defendants in cost reports, tax returns and financial statements. Detailed in this Complaint are the tens of millions of dollars represented to provide benefits to the employee Class, instead were diverted and converted to prohibited transactions in violation of ERISA and embezzled.

155. The complacency and bureaucracy of the State Department of Health aided and abetted the current disaster caused by unpreparedness by failing to regulate the Employer Defendants as the responsible parties, licensed and authorized by the State, failing to use a commonsense approach to monitor the Employer Defendants businesses, the State Officer Defendants receiving Reports oblivious to misrepresentations, Cost Reports which accrue monies to be expensed for benefits on of Medicaid and Medicare payments to Employer Defendants, benefits that expected a level of investment to improve the welfare of the employee Class, instead payment of funds into Plan assets diverted away from benefits to the personal gain of the Employer Defendants, Owner Operator Defendants and the Prohibited Transaction Defendants.

156. The issues of law and fact determining the claims of the Class, that the actions of the Defendant Employers named in this action and related actions, have caused, are causing, and will continue to cause serious, permanent and irreparable economic and social injury

and damage to the Class, are common to all members of the Class. Intervention Pg. 99 Par 208.

157.    The common issues of law and fact must be determined by this Court in order to fashion an appropriate equitable remedy and provide equitable relief for the benefit of the Class. Intervention Pg. 99 Par 209.

**Judicial Economy Intervention**

158.    This action avoids the prosecution of separate actions by multiplicity of actions involving the same individual members of the Class against the Employer Defendants which would create a likelihood of inconsistent or varying adjudications with respect to individual members of the Class. Intervention Pg. 99 Par 210.

**Class Counsel and Class Representative**

159.    disclosures regarding Class Counsel are detailed in a Declaration filed in this Case at Docket #2.

### First Cause of Action Against the Employer Defendants for liability to the employee Class Plaintiff for Negligent Mismanagement of Employment Activities and Practices

160.    All the allegations previously stated are re-alleged and incorporated herein.

161.    The Employer Defendants and their Owner Operator Defendants have a duty arising from governance and fiduciary responsibility over Plan assets, which has been breached causing liability arising out of mismanagement of employment activities and practices by failing in the duties enumerated at paragraph 26 hereof.

162.    It is foreseeable to the Employer Defendants and the Owner Operator Defendants that the members of the Class Plaintiff are employees within the zone of persons covered by these duties, the breach of which has caused damages to the employee Class Plaintiff.

163.    The breach of the duties is the proximate cause of the losses experienced by the Plan as hereinafter set forth in the Second, Third, Fifth, Sixth and Seventh Causes of Action.

### Second Cause of Action against Certain Identified Employer Defendants for Denial of Benefits to the Class Plaintiff and for Failing to Fund the Trust under an ERISA Plan or Program

164.    All the allegations previously stated are re-alleged and incorporated herein, and Intervention Pg. 107 Par 228, Pg. 108 Par 238.

165.    Plaintiff prays for a judgment against the Employer Defendants to pay Plan assets to fund the trust as follows:

| Employer Defendant | 12/31/20  Reserves |
|---|---|
| All American School Bus | $2,296,431 |
| Allstate | TBD |
| Amerifalls | $610,413 |
| Baypark | $4,235,388 |
| Bayview Home | TBD |

| | |
|---|---|
| BeSure | TBD |
| Beverly's | TBD |
| Birchwood | $441,308 |
| Blue Star | TBD |
| Bronx Gardens | $989,508 |
| Brookhaven | $1,234,564 |
| Brookside | $1,629,556 |
| Caring Companion | TBD |
| Caring Professionals | $1,211,218 |
| Cayuga Ridge | TBD |
| Clear Choice | TBD |
| Clinical Staffing Resources | $419,959 |
| Cold Spring | $4,435,181 |
| Comfort Loving | TBD |
| Comprehensive Orleans | $200,115 |
| Comprehensive Williamsville | TBD |
| Curis Medical | TBD |
| Cypress Gardens | $206,368 |
| Diamond Hill | TBD |
| Ditmas | TBD |
| Eagle Home Care | TBD |
| Eastchester | $198,072 |
| Edison | $572,667 |
| Elcor | $197,249 |
| Evergreen Court | TBD |
| Expert Care Staffing | $122,314 |
| Fiddlers Green | $576,685 |
| Garden Care | $376,453 |
| Golden Gate | $501,310 |
| Golden Hill | $2,592,032 |
| Golden Living | TBD |
| Grace Plaza | $738,662 |
| Greater New York | TBD |
| Greater New York Services | TBD |
| Greenbriar | TBD |
| Hamptons | $2,064,691 |
| Harbour Health | $608,442 |
| Harrys Nurses | $108,798 |
| HCS Home Care | $1,192,846 |
| Home Attendant Services of Hyde Park | $4,337,462 |
| Home Health Management | $85,753 |
| Hudson Pointe | $199,023 |
| Kingsbridge | $1,025,678 |
| Laconia | $248,804 |
| Little Neck | $430,772 |
| Living Waters | TBD |
| Magna | TBD |

| | |
|---|---|
| MB Food Processing | $4,496,851 |
| Mega Staffing | $328,578 |
| Monsey Family Drugstore | TBD |
| Mrs. Mary's | $330,334 |
| Nassau | $2,487,099 |
| Nathan Miller | TBD |
| New Carlton | $348,972 |
| New Roc | TBD |
| New Surfside | TBD |
| Northwoods | TBD |
| Norwich Rehab | TBD |
| Palffy | TBD |
| Park Avenue | $1,630,672 |
| Parkview | $406,830 |
| Pathways | TBD |
| Pharney | TBD |
| Preferred Home Care | $401,947 |
| Prokeep | TBD |
| Putnam Ridge | $662,830 |
| Ramapo | TBD |
| Riverdale | $2,455,884 |
| Rosewood | $228,077 |
| Ross Health | $215,584 |
| SC & BP | $1,341,179 |
| Seagate | $1,393,407 |
| Sentosa | TBD |
| Southpoint | $1,869,034 |
| Springcreek | $257,447 |
| STAT Portable | TBD |
| Sunharbor | $437,548 |
| The Landa Group | $3,665,489 |
| The Plaza Rehab | $3,327,061 |
| Throgs Neck | $1,697,008 |
| Townhouse | $696,814 |
| Upstate Diary | TBD |
| West Lawrence | TBD |
| White Plains | $414,496 |
| Woodmere | $659,194 |

### Third Cause of Action against the Employer Defendants to Recover $53 million in Plan Assets Diverted by Parties in Interest in Prohibited Transactions

166.   All the allegations previously stated are re-alleged and incorporated herein.

167.   The Class seeks disgorgement and recovery of Plan assets into trust for the benefit of the Class as Program participants in an amount as will be determined at trial.

168.   A scheme has been perpetrated by the Employer Defendants and Parties in Interest ("Parties in Interest" or "party in interest Prohibited Transaction Defendants") involving the illegal diversion of Plan assets.

169.   Plaintiff in Intervention brings this action to recover the Plan assets into trust for the payment of benefits to the Class, and for disgorgement of Plan assets to trust by permanent injunctions, imposition of a constructive trust, restitution, and disgorgement pursuant to §502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132, and the Declaratory Judgment Act, 28 U.S.C. § 2201.

170.   According to the Complaint in Nassau County action 609877/2019, the Plaintiffs, the employers of the injured employees, believed that Plan assets were used to cover the Employer Defendants' liability, alleging they did not know that the fund was wrongfully taken and stolen by the Philipson Defendants for their own personal use. Nevertheless, the Employer Defendants, the Plaintiffs in the Nassau County action in which intervention is sought, are liable to their employees for benefits covered by the Program. The fund to cover this liability is the $53 million identified in the Complaint in this Nassau County case 609877/2019, as stated in the Intervention Complaint which was filed at Docket #7 of Nassau County case 609877/2019.

171.   Oriska Corporation, the Plaintiff in Intervention and the Plaintiffs in the enumerated 26 lawsuits, is asserting rights of subrogation for the medical care and indemnity including lost wage and expense reimbursement paid and to be paid long into the future to Class members who have been injured and are entitled to benefits, as set forth in the 26 lawsuits referenced herein.

172.   The Plaintiffs attempted to bury the $53 million, using the Court to sanction that the $53 million is only $50 thousand, cutting off the 1060 third party injured employees' access to the $53 million fund, replacing the $53 million fund with $50 thousand, hiding and secreting the $53 million fund off-shore, a fund intended to cover the Employer Defendants' liability. The parties to this action in which intervention was granted, tried to reduce the $53 million fund to $50 thousand by amendment of the Complaint in Nassau County Action 609877-2019 after learning of the liability of $88,780,656.83 to the 1060 injured employees, and are now attempting to hide the $53 million spoils, spoils resulting from diversion and conversion of Plan assets expensed by the Employer Defendants. This intervention seeks to hold the Employer Defendants responsible for their liability and Obligations to their Plan. This intervention seeks to reach the $53 million fund to cover the Obligations of their Plan.

173.   The Employer Defendants allege in their Complaint in Nassau County litigation Index 609877/2019 that they unknowingly paid supposed insurance premiums into insurance entities owned by Bent Philipson, for what the Employer Defendants thought was third-party insurance coverage. Philipson then arranged for a third-party insurance broker to invoice Employers for payments which Philipson misrepresented to be entirely for premiums owed. Philipson did this through fraudulently invoicing and diverting over

$53 million in his fraudulent scheme. Philipson caused insurance invoices to be issued to each of the Employer Defendants while Philipson was in control of the Employer Defendants. Philipson's fraudulent insurance scheme invoiced Employer Defendants for premium that Philipson's insurance entity was collecting as alleged premium payments, although Philipson did not intend on procuring insurance coverage. The facts pled in the Complaint in Index 609877/2019 are that Philipson secretly used the funds paid into their Plan. The premium payments paid by the Employers "were paid toward third-party insurance providers, and the majority of the premium payments were diverted to Philipson's secret insurance entity to fund his own insurance vehicle". The Complaint Index 609877/2019 sets forth facts that Philipson formed his own insurance entity and that his insurance entity was the insurance provider to Plaintiffs/Defendants in Intervention, wrongfully diverting funds away from Employers into his secretly formed insurance entity.

174.   Each Plaintiffs must be compelled to pay into trust its liability to their Plan, admitted by the Plaintiffs to be the $53 million fund sought in Nassau County Action 609877, Plan assets lost by the Plaintiffs, to be paid to trust to cover benefits under the Program, individually tabulated by prorating each Plaintiff's estimated payroll to the payroll of all Plaintiffs, as follows:

| Employer Defendant | 53 Mil |
|---|---|
| Baypark | $9,452,593 |
| Brookhaven | $4,122,630 |
| Eastchester | $3,344,023 |
| Golden Gate | $3,249,283 |
| Grace Plaza | $5,048,571 |
| Hamptons | $4,692,384.28 |
| Nassau | $3,944,929.88 |
| New Surfside | $2,064,219 |
| Park Avenue | $3,543,870 |
| Southpoint | $2,576,386 |
| Springcreek | $2,324,622 |
| Throgs Neck | $2,904,549 |
| Townhouse | $5,387,141 |

**Fourth Cause of Action against Certain Identified Employer Defendants to Recover $68 million in Plan Assets Diverted by Parties in Interest in Prohibited Transactions**

175.   All the allegations previously stated are re-alleged and incorporated herein. Intervention Pg. 111 Par 239.

176.   $68 million has been lost on Prohibited Transactions during the period covering June 11,2010 through May 1, 2018 due to the intentional or negligent acts of the Employer Defendants under the control of Philipson and/or Sentosa Care LLC in failing to protect

their Plan assets and maintain the Plan assets in trust for Program purposes. Intervention Pg. 111 Par 240.

177.   Upon information and belief, the $68 million overlaps the $53 million set forth in the First Cause of Action to cover the Employer Defendants' liability, the $53 million identified in the Complaint in this Nassau County Case 609877/2019, as stated in the Intervention Complaint which was filed at Docket #7 of Nassau County case 609877/2019 and was removed to the EDNY Case 20-cv-06291. Intervention Pg. 111 Par 241.

178.   The $68 million has been lost to prohibited transactions, not providing benefits to the Class. Instead of the $68 million being maintained in trust, the $68 million has been diverted, Plan assets which have been converted and stolen away employee benefits from their Plan due to the intentional or negligent acts of the Employer Defendants and their Owner Operators. Intervention Pg. 111 Par 242.

179.   This $68 million liability of the Employer Defendants to their Plan, is in the alternative to some of those Employer Defendants which are also Plaintiffs in this Action calling for the disgorgement by the Plaintiffs of the $68 million. Intervention Pg. 111 Par 243.

180.   The several liability of each Employer Defendant to be paid to trust to cover benefits under the Program, prorated be each Employer Defendants' estimated payroll as a ratio to the payroll of all Plaintiffs in this Nassau County Action Case 609877/2019. The name and their percentage of the $68 million that was allocated to each Plaintiff, is as follows: Intervention Pg. 111 Par 244.

| Employer Defendant | 68 Mil |
| --- | --- |
| All American School Bus | $107,635 |
| Allstate | $371 |
| Amerifalls | $133,474 |
| B&B | $26 |
| Baypark | $20,973,084 |
| Bayview Home | $9,001 |
| BeSure | $12,890 |
| Birchwood | $65,983 |
| Blue Star | $289 |
| Bronx Gardens | $36,658 |
| Brookhaven | $2,699,159 |
| Brookside | $3,398,624 |
| Caring Companion | $956 |
| Caring Professionals | $226,100 |
| Cayuga Ridge | $23,872 |
| Clear Choice | $4,674 |
| Clinical Staffing Resources | $82,986 |
| Cold Spring | $4,300,927 |
| Comfort Loving | $15,824 |

| | |
|---|---|
| Comprehensive Orleans | $96,164 |
| Comprehensive Williamsville | $96,164 |
| Curis Medical | $96,164 |
| Cypress Gardens | $96,164 |
| Diamond Hill | $106,222 |
| Ditmas | $2,199 |
| Eagle Home Care | $45,812 |
| Eastchester | $851,430 |
| Edison | $314,013 |
| Elcor | $64,940 |
| Evergreen Court | $26,579 |
| Exclusive Nursing | $31,073 |
| Expert Care Staffing | $21,069 |
| Fiddlers Green | $250,098 |
| Five Star | $204,392 |
| Garden Care | $73,350 |
| Golden Gate | $119,884 |
| Golden Hill | $1,709,146 |
| Golden Living | $39,271 |
| Grace Plaza | $186,269 |
| Greater New York | $162,787 |
| Greater New York Services | $9,688 |
| Greenbriar | $603 |
| Hamptons | $3,242,864 |
| Harbour Health | $36,248 |
| Harrys Nurses | $58,914 |
| HCS Home Care | $289,147 |
| Home Attendant Services of Hyde Park | $1,230,343 |
| Home Health Management | $106,863 |
| Hudson Pointe | $45,033 |
| Kingsbridge | $241,956 |
| Laconia | $53,756 |
| Little Neck | $71,793 |
| Living Waters | $7,517 |
| Magna | $763 |
| MB Food Processing | $417,073 |
| Mega Staffing | $6,622 |
| Monsey Family Drugstore | $736 |
| Mrs. Mary's | $33,399 |
| Nassau | $4,161,201 |
| Nathan Miller | $3,459 |
| New Carlton | $12,969 |
| New Roc | $9,223 |
| New Surfside | $152,321 |

| | |
|---|---|
| Northwoods | $17,557 |
| Norwich Rehab | $2,519 |
| Palffy | $3,502 |
| Park Avenue | $3,738,155 |
| Parkview | $342,011 |
| Pathways | $225,646 |
| Pharney | $6,363 |
| Preferred Home Care | $39,507 |
| Priority Care | $18,929 |
| Promed | $50,508 |
| Putnam Ridge | $126,010 |
| Ramapo | $2,500 |
| Riverdale | $217,020 |
| Rosewood | $93,237 |
| Ross Health | $45,122 |
| S & A | $47,193 |
| SC & BP | $313,969 |
| Seagate | $122,460 |
| Sentosa | $5,072 |
| Southpoint | $95,057 |
| Springcreek | $591,877 |
| STAT Portable | $380 |
| Sunharbor | $139,917 |
| The Landa Group | $827,144 |
| The Plaza Rehab | $129,399 |
| Throgs Neck | $3,063,785 |
| Townhouse | $5,878,428 |
| Upstate Diary | $54,083 |
| West Lawrence | $50,515 |
| White Plains | $644,331 |
| Woodmere | $1,594,707 |

**Fifth Cause of Action against Owners Operator Defendants of Identified Employer Defendants Culpable for Breach of ERISA Fiduciary Duties in the Diversion of $53 Million in Plan Assets in the Third Cause of Action**

181.   All the allegations previously stated are re-alleged and incorporated herein. Intervention Pg. 112 Par 245.

182.   The Employee Retirement Income Security Act (ERISA), codified at 29 USC§ 1001 et seq., has governed "employee welfare funds, which are defined, 29 USC§1002(1) as: any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund,

or program was established or is maintained for the purpose of providing for its participants or their beneficiaries." Intervention Pg. 112 Par 246.

183. The Program was established and maintained by the Employer Defendants for the purpose of providing benefits for its participants or their beneficiaries, through the purchase of insurance covering health, disability and workers' compensation. Intervention Pg. 113 Par 247.

184. Each of the Employer Defendants are plan sponsors ("Plan Sponsors") under the Program, the employer-sponsored Program governed by ERISA, in which the Class of employees participate. Intervention Pg. 113 Par 248.

185. The Owner Operator Defendants are Parties in Interest and/or fiduciaries, along with a myriad of persons identified as Parties in Interest, pursuant to ERISA § 3(14), 29 U.S.C. § 1002(14) which defines a "party in interest" to an employee benefit plan, in relevant part, as:"(A) any fiduciary (including, but not limited to, any administrator, officer, trustee, or custodian), counsel, or employee of such employee benefit plan; (B) a person providing services to such plan; (C) an employer any of whose employees are covered by such plan; and (D) an employee organization any of whose members are covered by such plan. Intervention Pg. 113 Par 249.

186. ERISA Section 502(a)(2) provides for relief under ERISA Section 409, 29 U.S.C. § 1109 and Section 409(a) which provides that a fiduciary is personally liable to a plan for any losses their Plan suffers as a result of the fiduciary's breach and must restore to their Plan any profits the fiduciary realized as a result of a misuse of plan assets to the damage of Plaintiff.

187. Carrier Defendant is subrogated to the rights of the Defendant Class." Intervention Pg. 113 Par 250.

188. ERISA § 406, 29 U.S.C. § 1106, prohibits certain transactions between their Plan and Parties in Interest. Specifically, ERISA § 406(a) (1), 29 U.S.C. § 1106(a) (1), provides: "A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect(A) sale or exchange, or leasing, of any property between the plan and a party in interest;(B) lending of money or other extension of credit between the plan and a party in interest;(C) furnishing of goods, services, or facilities between the plan and a party in interest;(D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan; or (E) acquisition, on behalf of the plan, of any employer security or employer real property in violation of section 1107(a) of this title". Intervention Pg. 113 Par 251.

189. In violation of ERISA's fiduciary duty and prohibited transaction provisions, as part of the scheme, the Employer Defendants in the operation of the Program diverted from their Plan funds identified for health, disability, and workers' compensation benefits, diverting Plan assets needed to cover benefits in violation of their fiduciary duties to act solely in the interest of the Class as plan participant beneficiaries. Plan assets are for the

exclusive purpose of providing benefits to the Class along with specific identified expenses of their Plan. The Employer Defendants in control of their Plan, failed to carry out their duties to prudently pay only reasonable plan expenses. Intervention Pg. 114 Par 252.

190. Under 29 U.S.C.S. §1003(b)(3), their Plan of the Employer Defendants is not maintained solely for the purpose of complying with applicable workers' compensation laws, therefore their Plan and Program is preempted by ERISA, 29 U.S.C.S. § 1001 et seq. Intervention Pg. 114 Par 253.

191. Employer Defendants, as a result of exercising control and management over Fund Assets under 29 U.S.C. 186(c)(5) "employee benefit plans" within the meaning of 29 U.S.C. 1002(37), (1), (2) and (3), the Employer Defendants are fiduciaries under ERISA, as defined in 29 U.S.C. § 1002(1)(a) of ERISA. Intervention Pg. 114 Par 254.

192. Under ERISA, a fiduciary is required to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries, for the exclusive purpose of providing benefits to [them]." 29 U.S.C. §1104(a)(1). Intervention Pg. 114 Par 255.

193. As part of the scheme the Employer Defendants as fiduciaries used Fund Assets to satisfy other personal or business obligations or otherwise underfunded the obligations, breaching their fiduciary duty under ERISA. Under ERISA, any person who is a fiduciary with respect to the plan who breaches any one of the responsibilities, obligations, or duties imposed upon fiduciaries is personally liable "to make good to such plan any losses to the plan resulting from each such breach, and to restore the plan any profits of such fiduciary which have been made through the use of assets of the plan by the fiduciary..." 29 U.S.C. §1109(a). Intervention Pg. 115 Par 256.

194. It was part of the scheme for Employer Defendants, or persons of controlling the Employer Defendants, to willfully and intentionally use Fund Assets for purposes other than the exclusive purpose of providing benefits to fund participants and beneficiaries. Intervention Pg. 115 Par 257.

195. The Employer Defendants breached their fiduciary duties under ERISA by failure to maintain Plan assets in a fiduciary capacity, because of Employer Defendants failure to deposit Plan assets in trust. Intervention Pg. 115 Par 258.

196. Employer Defendants owe the Class of Employees, their Plan and its trust, and Plaintiff in Intervention, a common-law fiduciary duty to act in good faith. Intervention Pg. 115 Par 258.

197. As a direct and proximate cause of Defendants' breaches, the Class have suffered damages including, but not limited to, additional and ongoing life of claim costs for medical treatment and reimbursement of lost wages of employees of Employer Defendants which are unable to be reimbursed out of Plan assets which should have been in trust. Intervention Pg. 115 Par 260.

198. By reason of the acts of Employer Defendants alleged herein, the Class Defendants have suffered, are suffering and will continue to suffer damages and irreparable damage, unless said Employer Defendants are restrained from these wrongful acts. Intervention Pg. 115 Par 261.

199. Plaintiffs seek monetary and equitable relief in connection breach of ERISA fiduciary duties of Owner Operators of certain identified Employer Defendants. Intervention Pg 116 Par 262.

200. The Owner Operators in control of the Plaintiff/Employer Defendants identified in the First Cause of Action are individually liable in damages in the share that they have received by direct payment or accounting considerations in corporate distributions as follows: Intervention Pg. 116 Par 263.

| **OWNER OPERATORS** | **53 Mil** |
| --- | --- |
| Gabor Adler | $436,986 |
| George Adler | $436,986 |
| Kwame Amoafo-danquah | unknown |
| Agnes Arnestein | minority owner |
| Anthony Bacchi | $2,082,056 |
| Matthew Barbara | minority owner |
| Paul Barbara | minority owner |
| Aaron Becher | $549,179 |
| Pola Becher | $127,801 |
| Hershel Bedansky | unknown |
| Howard Belford | minority owner |
| Scott Bialick | minority owner |
| Robert Bleier | $1,129,451 |
| David Bloom | $436,986 |
| Paula Bokow | unknown |
| Joel Brach | unknown |
| Natan Brach | unknown |
| Barry Braunstein | minority owner |
| Murray Bresky | minority owner |
| Steven Brown | minority owner |
| Philip Buchsbaum | minority owner |
| Richard Bursek | unknown |
| Richard Busell | minority owner |
| Colin C. Hart | unknown |
| Ira Cammeyer | $339,644.65 |
| Alan Chopp | $112,192.86 |
| Joshua Chopp | unknown |

| | |
|---|---|
| David Cohen | unknown |
| David Crytryn | $127,801 |
| David Dachs | unknown |
| Solomon Eidlisz | $199,864 |
| Neil Einhorn | $339,644 |
| Scott Einiger | minority owner |
| Abraham Eisen | unknown |
| Sam Eisen | unknown |
| Steve Eisman | minority owner |
| Ignatius Elefant | unknown |
| Philipson Family Trust | unknown |
| Martin Farbeblum | $403,573 |
| Benjamin Farbenblum | $477,717 |
| Ed Farbenblum | unknown |
| Edward Farbenblum | $704,139 |
| Martin Farbenblum | $1,306,399 |
| Michael Farbenblum | $589,910 |
| Esther Farkovits | $339,644 |
| Jordan Fensterman | minority owner |
| Lori Fensterman | $1,475,254 |
| Robert Fensterman | $1,006,499 |
| Staci Fensterman | minority owner |
| Samuel Ferrara | minority owner |
| Mayer Fischl | $961,442 |
| Benjamin Fishoff | $566,768 |
| Patrick Formato | minority owner |
| John Francher | unknown |
| David Freid | $127,801 |
| Moshe Freilich | unknown |
| Andrew Freundlich | $339,644 |
| Sigmund Freundlich | $339,644 |
| Leo Friedman | unknown |
| David Gast | unknown |
| Louis Gellis | unknown |
| William Gillick | unknown |
| Rivky Goldberger | $127,801 |
| Leon Goldenberg | unknown |
| Jeffrey Goldstein | $112,192 |
| Anne Gottleib | unknown |
| Miklows Gottlieb | unknown |
| Niklos Gottlieb | unknown |
| Solomon Green | unknown |

| | |
|---|---:|
| Joel Greenberg | minority owner |
| Eric Greenberger | unknown |
| Eli Greenspan | minority owner |
| Steven Greenstein | minority owner |
| Avrumi Grossman | unknown |
| Marton Guttman | unknown |
| Valarie Henry | unknown |
| Johanan Hirsch | $477,717 |
| Leopold Hirsch | $477,717 |
| Libe Hirsch | unknown |
| Ruth Hirsch | $929,555 |
| David Hoffman | $339,644 |
| Pinchos Hoffman | $112,192 |
| Pinchus Hoffman | $339,644 |
| Steven J Eisman | $1,422,330 |
| Anthony J. Bacchi | minority owner |
| Jack Janklowicz | $199,864 |
| Leonard Janklowicz | $199,864 |
| Jack Janklowitz | $72,063 |
| Shorefront Jewish Geriatric Center | unknown |
| David Jones | unknown |
| Judith Jones | unknown |
| Mendel Kaff | unknown |
| Eric Kalt | $112,192 |
| Yoel Karpen | unknown |
| Miriam Karpf | unknown |
| Allen Kass | minority owner |
| Martin Kass | minority owner |
| Martin Katz | unknown |
| Shelley Katz | minority owner |
| Shelly Katz | unknown |
| Manny Kaufman | unknown |
| Yosef Kaufman | unknown |
| Alan Kessler | minority owner |
| Arnold Klapper | $477,717 |
| George Klein | $339,644 |
| Larry Klein | $339,644 |
| Eleanor Kluger | unknown |
| Robert Kolman | $112,192 |
| Dean Korlik | minority owner |
| William Korn | $339,644 |

| | |
|---|---|
| Irina Kostesky | $339,644 |
| Howard Krant | unknown |
| Ephram Lahasky | unknown |
| Benjamin Landa | $4,263,177 |
| David Landa | unknown |
| Yechiel Landa | $127,801 |
| Nathan Landau | unknown |
| James Lapolla | unknown |
| Tibor Lebovich | unknown |
| Morty Lehasky | unknown |
| David Leifer | unknown |
| Barry Leistner | minority owner |
| Chana Lerner | $436,986 |
| Michael Levitan | minority owner |
| Rich Levitan | minority owner |
| Teddy Lichtscein | $127,801 |
| Neuman Lj Partners | unknown |
| Isaac Madeb | unknown |
| Dovi Marc Faivish | unknown |
| Sam Mayerovitz | unknown |
| Girshas Minster | $339,644 |
| Neuman Mn Partners | unknown |
| Gavriel Mordechaev | $72,063 |
| Gabriel Mordechey | $127,801 |
| Sharyn Mukamal | minority owner |
| Katherine Muller | unknown |
| Laurie Netzer | $339,644 |
| Leo Oberlander | unknown |
| Sander Oberlander | unknown |
| Milton Ostreicher | $127,801 |
| Susan Ostreicher | unknown |
| Irwin Peckman | minority owner |
| Ben Philipson | $4,690,290 |
| Bent Philipson | minority owner |
| Deborah Philipson | $1,363,270 |
| Robert Pines | minority owner |
| Israel Pollak | $112,192 |
| Jacob Pollak | $112,192 |
| Natan Pollak | unknown |
| Renee Pollak | unknown |
| Sylvia Pollak | unknown |
| Theodore Pollak | $127,801.56 |

| | |
|---|---|
| Michael Pruzansky | $112,192.86 |
| Diana R. Koehler | unknown |
| Jonathan Redner | unknown |
| Lawrence Reichenberger | minority owner |
| Mark Reisman | unknown |
| Mayer Rispler | $113,170 |
| Brian Rosenman | unknown |
| Kenneth Rozenberg | unknown |
| Berish Rubenstein | minority owner |
| Dina Rubenstein | $112,192 |
| Rivkie Rubenstein | unknown |
| Ira Rubin | unknown |
| Malky Saffran | unknown |
| Boruch Schepps | unknown |
| Pamela Schepps | unknown |
| Nat Scherman | unknown |
| Richard Schildron | minority owner |
| Samuel Schlesinger | unknown |
| Jacob Schoenberger | unknown |
| Michael Schwartz | $339,644 |
| Leslie Shafrank | $339,644 |
| Henry Shayovitz | minority owner |
| Agnes Shemia | unknown |
| Jeff Shemia | unknown |
| Alexander Sherman | unknown |
| Israel Sherman | unknown |
| Leah Sherman | unknown |
| Nat Sherman | $339,644.65 |
| Samuel Sherman | unknown |
| Warren Sherman | unknown |
| Hindy Sirkis | minority owner |
| Moshe Sirkis | $534,329 |
| Alexander Skoczlas | unknown |
| Joseph Skoczylas | unknown |
| Tali Skoczylas | unknown |
| Dominic Spira Md | unknown |
| Jonathan Steinberg | unknown |
| Miriam Steinberg | unknown |
| Ronald Stern | $112,192 |
| Mariam Sternberg | unknown |
| Lorraine Takesky | minority owner |
| Mitch Teller | unknown |

| | |
|---|---|
| Kenneth Tesslar | minority owner |
| Kenneth Tessler | minority owner |
| Aaron Unger | $127,801 |
| unknown | $10,874,24unknown |
| Eila Vinitzky | unknown |
| Yuliya Vinokurova | unknown |
| Jeffrey Vogel | minority owner |
| Sherman Vogel | minority owner |
| Peggy Weberman | unknown |
| Philip Weberman | unknown |
| Toby Weinberger | $127,801 |
| Zoltan Weinberger | unknown |
| Regina Weinstock | $477,717 |
| Ari Weiss | unknown |
| Berish Weiss | unknown |
| Berry Weiss | unknown |
| Micahel Weiss | minority owner |
| Michael Weiss | minority owner |
| Robyn Weiss | $339,644 |
| Shlomie Weiss | unknown |
| Chaya Willinger | unknown |
| Robert Wolf | $127,801 |
| Peyman Younesi | unknown |
| Mark Zaffrin | minority owner |
| Ephraim Zagelbaum | unknown |
| Kenneth Zitter | unknown |
| David Zohler | unknown |

### Sixth Cause of Action against Owners Operator Defendants of Identified Culpable Employer Defendants for Breach of ERISA Fiduciary Duties in the Diversion of $68 million in Plan Assets

201. All the allegations previously stated are re-alleged and incorporated herein. Intervention Pg 118 Par 264.

202. Upon information and belief, the amounts recoverable in this Sixth Cause of Action overlap the amounts recoverable in the Fifth Cause of Action insofar as the Fourth Cause of Action overlaps the First Cause of Action. Intervention Pg 119 Par 265.

203. The Owner Operators in control of the Employer Defendants identified in the First Cause of Action are individually liable in damages in the share that they have received by direct payment or accounting considerations in corporate distributions as follows: Intervention Pg 119 Par 266.

|  | **68 Mil** |
|---|---|
| Gabor Adler | $578,360.83 |
| George Adler | $578,360.83 |
| Kwame Amoafo-danquah | $7,516.81 |
| Agnes Arnestein | $280,399.78 |
| Anthony Bacchi | $2,693,748.08 |
| Matthew Barbara | $215,979.56 |
| Paul Barbara | $215,979.56 |
| Aaron Becher | $655,896.29 |
| Pola Becher | $83,673.93 |
| Hershel Bedansky | $307,585.68 |
| Howard Belford | $215,979.56 |
| Scott Bialick | $215,979.56 |
| Robert Bleier | $292,139.86 |
| David Bloom | $578,360.83 |
| Paula Bokow | $118,263.67 |
| Joel Brach | $245.19 |
| Natan Brach | $118,263.67 |
| Barry Braunstein | $215,979.56 |
| Murray Bresky | $215,979.56 |
| Steven Brown | $215,979.56 |
| Philip Buchsbaum | $215,979.56 |
| Richard Bursek | $244,163.75 |
| Richard Busell | $215,979.56 |
| Colin C. Hart | $50,019.55 |
| Ira Cammeyer | $362,381.27 |
| Alan Chopp | $125,776.62 |
| Joshua Chopp | $118,263.67 |
| David Cohen | $118,263.67 |
| David Crytryn | $83,673.93 |
| David Dachs | $18,424.18 |
| Solomon Eidlisz | $102,022.14 |
| Neil Einhorn | $362,381.27 |
| Scott Einiger | $215,979.56 |
| Abraham Eisen | $118,263.67 |
| Sam Eisen | $6,622.16 |
| Steve Eisman | $215,979.56 |
| Ignatius Elefant | $108,510.19 |
| Philipson Family Trust | $80,652.10 |
| Martin Farbeblum | $765,424.85 |
| Benjamin Farbenblum | $121,632.85 |
| Ed Farbenblum | $488,327.51 |
| Edward Farbenblum | $486,624.20 |

| | |
|---|---|
| Martin Farbenblum | $1,639,511.17 |
| Michael Farbenblum | $199,168.31 |
| Esther Farkovits | $523,803.82 |
| Jordan Fensterman | $215,979.56 |
| Lori Fensterman | $3,273,243.69 |
| Robert Fensterman | $2,233,186.76 |
| Staci Fensterman | $215,979.56 |
| Samuel Ferrara | $215,979.56 |
| Mayer Fischl | $1,008,024.65 |
| Benjamin Fishoff | $540,395.70 |
| Patrick Formato | $215,979.56 |
| John Francher | $603.03 |
| David Freid | $83,673.93 |
| Moshe Freilich | $81,393.35 |
| Andrew Freundlich | $362,381.27 |
| Sigmund Freundlich | $362,381.27 |
| Leo Friedman | $80,652.10 |
| David Gast | $24,040.99 |
| Louis Gellis | $9,543.17 |
| William Gillick | $36,247.59 |
| Rivky Goldberger | $83,673.93 |
| Leon Goldenberg | $118,263.67 |
| Jeffrey Goldstein | $127,555.00 |
| Anne Gottleib | $18,424.18 |
| Miklows Gottlieb | $350,038.11 |
| Niklos Gottlieb | $63,788.27 |
| Solomon Green | $118,263.67 |
| Joel Greenberg | $215,979.56 |
| Eric Greenberger | $63,005.05 |
| Eli Greenspan | $215,979.56 |
| Steven Greenstein | $215,979.56 |
| Avrumi Grossman | $156,984.35 |
| Marton Guttman | $27,041.67 |
| Valarie Henry | $12,889.82 |
| Johanan Hirsch | $121,632.85 |
| Leopold Hirsch | $121,632.85 |
| Libe Hirsch | $118,263.67 |
| Ruth Hirsch | $722,600.10 |
| David Hoffman | $362,381.27 |
| Pinchos Hoffman | $77,535.46 |
| Pinchus Hoffman | $362,381.27 |
| Steven J Eisman | $3,155,817.91 |
| Anthony J. Bacchi | $215,979.56 |
| Jack Janklowicz | $214,051.56 |

| | |
|---|---|
| Leonard Janklowicz | $214,051.56 |
| Jack Janklowitz | $18,348.20 |
| Shorefront Jewish Geriatric Center | $122,460.34 |
| David Jones | $170,988.51 |
| Judith Jones | $153,889.65 |
| Mendel Kaff | $81,393.35 |
| Eric Kalt | $77,535.46 |
| Yoel Karpen | $45,811.99 |
| Miriam Karpf | $5,711.02 |
| Allen Kass | $215,979.56 |
| Martin Kass | $215,979.56 |
| Martin Katz | $48,241.16 |
| Shelley Katz | $215,979.56 |
| Shelly Katz | $48,241.16 |
| Manny Kaufman | $0.00 |
| Yosef Kaufman | $18,424.18 |
| Alan Kessler | $264,220.73 |
| Arnold Klapper | $121,632.85 |
| George Klein | $362,381.27 |
| Larry Klein | $362,381.27 |
| Eleanor Kluger | $2,500.48 |
| Robert Kolman | $77,535.46 |
| Dean Korlik | $633,052.43 |
| William Korn | $362,381.27 |
| Irina Kostesky | $362,381.27 |
| Howard Krant | $219.46 |
| Ephram Lahasky | $24,040.99 |
| Benjamin Landa | $3,622,728.89 |
| David Landa | $413,572.18 |
| Yechiel Landa | $83,673.93 |
| Nathan Landau | $41,492.88 |
| James Lapolla | $106,862.65 |
| Tibor Lebovich | $244,163.75 |
| Morty Lehasky | $120,204.93 |
| David Leifer | $307,585.68 |
| Barry Leistner | $215,979.56 |
| Chana Lerner | $578,360.83 |
| Michael Levitan | $215,979.56 |
| Rich Levitan | $215,979.56 |
| Teddy Lichtscein | $83,673.93 |
| Neuman Lj Partners | $118,263.67 |
| Isaac Madeb | $118,263.67 |
| Dovi Marc Faivish | $48,241.16 |

| | |
|---|---|
| Sam Mayerovitz | $413,572.18 |
| Girshas Minster | $362,381.27 |
| Neuman Mn Partners | $236,527.35 |
| Gavriel Mordechaev | $18,348.20 |
| Gabriel Mordechey | $83,673.93 |
| Sharyn Mukamal | $215,979.56 |
| Katherine Muller | $48,241.16 |
| Laurie Netzer | $362,381.27 |
| Leo Oberlander | $32,991.46 |
| Sander Oberlander | $2,198.89 |
| Milton Ostreicher | $83,673.93 |
| Susan Ostreicher | $1,441,096.61 |
| Irwin Peckman | $215,979.56 |
| Ben Philipson | $6,267,329.87 |
| Bent Philipson | $215,979.56 |
| Deborah Philipson | $776,792.36 |
| Robert Pines | $215,979.56 |
| Israel Pollak | $77,535.46 |
| Jacob Pollak | $77,535.46 |
| Natan Pollak | $118,263.67 |
| Renee Pollak | $159,470.66 |
| Sylvia Pollak | $118,263.67 |
| Theodore Pollak | $83,673.93 |
| Michael Pruzansky | $77,535.46 |
| Diana R. Koehler | $219.46 |
| Jonathan Redner | $307,585.68 |
| Lawrence Reichenberger | $215,979.56 |
| Mark Reisman | $157,006.30 |
| Mayer Rispler | $123,491.34 |
| Brian Rosenman | $32,991.46 |
| Kenneth Rozenberg | $1,755.69 |
| Berish Rubenstein | $215,979.56 |
| Dina Rubenstein | $77,535.46 |
| Rivkie Rubenstein | $118,263.67 |
| Ira Rubin | $48,241.16 |
| Malky Saffran | $63,788.27 |
| Boruch Schepps | $14,923.35 |
| Pamela Schepps | $219.46 |
| Nat Scherman | $18,424.18 |
| Richard Schildron | $215,979.56 |
| Samuel Schlesinger | $370.67 |
| Jacob Schoenberger | $26,578.91 |
| Michael Schwartz | $362,626.46 |
| Leslie Shafrank | $362,381.27 |

| | |
|---|---|
| Henry Shayovitz | $215,979.56 |
| Agnes Shemia | $144,573.61 |
| Jeff Shemia | $144,573.61 |
| Alexander Sherman | $50,019.55 |
| Israel Sherman | $114,978.19 |
| Leah Sherman | $50,019.55 |
| Nat Sherman | $362,381.27 |
| Samuel Sherman | $256,673.55 |
| Warren Sherman | $307,585.68 |
| Hindy Sirkis | $215,979.56 |
| Moshe Sirkis | $831,188.76 |
| Alexander Skoczlas | $118,263.67 |
| Joseph Skoczylas | $118,263.67 |
| Tali Skoczylas | $118,263.67 |
| Dominic Spira Md | $9,223.42 |
| Jonathan Steinberg | $478.18 |
| Miriam Steinberg | $478.18 |
| Ronald Stern | $97,288.96 |
| Mariam Sternberg | $226,099.77 |
| Lorraine Takesky | $215,979.56 |
| Mitch Teller | $48,241.16 |
| Kenneth Tesslar | $215,979.56 |
| Kenneth Tessler | $215,979.56 |
| Aaron Unger | $83,673.93 |
| unknown | $4,350,317.18 |
| Eila Vinitzky | $21,069.03 |
| Yuliya Vinokurova | $488,327.51 |
| Jeffrey Vogel | $215,979.56 |
| Sherman Vogel | $215,979.56 |
| Peggy Weberman | $118,263.67 |
| Philip Weberman | $118,263.67 |
| Toby Weinberger | $83,673.93 |
| Zoltan Weinberger | $27,041.67 |
| Regina Weinstock | $121,632.85 |
| Ari Weiss | $157,006.30 |
| Berish Weiss | $19,753.50 |
| Berry Weiss | $108,510.19 |
| Micahel Weiss | $215,979.56 |
| Michael Weiss | $215,979.56 |
| Robyn Weiss | $362,381.27 |
| Shlomie Weiss | $41,492.88 |
| Chaya Willinger | $63,005.05 |
| Robert Wolf | $83,673.93 |
| Peyman Younesi | $4,673.92 |

| | |
|---|---|
| Mark Zaffrin | $215,979.56 |
| Ephraim Zagelbaum | $6,021.57 |
| Kenneth Zitter | $494,557.18 |
| David Zohler | $156,984.35 |

$67,911,580.10

### Seventh  Cause of Action Against Certain Identified Employer Defendants Recognizing Subrogation Rights of the Carrier Defendant for Benefits paid to the Class Defendant under an ERISA Plan and Program

204.   All the allegations previously stated are re-alleged and incorporated herein.

205.   Most coronavirus claims will not be compensable under New York's Workers' Compensation Law. In general, a disease contracted by an employee within the course of employment even though the Employer Defendants are liable to their injured employees under WCL §10. Intervention Pg. 103 Par 223.

206.   Identified Employer-Defendants are liable to their employees to pay or provide compensation for disability or death from injury arising out of and in the course of their employment. Oriska Corporation is subrogated to the rights of a sub-class of the Class who are injured employees of the Employer Defendants, for the benefits paid and payable to the injured employees by the Carrier Oriska Insurance. Intervention Pg. 103 Par 225.

207.   Carrier Defendant and by derivation Oriska Corporation, are subrogated to the rights to be reimbursed for benefits provided to Plan beneficiaries, the Class, who have suffered and will continue to suffer damages including, but not limited to, not having the costs of medical treatment paid. Intervention Pg. 103 Par 222.

208.   Derivative Defendant Oriska Corporation has asserted rights of subrogation for the medical care and indemnity including lost wage and expense reimbursement paid and to be paid long into the future to the injured Employee-Defendants by its subsidiary Carrier Defendant Oriska Insurance, intervening Nassau County Action Index number 609877/2019 Nassau County paragraph 57 hereof and as set forth in the 26 lawsuits at paragraph in 53 hereof. Intervention Pg. 103 Par 224.

209.   Intervenor Plaintiffs derivatively to Oriska Insurance under BCL 626 has a statutory right of subrogation in this action based on WCL 29, and common law equitable rights of subrogation, indemnification and contribution, because it made payments to and on

behalf of the injured employees medical care, treatment and indemnity for lost wages and expenses.

210. The deductible reimbursement due from the identified Employer Defendants for benefits already paid under the Program, were intended to be covered by funds in the 114 Trust. But because the Employer Defendants have failed to fund the 114 Trust, the Administrator of the Trust, Rashbi Management, Inc., has been unable to reimburse these benefits paid by the Carrier as identified in the 26 lawsuits. Oriska Corporation has sued derivatively on behalf of the Carrier Defendant and in subrogation to the rights of the injured employees for benefits paid to the Class. Intervention Pg. 104 Par 226.

211. The following Employer Defendants have failed and refused to reimburse the Carrier Defendant for benefits paid to injured employees covering the liability of the Employer Defendants under Workers' Compensation Law 10 for benefits already paid to the Class; this does not include future benefits for which their Plan and the Class are seeking payment of funds into trust, these are obligations of the Employer Defendants covered by the Program which are the liability of the respective Employer Defendants as follows: Intervention Pg. 104 Par 227.

| Employer Defendant | Recoverable |
| --- | --- |
| Absolut | $2,970,916 |
| All American School Bus | $2,493,300 |
| Allstate | $260 |
| Amerifalls | $735,809 |
| B&B | $35 |
| Baypark | $4,916,543 |
| Bayview Home | $9,036 |
| BeSure | $26,831 |
| Birchwood | $515,543 |
| Blue Star | $460 |
| Bronx Gardens | $1,033,481 |
| Brookhaven | $1,523,180 |
| Brookside | $2,082,518 |
| Caring Companion | $616 |
| Caring Professionals | $1,616,487 |
| Cayuga Ridge | $56,795 |
| Clear Choice | $0 |
| Clinical Staffing Resources | $449,516 |
| Cold Spring | $4,669,750 |
| Comfort Loving | $26,539 |
| Comprehensive Orleans | $256,372 |
| Comprehensive Williamsville | $52,046 |
| Curis Medical | $339 |
| Cypress Gardens | $239,341 |

| | |
|---|---|
| Diamond Hill | $72,556 |
| Ditmas | $8,132 |
| Eagle Home Care | $59,806 |
| Eastchester | $403,749 |
| Edison | $840,031 |
| Elcor | $348,340 |
| Evergreen Court | $23,689 |
| Exclusive Nursing | $115,878 |
| Expert Care Staffing | $177,247 |
| Fiddlers Green | $654,752 |
| Five Star | $6,287,223 |
| Garden Care | $526,406 |
| Golden Gate | $707,259 |
| Golden Hill | $3,027,182 |
| Golden Living | $81,590 |
| Grace Plaza | $1,064,528 |
| Greater New York | $164,573 |
| Greater New York Services | $2,230 |
| Greenbriar | $1,217 |
| Hamptons | $2,450,079 |
| Harbour Health | $669,119 |
| Harrys Nurses | $185,981 |
| HCS Home Care | $1,433,220 |
| Home Attendant Services of Hyde Park | $4,676,799 |
| Home Health Management | $285,176 |
| Hudson Pointe | $236,422 |
| Kingsbridge | $1,152,766 |
| Laconia | $342,805 |
| Little Neck | $559,237 |
| Living Waters | $15,467 |
| Magna | $1,462 |
| MB Food Processing | $5,205,735 |
| Mega Staffing | $341,777 |
| Monsey Family Drugstore | $508 |
| Mrs. Mary's | $368,837 |
| Nassau | $2,753,939 |
| Nathan Miller | $8,432 |
| New Carlton | $370,422 |
| New Roc | $11,565 |
| New Surfside | $129,750 |
| Northwoods | $19,244 |
| Norwich Rehab | $4,374 |

| | |
|---|---|
| Palffy | $12,165 |
| Park Avenue | $1,907,804 |
| Parkview | $527,670 |
| Pathways | $231,653 |
| Pharney | $13,879 |
| Preferred Home Care | $436,785 |
| Prokeep | $1,491 |
| Putnam Ridge | $793,491 |
| Ramapo | $783 |
| Riverdale | $2,722,124 |
| Rosewood | $297,308 |
| Ross Health | $258,701 |
| SC & BP | $1,647,681 |
| Seagate | $1,573,258 |
| Sentosa | $7,623 |
| Southpoint | $2,043,778 |
| Springcreek | $405,378 |
| STAT Portable | $1,324 |
| Sunharbor | $707,397 |
| The Landa Group | $5,060,662 |
| The Plaza Rehab | $3,524,976 |
| Throgs Neck | $1,891,317 |
| Townhouse | $1,074,854 |
| Upstate Diary | $32,188 |
| West Lawrence | $94,907 |
| White Plains | $512,383 |
| Woodmere | $954,718 |

### Eighth Cause of Action against Employer Defendants for Illegal Employment Practices in Violation of 42 U.S.C. § 2000e-2

212.  All the allegations previously stated are re-alleged and incorporated herein. Intervention Pg 123 Par 270.

213.  The Percy Sub-Class is entitled to injunctive relief as demanded and actual damages for lost wages against the Employer Defendants, for lost opportunity and compensation as money damages for the families of the members of the Percy Sub-Class, their children growing up in poverty, significantly disadvantaged in education and skills, struggling to get a job, entitled to compensation as money damages to be determined at trial in this litigation. Intervention Pg 123 Par 271.

214.  The members of the Percy Sub-Class have been and are ready, willing and able to work, persistently wanting to work, but have been constantly deprived and denied work, damaging the members of the Sub-Class, and damaging the families of the members of the Sub-Class, their children growing up in poverty, significantly disadvantaged in

education and skills, struggling to get a job, in an amount to be determined at trial. Intervention Pg 124 Par 272.

### Ninth Cause of Action against Employer Defendants and Owner Operator Defendants for Breach of Fiduciary Duty

215. All the allegations previously stated are re-alleged and incorporated herein.

216. Employer Defendants, the Owner Operator Defendants and Parties in Interest Prohibited Transaction Defendants, owe the employees as the Class a fiduciary duty, a duty of loyalty and an obligation to administer diligently and carefully the affairs safeguard the property and assets in trust; to prevent trust assets from being wasted, stolen or squandered; and to keep honest, accurate and correct accounts of all affairs, business and transactions of trust monies; to make and publish true and accurate accounts and statements of the affairs of trust and to perform faithfully and diligently all the duties devolving upon Employer Defendants. Intervention Pg 125 Par 280.

217. As set forth herein, Employer Defendants, the Owner Operator Defendants and parties-in interest Prohibited Transaction Defendants, have breached their fiduciary duties owed to the Class, and have failed to perform the fiduciary duties imposed upon them, and did not give proper care or oversight to the trusts funds in a skillful, careful, and diligent manner; but on the contrary, knowingly and fraudulently permitted opportunities, monies, property, and effects of those trust funds to be taken, wasted, and squandered, and transferred the opportunities, monies and other assets of those corporations for Employer Defendants' own personal accounts and for Employer Defendants' own personal use, and for the benefit of third parties, to the detriment of the Class, accomplished the above by engaging in a deliberate course of conduct and scheme as set forth herein. Intervention Pg 125 Par 281.

218. The Plaintiff Class and the Trust have been damaged as a result of breach of fiduciary duties in the damages set forth at the First, Second, Third, Fourth, Fifth, Sixth and Seventh Causes of Action herein. Intervention Pg 126 Par 282.

### Tenth Cause of Action against Employer Defendants and Owner Operator Defendants for a Constructive Trust

219. All the allegations previously stated are re-alleged and incorporated herein.

220. Employer Defendants, the Owner Operator Defendants and Parties-in Interest Prohibited Transaction Defendants, with the assistance of the others known and unknown, knowingly received monies and assets either directly or indirectly from the Employer Defendants', under circumstances such that those Employer Defendants knew that the receipt of the moneys and assets was unlawful and improper. Intervention Pg 126 Par 284.

221. The exact amount of monies and assets received by the Employer Defendants and/or the Owner Operators and/or Parties in Interest is unknown. Intervention Pg 126 Par 285.

222. The conduct of the Employer Defendants, the Owner Operators and the Parties in Interest constituted intentional acts of wrongdoing undertaken by Employer Defendants with actual malice and in wanton and willful disregard of the rights of the employees of Employers, the Class Defendant. Intervention Pg 126 Par 286.

223. Employer Defendants and the Owner Operators are fiduciaries for the employee Employers and the 114 Trust for Plan assets received, directly or indirectly, and entitled to a return of those monies and assets to trust. Intervention Pg 126 Par 287.

224. Accordingly, a constructive trust must be imposed, and an accounting of the money ordered. Intervention Pg 126 Par 288.

### Eleventh Cause of Action against Employer Defendants and Owner Operator Defendants for an Accounting

225. All the allegations previously stated are re-alleged and incorporated herein.

226. Plaintiff is entitled to an accounting of all funds expended by Employer Defendants, the Owner Operator Defendants and Parties in Interest Prohibited Transaction Defendants, which belong to the Plaintiffs and which have been misappropriated, diverted and stolen. Intervention Pg 127 Par 290.

227. Now, the employee Class has the evidence to substantiate the Causes of Action in this Complaint, evidence which was not available until 2019 and 2020, evidence which was hidden, not available to substantiate allegations made in numerous other litigations which failed to tie damages to their cause and the responsible parties. Now, this Complaint is made by the employee Class as the real party in interest as identified by the Nassau County Supreme Court by order of Honorable Jack L. Libert, dated October 7, 2020, an order which was not appealed and is final.

228. Accordingly, an accounting of the money must be ordered. Intervention Pg 127 Par 291.

### Twelfth Cause of Action against the Employer Defendants by Plaintiffs as Third Party Beneficiaries for Benefits Provided for in a Stipulation of Settlement of September 24, 2013

229. The Employer Defendants have failed a abide by a Stipulation of Settlement so ordered on January 15, 2020.

230. The Settlement Agreement was entered into in Kings County under index number 10608/12 and 20248/12 between the Plaintiffs and certain Employer Defendants identified on the List of Policyholders attached to the Settlement Stipulation as Attachments "A" and "B", made a part of the Settlement Stipulation.

231. The Settlement Agreement dated September 24, 2013, is effective June 10, 2010.

232. The Settlement Agreement recites the Program approved by the DFS in 1994.

233. The Settlement Agreement recites that the Trust Defendant shall hold the funds from the Employer Defendants to secure benefits to the employees of the Employer Defendants.

234. The Settlement Agreement has been so-ordered in accordance with its terms by the New York State Supreme Court Kings County.

235. The Settlement Agreement by its terms is to provide benefits to the employees of the Employer Defendants, the liability for which is recited as joint and several between the Employer Defendants.

236. A Policy Manager entered into the Settlement Agreement on behalf of the Employer Defendants in accordance with the authority of each Employer Defendant designating the Policy Manager with authority to purchase health, disability and workers' compensation insurance coverage behalf of the Employer Defendants. The benefits as described in the Settlement Agreement are the benefits governed by ERISA, as set forth herein.

237. The Settlement Stipulation recites the Program:

    (a) Effective November 9, 1994 Oriska was admitted into membership in NYCIRB and filing of the New York Retrospective Rating Plan Manual along with other manuals and plans and amendments thereof adopted by NYCIRB and approved by the NYSDOI was made by NYCIRB with the NYSDOI on behalf of Oriska pursuant to Insurance Law § 2306, attached hereto as Attachment "D". page 3 of the Settlement Stipulation.
    (b) On December 5, 2007 NYSDOI approved several proposed Oriska endorsements affecting policies in force and on a go forward basis, including Endorsement WC990602 (11/07) NY, pursuant to Insurance Law § 2307, attached hereto as Attachment "E". page 4 of the Settlement Stipulation.

This change to the deductible Program was approved by the DFS for Carrier Defendant to accomplish revision to the Program to have security in place to satisfy the DFS. The deductible endorsement was, approved for use by Carrier Defendant pursuant to Insurance Law, 2307, Attachment "C" to the Settlement Stipulation, page 26. Detail of the proof of membership in the New York Compensation Insurance Rating Board ("NYCIRB") entitling Oriska to utilize the NYCIRB filings approved by the DFS for members of NYCIRB in accordance with Insurance Law 2306 is Attachment "D" to the Settlement Stipulation, page 38. The Program was revised to incorporate a 114 Trust to secure the deductible Obligations, page 4. The Settlement Stipulation recites that the Program was approved by the DFS for Carrier Defendant, with the addition of the 114 Trust to provide collateral security for collection of reimbursement of the deductible retained by the Defendants.

    (c) On December 5, 2007, the LRRO and Endorsement WC000602 (11/07) of the Program was entered into by Rashbi and Carrier Defendant, page 44 of the Settlement Stipulation.

The Settlement Stipulation referenced changes in the Program when a Receivership was dismissed as recited at Attachment "F" to the Settlement Agreement. The Receivership brought by the DFS against Carrier Defendant in 2006, was dismissed

with prejudice on grounds that "the original issue regarding the alleged insolvency of Carrier Defendant as of September 30th 2005, "which was based in large part on a difference of legal interpretation of statutory accounting rules governing the amount of required collateral for large deductible policies, and which the Department agrees is a legitimate dispute between the parties, has been resolved by Oriska [Carrier Defendant] to the Department's satisfaction . . . "., page 4 and Attachment F page 48.

     (d) On December 6, 2007, litigation commenced by Howard Mills as the Superintendent of Insurance for the State of New York against Carrier Defendant index CA2006-001542 was settled by stipulation in open court and simultaneously with the settlement the New York State Department of Insurance ratified the Program in a formal judgment, Attachment "F" page 48 of the Settlement Stipulation.

     The Settlement Stipulation, utilizing the LRRO and Endorsement WC000602(11/07) at Attachment "C", provides that the Defendants as Policyholders are jointly and severally liable to reimburse deductible payment of benefits by Carrier Defendant to Defendants' injured employees on behalf of the Defendants as provided for at Attachment "C" to the Settlement Stipulation as follows:

     We [Carrier Defendant] are responsible for making all payments required under this Policy, all payments are made from the first dollar by us and subsequently reimbursed by you [Employer Defendants].

     Notwithstanding the foregoing, unless otherwise agreed in writing by us, you shall be jointly and severally liable for your retention under this Policy, as well as any and all other financial obligations under this Policy and this Endorsement, including, but not limited to, the obligations to pay premiums, fund and maintain all required balances in the Loss Fund, and provide collateral to pay all obligations incurred under the Deductible Program. We shall be responsible for net loss under this Policy and this Endorsement. []

238. On June 11, 2010 Broad (by Muller) wrote the coverage for the Defendants on Attachment "A" and "B" for the coverage periods as shown on the attachment's "A" and "B" to the Settlement Stipulation, pages 15 and 19 respectively.

239. Muller was also adjusting and paying the claims of injured and ill workers of the Employers listed on Attachment "A" and "B" to the Settlement Stipulation.

240. Broad (by Muller) established an off-shore reinsurance program in Bermuda, which was intended to be collateralized by the Employer Defendants funding a 114 trust to secure the deductible retention of Obligations of the Employer Defendants on Attachment "A" and "B" where Broad was Grantor of a 114 Trust at TD Bank.

241.  Beginning on May 18, 2010, the DFS began a routine financial exam of Carrier Defendant pursuant to Insurance Law 310 ("Financial Exam") for the period September 30, 2005 through December 31, 2010.

242.  On October 29, 2012, the DFS issued its Exam Report for the Financial Exam, disallowing credit for the off-shore reinsurance, because there was not a proper transfer of risk, and because the trust failed to comply with the regulatory requirements of New York Regulation 114 (11 NYCRR §126), and as a result of the disallowance of the off-short reinsurance found that Carrier Defendant was impaired.

243.  On February 1, 2013, the Superintendent of the DFS issued an order pursuant to Insurance Law 1310, citing the impairment identified in the Exam Report, and ordered that Carrier Defendant could not write any new policies until the impairment had been addressed.

244.  On March 20, 2013, as recited in the Settlement Stipulation, certain Employer Defendants participated in addressing the impairment identified by the 1310 Order by removing Broad (by Muller) on March 20, 2013 referenced in the Settlement Stipulation that:

> On November 17, 2010, Broad Coverage Services, Inc.
> (Broad") by assignment assumed the Obligations from
> Rashbi and executed the documents of the Program.
> Thereafter on March 20, 2013, by novation agreement
> between Broad and Rashbi, the assignment from Rashbi
> to Broad was terminated and Rashbi was re-established
> as the risk assuming Administrator. Page 4 of the
> Settlement Stipulation.

245.  And correcting the Program and Policies referenced in the Settlement Stipulation as follows:

246.  In June of 2010, when the Carrier issued the Policies shown on the attached Lists of Policyholders (Attachments A and B), by inadvertence, the documents were executed incorrectly. The Carrier, the Administrator and the Manager now agree to correct as provided herein the documentation of the Program with Allstate designated as the Manager nunc pro tunc. Page 6 of the Settlement Stipulation.

247.  Employer Defendants are liable under Workers Compensation Law ("WCL") §10 to its employees to pay or provide compensation for their disability or death from injury arising out of and in the course of their employment.

248.  Employer Defendants were negligent in failing to provide a safe place to work, neglecting to promulgate and enforce reasonable safety rules, and were otherwise negligent.

249.  Certain employees of the Class employed by Employer Defendants were personally injured, suffered pain and suffering, lost earnings and incurred expenses for care and

treatment. Employees' injuries arose out of and in the course of the employees' employment with the Defendants.

250. Certain Employer Defendants scheduled below are obligated to pay Final audit Premium plus assessments in consideration for the workers' compensation and employer liability coverage provided by Carrier Defendant in accordance with WCL §50, and as set forth in the Settlement Stipulation, as follows setting forth the Final audit Premium plus assessments, the amount paid by each identified Employer Defendant, and the amount owed.

## PRIVATE ATTORNEY GENERAL ACTION

251. This action is brought as a private attorney general action as permitted by 42 U.S.C. 1988, to enforce certain federal laws, contracts, commitments, obligations and covenants to provide affirmative action for equal employment to correct disparate impact, low wages with few fringe benefits, minimal levels of training, and the lack of a career ladder, contributing to a chronic workforce shortfall, being caused by the neglectful use of Federal Funding thereby impacting not only the Percy Class and safeguarding the welfare of apprentice workers, but as well the general public good.

## RELIEF

WHEREFORE, Plaintiff seeks monetary and equitable relief as follows:

1.     On the First Cause of Action Against the Employer Defendants and their Owner Operator Defendants for liability to the employee Class Plaintiff to recover damages from the Employer Defendants and their Owner Operator Defendants for the breach of the duties or mismanagement of employment activities and practices regarding an ERISA Plan as the proximate cause of the losses experienced by the Plan as hereinafter set forth in the Second, Third, Fifth, Sixth and Seventh Causes of Action.

2.     On the Second Cause of Action Against the Employer Defendants for Benefits to be paid to the Class Plaintiffs under an ERISA Plan a Judgment in favor of the Plaintiff against the Employer Defendants listed below for the amounts set forth below to be paid into the 114 Trust as follows:

| Employer Defendant | 12/31/20 Total Reserves |
|---|---|
| All American School Bus | $2,296,431 |
| Allstate | TBD |
| Amerifalls | $610,413 |
| Baypark | $4,235,388 |
| Bayview Home | TBD |
| BeSure | TBD |
| Beverly's | TBD |
| Birchwood | $441,308 |
| Blue Star | TBD |
| Bronx Gardens | $989,508 |
| Brookhaven | $1,234,564 |
| Brookside | $1,629,556 |
| Caring Companion | TBD |
| Caring Professionals | $1,211,218 |
| Cayuga Ridge | TBD |
| Clear Choice | TBD |
| Clinical Staffing Resources | $419,959 |
| Cold Spring | $4,435,181 |
| Comfort Loving | TBD |
| Comprehensive Orleans | $200,115 |
| Comprehensive Williamsville | TBD |
| Curis Medical | TBD |
| Cypress Gardens | $206,368 |
| Diamond Hill | TBD |
| Ditmas | TBD |
| Eagle Home Care | TBD |
| Eastchester | $198,072 |
| Edison | $572,667 |

| | |
|---|---|
| Elcor | $197,249 |
| Evergreen Court | TBD |
| Expert Care Staffing | $122,314 |
| Fiddlers Green | $576,685 |
| Garden Care | $376,453 |
| Golden Gate | $501,310 |
| Golden Hill | $2,592,032 |
| Golden Living | TBD |
| Grace Plaza | $738,662 |
| Greater New York | TBD |
| Greater New York Services | TBD |
| Greenbriar | TBD |
| Hamptons | $2,064,691 |
| Harbour Health | $608,442 |
| Harrys Nurses | $108,798 |
| HCS Home Care | $1,192,846 |
| Home Attendant Services of Hyde Park | $4,337,462 |
| Home Health Management | $85,753 |
| Hudson Pointe | $199,023 |
| Kingsbridge | $1,025,678 |
| Laconia | $248,804 |
| Little Neck | $430,772 |
| Living Waters | TBD |
| Magna | TBD |
| MB Food Processing | $4,496,851 |
| Mega Staffing | $328,578 |
| Monsey Family Drugstore | TBD |
| Mrs. Mary's | $330,334 |
| Nassau | $2,487,099 |
| Nathan Miller | TBD |
| New Carlton | $348,972 |
| New Roc | TBD |
| New Surfside | TBD |
| Northwoods | TBD |
| Norwich Rehab | TBD |
| Palffy | TBD |
| Park Avenue | $1,630,672 |
| Parkview | $406,830 |
| Pathways | TBD |
| Pharney | TBD |
| Preferred Home Care | $401,947 |
| Prokeep | TBD |
| Putnam Ridge | $662,830 |
| Ramapo | TBD |
| Riverdale | $2,455,884 |
| Rosewood | $228,077 |
| Ross Health | $215,584 |

| | |
|---|---|
| SC & BP | $1,341,179 |
| Seagate | $1,393,407 |
| Sentosa | TBD |
| Southpoint | $1,869,034 |
| Springcreek | $257,447 |
| STAT Portable | TBD |
| Sunharbor | $437,548 |
| The Landa Group | $3,665,489 |
| The Plaza Rehab | $3,327,061 |
| Throgs Neck | $1,697,008 |
| Townhouse | $696,814 |
| Upstate Diary | TBD |
| West Lawrence | TBD |
| White Plains | $414,496 |
| Woodmere | $659,194 |

3. On the Third Cause of Action against the Employer Defendants as Plan Sponsor Fiduciaries to Recover $53 million Plan Assets Diverted by Parties in Interest in Prohibited Transactions:

| Employer Defendant | 53 Mil |
|---|---|
| Baypark | $9,452,593 |
| Brookhaven | $4,122,630 |
| Eastchester | $3,344,023 |
| Golden Gate | $3,249,283 |
| Grace Plaza | $5,048,571 |
| Hamptons | $4,692,384.28 |
| Nassau | $3,944,929.88 |
| New Surfside | $2,064,219 |
| Park Avenue | $3,543,870 |
| Southpoint | $2,576,386 |
| Springcreek | $2,324,622 |
| Throgs Neck | $2,904,549 |
| Townhouse | $5,387,141 |

4. On the Fourth Cause of Action a Judgment in favor of the Plaintiff against the following Employer Defendants for the diverted $68 million set forth below to be paid into the 114 Trust:

| Employer Defendant | $68 Mil |
|---|---|
| All American School Bus | $107,635 |
| Allstate | $371 |
| Amerifalls | $133,474 |
| B&B | $26 |
| Baypark | $20,973,084 |
| Bayview Home | $9,001 |
| BeSure | $12,890 |
| Birchwood | $65,983 |

| | |
|---|---|
| Blue Star | $289 |
| Bronx Gardens | $36,658 |
| Brookhaven | $2,699,159 |
| Brookside | $3,398,624 |
| Caring Companion | $956 |
| Caring Professionals | $226,100 |
| Cayuga Ridge | $23,872 |
| Clear Choice | $4,674 |
| Clinical Staffing Resources | $82,986 |
| Cold Spring | $4,300,927 |
| Comfort Loving | $15,824 |
| Comprehensive Orleans | $96,164 |
| Comprehensive Williamsville | $96,164 |
| Curis Medical | $96,164 |
| Cypress Gardens | $96,164 |
| Diamond Hill | $106,222 |
| Ditmas | $2,199 |
| Eagle Home Care | $45,812 |
| Eastchester | $851,430 |
| Edison | $314,013 |
| Elcor | $64,940 |
| Evergreen Court | $26,579 |
| Exclusive Nursing | $31,073 |
| Expert Care Staffing | $21,069 |
| Fiddlers Green | $250,098 |
| Five Star | $204,392 |
| Garden Care | $73,350 |
| Golden Gate | $119,884 |
| Golden Hill | $1,709,146 |
| Golden Living | $39,271 |
| Grace Plaza | $186,269 |
| Greater New York | $162,787 |
| Greater New York Services | $9,688 |
| Greenbriar | $603 |
| Hamptons | $3,242,864 |
| Harbour Health | $36,248 |
| Harrys Nurses | $58,914 |
| HCS Home Care | $289,147 |
| Home Attendant Services of Hyde Park | $1,230,343 |
| Home Health Management | $106,863 |
| Hudson Pointe | $45,033 |
| Kingsbridge | $241,956 |
| Laconia | $53,756 |
| Little Neck | $71,793 |

| | |
|---|---|
| Living Waters | $7,517 |
| Magna | $763 |
| MB Food Processing | $417,073 |
| Mega Staffing | $6,622 |
| Monsey Family Drugstore | $736 |
| Mrs. Mary's | $33,399 |
| Nassau | $4,161,201 |
| Nathan Miller | $3,459 |
| New Carlton | $12,969 |
| New Roc | $9,223 |
| New Surfside | $152,321 |
| Northwoods | $17,557 |
| Norwich Rehab | $2,519 |
| Palffy | $3,502 |
| Park Avenue | $3,738,155 |
| Parkview | $342,011 |
| Pathways | $225,646 |
| Pharney | $6,363 |
| Preferred Home Care | $39,507 |
| Priority Care | $18,929 |
| Promed | $50,508 |
| Putnam Ridge | $126,010 |
| Ramapo | $2,500 |
| Riverdale | $217,020 |
| Rosewood | $93,237 |
| Ross Health | $45,122 |
| S & A | $47,193 |
| SC & BP | $313,969 |
| Seagate | $122,460 |
| Sentosa | $5,072 |
| Southpoint | $95,057 |
| Springcreek | $591,877 |
| STAT Portable | $380 |
| Sunharbor | $139,917 |
| The Landa Group | $827,144 |
| The Plaza Rehab | $129,399 |
| Throgs Neck | $3,063,785 |
| Townhouse | $5,878,428 |
| Upstate Diary | $54,083 |
| West Lawrence | $50,515 |
| White Plains | $644,331 |
| Woodmere | $1,594,707 |

5.      On the Fifth Cause of Action a Judgment in favor of the Plaintiff against the

following Owner Operator Defendants for the diverted $53 million set forth below to be paid into the 114 Trust:

| OWNER OPERATORS | 53 Mil |
|---|---|
| Gabor Adler | $436,986 |
| George Adler | $436,986 |
| Kwame Amoafo-danquah | unknown |
| Agnes Arnestein | minority owner |
| Anthony Bacchi | $2,082,056 |
| Matthew Barbara | minority owner |
| Paul Barbara | minority owner |
| Aaron Becher | $549,179 |
| Pola Becher | $127,801 |
| Hershel Bedansky | unknown |
| Howard Belford | minority owner |
| Scott Bialick | minority owner |
| Robert Bleier | $1,129,451 |
| David Bloom | $436,986 |
| Paula Bokow | unknown |
| Joel Brach | unknown |
| Natan Brach | unknown |
| Barry Braunstein | minority owner |
| Murray Bresky | minority owner |
| Steven Brown | minority owner |
| Philip Buchsbaum | minority owner |
| Richard Bursek | unknown |
| Richard Busell | minority owner |
| Colin C. Hart | unknown |
| Ira Cammeyer | $339,644.65 |
| Alan Chopp | $112,192.86 |
| Joshua Chopp | unknown |
| David Cohen | unknown |
| David Crytryn | $127,801 |
| David Dachs | unknown |
| Solomon Eidlisz | $199,864 |
| Neil Einhorn | $339,644 |
| Scott Einiger | minority owner |
| Abraham Eisen | unknown |
| Sam Eisen | unknown |
| Steve Eisman | minority owner |
| Ignatius Elefant | unknown |
| Philipson Family Trust | unknown |
| Martin Farbeblum | $403,573 |

| | |
|---|---|
| Benjamin Farbenblum | $477,717 |
| Ed Farbenblum | unknown |
| Edward Farbenblum | $704,139 |
| Martin Farbenblum | $1,306,399 |
| Michael Farbenblum | $589,910 |
| Esther Farkovits | $339,644 |
| Jordan Fensterman | minority owner |
| Lori Fensterman | $1,475,254 |
| Robert Fensterman | $1,006,499 |
| Staci Fensterman | minority owner |
| Samuel Ferrara | minority owner |
| Mayer Fischl | $961,442 |
| Benjamin Fishoff | $566,768 |
| Patrick Formato | minority owner |
| John Francher | unknown |
| David Freid | $127,801 |
| Moshe Freilich | unknown |
| Andrew Freundlich | $339,644 |
| Sigmund Freundlich | $339,644 |
| Leo Friedman | unknown |
| David Gast | unknown |
| Louis Gellis | unknown |
| William Gillick | unknown |
| Rivky Goldberger | $127,801 |
| Leon Goldenberg | unknown |
| Jeffrey Goldstein | $112,192 |
| Anne Gottleib | unknown |
| Miklows Gottlieb | unknown |
| Niklos Gottlieb | unknown |
| Solomon Green | unknown |
| Joel Greenberg | minority owner |
| Eric Greenberger | unknown |
| Eli Greenspan | minority owner |
| Steven Greenstein | minority owner |
| Avrumi Grossman | unknown |
| Marton Guttman | unknown |
| Valarie Henry | unknown |
| Johanan Hirsch | $477,717 |
| Leopold Hirsch | $477,717 |
| Libe Hirsch | unknown |
| Ruth Hirsch | $929,555 |
| David Hoffman | $339,644 |

| | |
|---|---|
| Pinchos Hoffman | $112,192 |
| Pinchus Hoffman | $339,644 |
| Steven J Eisman | $1,422,330 |
| Anthony J. Bacchi | minority owner |
| Jack Janklowicz | $199,864 |
| Leonard Janklowicz | $199,864 |
| Jack Janklowitz | $72,063 |
| Shorefront Jewish Geriatric Center | unknown |
| David Jones | unknown |
| Judith Jones | unknown |
| Mendel Kaff | unknown |
| Eric Kalt | $112,192 |
| Yoel Karpen | unknown |
| Miriam Karpf | unknown |
| Allen Kass | minority owner |
| Martin Kass | minority owner |
| Martin Katz | unknown |
| Shelley Katz | minority owner |
| Shelly Katz | unknown |
| Manny Kaufman | unknown |
| Yosef Kaufman | unknown |
| Alan Kessler | minority owner |
| Arnold Klapper | $477,717 |
| George Klein | $339,644 |
| Larry Klein | $339,644 |
| Eleanor Kluger | unknown |
| Robert Kolman | $112,192 |
| Dean Korlik | minority owner |
| William Korn | $339,644 |
| Irina Kostesky | $339,644 |
| Howard Krant | unknown |
| Ephram Lahasky | unknown |
| Benjamin Landa | $4,263,177 |
| David Landa | unknown |
| Yechiel Landa | $127,801 |
| Nathan Landau | unknown |
| James Lapolla | unknown |
| Tibor Lebovich | unknown |
| Morty Lehasky | unknown |
| David Leifer | unknown |
| Barry Leistner | minority owner |

| | |
|---|---|
| Chana Lerner | $436,986 |
| Michael Levitan | minority owner |
| Rich Levitan | minority owner |
| Teddy Lichtscein | $127,801 |
| Neuman Lj Partners | unknown |
| Isaac Madeb | unknown |
| Dovi Marc Faivish | unknown |
| Sam Mayerovitz | unknown |
| Girshas Minster | $339,644 |
| Neuman Mn Partners | unknown |
| Gavriel Mordechaev | $72,063 |
| Gabriel Mordechey | $127,801 |
| Sharyn Mukamal | minority owner |
| Katherine Muller | unknown |
| Laurie Netzer | $339,644 |
| Leo Oberlander | unknown |
| Sander Oberlander | unknown |
| Milton Ostreicher | $127,801 |
| Susan Ostreicher | unknown |
| Irwin Peckman | minority owner |
| Ben Philipson | $4,690,290 |
| Bent Philipson | minority owner |
| Deborah Philipson | $1,363,270 |
| Robert Pines | minority owner |
| Israel Pollak | $112,192 |
| Jacob Pollak | $112,192 |
| Natan Pollak | unknown |
| Renee Pollak | unknown |
| Sylvia Pollak | unknown |
| Theodore Pollak | $127,801.56 |
| Michael Pruzansky | $112,192.86 |
| Diana R. Koehler | unknown |
| Jonathan Redner | unknown |
| Lawrence Reichenberger | minority owner |
| Mark Reisman | unknown |
| Mayer Rispler | $113,170 |
| Brian Rosenman | unknown |
| Kenneth Rozenberg | unknown |
| Berish Rubenstein | minority owner |
| Dina Rubenstein | $112,192 |
| Rivkie Rubenstein | unknown |
| Ira Rubin | unknown |

| | |
|---|---|
| Malky Saffran | unknown |
| Boruch Schepps | unknown |
| Pamela Schepps | unknown |
| Nat Scherman | unknown |
| Richard Schildron | minority owner |
| Samuel Schlesinger | unknown |
| Jacob Schoenberger | unknown |
| Michael Schwartz | $339,644 |
| Leslie Shafrank | $339,644 |
| Henry Shayovitz | minority owner |
| Agnes Shemia | unknown |
| Jeff Shemia | unknown |
| Alexander Sherman | unknown |
| Israel Sherman | unknown |
| Leah Sherman | unknown |
| Nat Sherman | $339,644.65 |
| Samuel Sherman | unknown |
| Warren Sherman | unknown |
| Hindy Sirkis | minority owner |
| Moshe Sirkis | $534,329 |
| Alexander Skoczlas | unknown |
| Joseph Skoczylas | unknown |
| Tali Skoczylas | unknown |
| Dominic Spira Md | unknown |
| Jonathan Steinberg | unknown |
| Miriam Steinberg | unknown |
| Ronald Stern | $112,192 |
| Mariam Sternberg | unknown |
| Lorraine Takesky | minority owner |
| Mitch Teller | unknown |
| Kenneth Tesslar | minority owner |
| Kenneth Tessler | minority owner |
| Aaron Unger | $127,801 |
| unknown | $10,874,24unknown |
| Eila Vinitzky | unknown |
| Yuliya Vinokurova | unknown |
| Jeffrey Vogel | minority owner |
| Sherman Vogel | minority owner |
| Peggy Weberman | unknown |
| Philip Weberman | unknown |
| Toby Weinberger | $127,801 |
| Zoltan Weinberger | unknown |

| | |
|---|---|
| Regina Weinstock | $477,717 |
| Ari Weiss | unknown |
| Berish Weiss | unknown |
| Berry Weiss | unknown |
| Micahel Weiss | minority owner |
| Michael Weiss | minority owner |
| Robyn Weiss | $339,644 |
| Shlomie Weiss | unknown |
| Chaya Willinger | unknown |
| Robert Wolf | $127,801 |
| Peyman Younesi | unknown |
| Mark Zaffrin | minority owner |
| Ephraim Zagelbaum | unknown |
| Kenneth Zitter | unknown |
| David Zohler | unknown |
| OWNER OPERATORS | 53 Mil |
| Gabor Adler | $436,986 |
| George Adler | $436,986 |
| Kwame Amoafo-danquah | unknown |
| Agnes Arnestein | minority owner |
| Anthony Bacchi | $2,082,056 |
| Matthew Barbara | minority owner |
| Paul Barbara | minority owner |
| Aaron Becher | $549,179 |
| Pola Becher | $127,801 |
| Hershel Bedansky | unknown |
| Howard Belford | minority owner |
| Scott Bialick | minority owner |
| Robert Bleier | $1,129,451 |
| David Bloom | $436,986 |
| Paula Bokow | unknown |
| Joel Brach | unknown |
| Natan Brach | unknown |
| Barry Braunstein | minority owner |
| Murray Bresky | minority owner |
| Steven Brown | minority owner |
| Philip Buchsbaum | minority owner |
| Richard Bursek | unknown |
| Richard Busell | minority owner |
| Colin C. Hart | unknown |
| Ira Cammeyer | $339,644.65 |
| Alan Chopp | $112,192.86 |

| | |
|---|---|
| Joshua Chopp | unknown |
| David Cohen | unknown |
| David Crytryn | $127,801 |
| David Dachs | unknown |
| Solomon Eidlisz | $199,864 |
| Neil Einhorn | $339,644 |
| Scott Einiger | minority owner |
| Abraham Eisen | unknown |
| Sam Eisen | unknown |
| Steve Eisman | minority owner |
| Ignatius Elefant | unknown |
| Philipson Family Trust | unknown |
| Martin Farbeblum | $403,573 |
| Benjamin Farbenblum | $477,717 |
| Ed Farbenblum | unknown |
| Edward Farbenblum | $704,139 |
| Martin Farbenblum | $1,306,399 |
| Michael Farbenblum | $589,910 |
| Esther Farkovits | $339,644 |
| Jordan Fensterman | minority owner |
| Lori Fensterman | $1,475,254 |
| Robert Fensterman | $1,006,499 |
| Staci Fensterman | minority owner |
| Samuel Ferrara | minority owner |
| Mayer Fischl | $961,442 |
| Benjamin Fishoff | $566,768 |
| Patrick Formato | minority owner |
| John Francher | unknown |
| David Freid | $127,801 |
| Moshe Freilich | unknown |
| Andrew Freundlich | $339,644 |
| Sigmund Freundlich | $339,644 |
| Leo Friedman | unknown |
| David Gast | unknown |
| Louis Gellis | unknown |
| William Gillick | unknown |
| Rivky Goldberger | $127,801 |
| Leon Goldenberg | unknown |
| Jeffrey Goldstein | $112,192 |
| Anne Gottleib | unknown |
| Miklows Gottlieb | unknown |
| Niklos Gottlieb | unknown |

| | |
|---|---|
| Solomon Green | unknown |
| Joel Greenberg | minority owner |
| Eric Greenberger | unknown |
| Eli Greenspan | minority owner |
| Steven Greenstein | minority owner |
| Avrumi Grossman | unknown |
| Marton Guttman | unknown |
| Valarie Henry | unknown |
| Johanan Hirsch | $477,717 |
| Leopold Hirsch | $477,717 |
| Libe Hirsch | unknown |
| Ruth Hirsch | $929,555 |
| David Hoffman | $339,644 |
| Pinchos Hoffman | $112,192 |
| Pinchus Hoffman | $339,644 |
| Steven J Eisman | $1,422,330 |
| Anthony J. Bacchi | minority owner |
| Jack Janklowicz | $199,864 |
| Leonard Janklowicz | $199,864 |
| Jack Janklowitz | $72,063 |
| Shorefront Jewish Geriatric Center | unknown |
| David Jones | unknown |
| Judith Jones | unknown |
| Mendel Kaff | unknown |
| Eric Kalt | $112,192 |
| Yoel Karpen | unknown |
| Miriam Karpf | unknown |
| Allen Kass | minority owner |
| Martin Kass | minority owner |
| Martin Katz | unknown |
| Shelley Katz | minority owner |
| Shelly Katz | unknown |
| Manny Kaufman | unknown |
| Yosef Kaufman | unknown |
| Alan Kessler | minority owner |
| Arnold Klapper | $477,717 |
| George Klein | $339,644 |
| Larry Klein | $339,644 |
| Eleanor Kluger | unknown |
| Robert Kolman | $112,192 |
| Dean Korlik | minority owner |

| | |
|---|---|
| William Korn | $339,644 |
| Irina Kostesky | $339,644 |
| Howard Krant | unknown |
| Ephram Lahasky | unknown |
| Benjamin Landa | $4,263,177 |
| David Landa | unknown |
| Yechiel Landa | $127,801 |
| Nathan Landau | unknown |
| James Lapolla | unknown |
| Tibor Lebovich | unknown |
| Morty Lehasky | unknown |
| David Leifer | unknown |
| Barry Leistner | minority owner |
| Chana Lerner | $436,986 |
| Michael Levitan | minority owner |
| Rich Levitan | minority owner |
| Teddy Lichtscein | $127,801 |
| Neuman Lj Partners | unknown |
| Isaac Madeb | unknown |
| Dovi Marc Faivish | unknown |
| Sam Mayerovitz | unknown |
| Girshas Minster | $339,644 |
| Neuman Mn Partners | unknown |
| Gavriel Mordechaev | $72,063 |
| Gabriel Mordechey | $127,801 |
| Sharyn Mukamal | minority owner |
| Katherine Muller | unknown |
| Laurie Netzer | $339,644 |
| Leo Oberlander | unknown |
| Sander Oberlander | unknown |
| Milton Ostreicher | $127,801 |
| Susan Ostreicher | unknown |
| Irwin Peckman | minority owner |
| Ben Philipson | $4,690,290 |
| Bent Philipson | minority owner |
| Deborah Philipson | $1,363,270 |
| Robert Pines | minority owner |
| Israel Pollak | $112,192 |
| Jacob Pollak | $112,192 |
| Natan Pollak | unknown |
| Renee Pollak | unknown |
| Sylvia Pollak | unknown |

| | |
|---|---|
| Theodore Pollak | $127,801.56 |
| Michael Pruzansky | $112,192.86 |
| Diana R. Koehler | unknown |
| Jonathan Redner | unknown |
| Lawrence Reichenberger | minority owner |
| Mark Reisman | unknown |
| Mayer Rispler | $113,170 |
| Brian Rosenman | unknown |
| Kenneth Rozenberg | unknown |
| Berish Rubenstein | minority owner |
| Dina Rubenstein | $112,192 |
| Rivkie Rubenstein | unknown |
| Ira Rubin | unknown |
| Malky Saffran | unknown |
| Boruch Schepps | unknown |
| Pamela Schepps | unknown |
| Nat Scherman | unknown |
| Richard Schildron | minority owner |
| Samuel Schlesinger | unknown |
| Jacob Schoenberger | unknown |
| Michael Schwartz | $339,644 |
| Leslie Shafrank | $339,644 |
| Henry Shayovitz | minority owner |
| Agnes Shemia | unknown |
| Jeff Shemia | unknown |
| Alexander Sherman | unknown |
| Israel Sherman | unknown |
| Leah Sherman | unknown |
| Nat Sherman | $339,644.65 |
| Samuel Sherman | unknown |
| Warren Sherman | unknown |
| Hindy Sirkis | minority owner |
| Moshe Sirkis | $534,329 |
| Alexander Skoczlas | unknown |
| Joseph Skoczylas | unknown |
| Tali Skoczylas | unknown |
| Dominic Spira Md | unknown |
| Jonathan Steinberg | unknown |
| Miriam Steinberg | unknown |
| Ronald Stern | $112,192 |
| Mariam Sternberg | unknown |
| Lorraine Takesky | minority owner |

| | |
|---|---|
| Mitch Teller | unknown |
| Kenneth Tesslar | minority owner |
| Kenneth Tessler | minority owner |
| Aaron Unger | $127,801 |
| unknown | $10,874,24unknown |
| Eila Vinitzky | unknown |
| Yuliya Vinokurova | unknown |
| Jeffrey Vogel | minority owner |
| Sherman Vogel | minority owner |
| Peggy Weberman | unknown |
| Philip Weberman | unknown |
| Toby Weinberger | $127,801 |
| Zoltan Weinberger | unknown |
| Regina Weinstock | $477,717 |
| Ari Weiss | unknown |
| Berish Weiss | unknown |
| Berry Weiss | unknown |
| Micahel Weiss | minority owner |
| Michael Weiss | minority owner |
| Robyn Weiss | $339,644 |
| Shlomie Weiss | unknown |
| Chaya Willinger | unknown |
| Robert Wolf | $127,801 |
| Peyman Younesi | unknown |
| Mark Zaffrin | minority owner |
| Ephraim Zagelbaum | unknown |
| Kenneth Zitter | unknown |
| David Zohler | unknown |

6.     On the Sixth Cause of Action against Owners Operator Defendants of Identified Culpable Employer Defendants for Breach of ERISA Fiduciary Duties in the Diversion of $68 million in Plan Assets to be paid into the 114 Trust as follows:

| Owner Operators | 68 Mil |
|---|---|
| Gabor Adler | $578,361 |
| George Adler | $578,361 |
| Kwame Amoafo-danquah | $7,517 |
| Agnes Arnestein | $280,400 |
| Anthony Bacchi | $2,693,748 |
| Matthew Barbara | $215,980 |
| Paul Barbara | $215,980 |
| Aaron Becher | $655,896 |

| | |
|---|---|
| Pola Becher | $83,674 |
| Hershel Bedansky | $307,586 |
| Howard Belford | $215,980 |
| Scott Bialick | $215,980 |
| Robert Bleier | $292,140 |
| David Bloom | $578,361 |
| Paula Bokow | $118,264 |
| Joel Brach | $245 |
| Natan Brach | $118,264 |
| Barry Braunstein | $215,980 |
| Murray Bresky | $215,980 |
| Steven Brown | $215,980 |
| Philip Buchsbaum | $215,980 |
| Richard Bursek | $244,164 |
| Richard Busell | $215,980 |
| Colin C. Hart | $50,020 |
| Ira Cammeyer | $362,381 |
| Alan Chopp | $125,777 |
| Joshua Chopp | $118,264 |
| David Cohen | $118,264 |
| David Crytryn | $83,674 |
| David Dachs | $18,424 |
| Solomon Eidlisz | $102,022 |
| Neil Einhorn | $362,381 |
| Scott Einiger | $215,980 |
| Abraham Eisen | $118,264 |
| Sam Eisen | $6,622 |
| Steve Eisman | $215,980 |
| Ignatius Elefant | $108,510 |
| Philipson Family Trust | $80,652 |
| Martin Farbeblum | $765,425 |
| Benjamin Farbenblum | $121,633 |
| Ed Farbenblum | $488,328 |
| Edward Farbenblum | $486,624 |
| Martin Farbenblum | $1,639,511 |
| Michael Farbenblum | $199,168 |
| Esther Farkovitz | $523,804 |
| Jordan Fensterman | $215,980 |
| Lori Fensterman | $3,273,244 |
| Robert Fensterman | $2,233,187 |
| Staci Fensterman | $215,980 |
| Samuel Ferrara | $215,980 |
| Mayer Fischl | $1,008,025 |
| Benjamin Fishoff | $540,396 |

| | |
|---|---|
| Patrick Formato | $215,980 |
| John Francher | $603 |
| David Freid | $83,674 |
| Moshe Freilich | $81,393 |
| Andrew Freundlich | $362,381 |
| Sigmund Freundlich | $362,381 |
| Leo Friedman | $80,652 |
| David Gast | $24,041 |
| Louis Gellis | $9,543 |
| William Gillick | $36,248 |
| Rivky Goldberger | $83,674 |
| Leon Goldenberg | $118,264 |
| Jeffrey Goldstein | $127,555 |
| Anne Gottlieb | $18,424 |
| Miklows Gottlieb | $350,038 |
| Niklos Gottlieb | $63,788 |
| Solomon Green | $118,264 |
| Joel Greenberg | $215,980 |
| Eric Greenberger | $63,005 |
| Eli Greenspan | $215,980 |
| Steven Greenstein | $215,980 |
| Avrumi Grossman | $156,984 |
| Marton Guttman | $27,042 |
| Valarie Henry | $12,890 |
| Johanan Hirsch | $121,633 |
| Leopold Hirsch | $121,633 |
| Libe Hirsch | $118,264 |
| Ruth Hirsch | $722,600 |
| David Hoffman | $362,381 |
| Pinchos Hoffman | $77,535 |
| Pinchus Hoffman | $362,381 |
| Steven J Eisman | $3,155,818 |
| Anthony J. Bacchi | $215,980 |
| Jack Janklowicz | $214,052 |
| Leonard Janklowicz | $214,052 |
| Jack Janklowitz | $18,348 |
| Shorefront Jewish Geriatric Center | $122,460 |
| David Jones | $170,989 |
| Judith Jones | $153,890 |
| Mendel Kaff | $81,393 |
| Eric Kalt | $77,535 |
| Yoel Karpen | $45,812 |
| Miriam Karpf | $5,711 |

| | |
|---|---|
| Allen Kass | $215,980 |
| Martin Kass | $215,980 |
| Martin Katz | $48,241 |
| Shelley Katz | $215,980 |
| Shelly Katz | $48,241 |
| Yosef Kaufman | $18,424 |
| Alan Kessler | $264,221 |
| Arnold Klapper | $121,633 |
| George Klein | $362,381 |
| Larry Klein | $362,381 |
| Eleanor Kluger | $2,500 |
| Robert Kolman | $77,535 |
| Dean Korlik | $633,052 |
| William Korn | $362,381 |
| Irina Kostesky | $362,381 |
| Howard Krant | $219 |
| Ephram Lahasky | $24,041 |
| Benjamin Landa | $3,622,729 |
| David Landa | $413,572 |
| Yechiel Landa | $83,674 |
| Nathan Landau | $41,493 |
| James Lapolla | $106,863 |
| Tibor Lebovich | $244,164 |
| Morty Lehasky | $120,205 |
| David Leifer | $307,586 |
| Barry Leistner | $215,980 |
| Chana Lerner | $578,361 |
| Michael Levitan | $215,980 |
| Rich Levitan | $215,980 |
| Teddy Lichtscein | $83,674 |
| Neuman Lj Partners | $118,264 |
| Isaac Madeb | $118,264 |
| Dovi Marc Faivish | $48,241 |
| Sam Mayerovitz | $413,572 |
| Girshas Minster | $362,381 |
| Neuman Mn Partners | $236,527 |
| Gavriel Mordechaev | $18,348 |
| Gabriel Mordechey | $83,674 |
| Sharyn Mukamal | $215,980 |
| Katherine Muller | $48,241 |
| Laurie Netzer | $362,381 |
| Leo Oberlander | $32,991 |
| Sander Oberlander | $2,199 |
| Milton Ostreicher | $83,674 |

| | |
|---|---|
| Susan Ostreicher | $1,441,097 |
| Irwin Peckman | $215,980 |
| Ben Philipson | $6,267,330 |
| Bent Philipson | $215,980 |
| Deborah Philipson | $776,792 |
| Robert Pines | $215,980 |
| Israel Pollak | $77,535 |
| Jacob Pollak | $77,535 |
| Natan Pollak | $118,264 |
| Renee Pollak | $159,471 |
| Sylvia Pollak | $118,264 |
| Theodore Pollak | $83,674 |
| Michael Pruzansky | $77,535 |
| Diana R. Koehler | $219 |
| Jonathan Redner | $307,586 |
| Lawrence Reichenberger | $215,980 |
| Mark Reisman | $157,006 |
| Mayer Rispler | $123,491 |
| Brian Rosenman | $32,991 |
| Kenneth Rozenberg | $1,756 |
| Berish Rubenstein | $215,980 |
| Dina Rubenstein | $77,535 |
| Rivkie Rubenstein | $118,264 |
| Ira Rubin | $48,241 |
| Malky Saffran | $63,788 |
| Boruch Schepps | $14,923 |
| Pamela Schepps | $219 |
| Nat Scherman | $18,424 |
| Richard Schildron | $215,980 |
| Samuel Schlesinger | $371 |
| Jacob Schoenberger | $26,579 |
| Michael Schwartz | $362,626 |
| Leslie Shafrank | $362,381 |
| Henry Shayovitz | $215,980 |
| Agnes Shemia | $144,574 |
| Jeff Shemia | $144,574 |
| Alexander Sherman | $50,020 |
| Israel Sherman | $114,978 |
| Leah Sherman | $50,020 |
| Nat Sherman | $362,381 |
| Samuel Sherman | $256,674 |
| Warren Sherman | $307,586 |
| Hindy Sirkis | $215,980 |
| Moshe Sirkis | $831,189 |

| | |
|---|---|
| Alexander Skoczlas | $118,264 |
| Joseph Skoczylas | $118,264 |
| Tali Skoczylas | $118,264 |
| Dominic Spira Md | $9,223 |
| Jonathan Steinberg | $478 |
| Miriam Steinberg | $478 |
| Ronald Stern | $97,289 |
| Mariam Sternberg | $226,100 |
| Lorraine Takesky | $215,980 |
| Mitch Teller | $48,241 |
| Kenneth Tessler | $215,980 |
| Aaron Unger | $83,674 |
| unknown | $4,350,317 |
| Eila Vinitzky | $21,069 |
| Yuliya Vinokurova | $488,328 |
| Jeffrey Vogel | $215,980 |
| Sherman Vogel | $215,980 |
| Peggy Weberman | $118,264 |
| Philip Weberman | $118,264 |
| Toby Weinberger | $83,674 |
| Zoltan Weinberger | $27,042 |
| Regina Weinstock | $121,633 |
| Ari Weiss | $157,006 |
| Berish Weiss | $19,754 |
| Berry Weiss | $108,510 |
| Michael Weiss | $215,980 |
| Robyn Weiss | $362,381 |
| Shlomie Weiss | $41,493 |
| Chaya Willinger | $63,005 |
| Robert Wolf | $83,674 |
| Peyman Younesi | $4,674 |
| Mark Zaffrin | $215,980 |
| Ephraim Zagelbaum | $6,022 |
| Kenneth Zitter | $494,557 |
| David Zohler | $156,984 |

7.    On the Seventh Cause of Action Against Identified Employer Defendants Recognizing Subrogation Rights of the Carrier Defendant and the Derivative Defendant for Benefits paid to the Class Defendant under an ERISA Plan and Program:

| Employer Defendant | Recoverable |
|---|---|
| Absolut | $2,970,916 |
| All American School Bus | $2,493,300 |
| Allstate | $260 |

| | |
|---|---|
| Amerifalls | $735,809 |
| B&B | $35 |
| Baypark | $4,916,543 |
| Bayview Home | $9,036 |
| BeSure | $26,831 |
| Birchwood | $515,543 |
| Blue Star | $460 |
| Bronx Gardens | $1,033,481 |
| Brookhaven | $1,523,180 |
| Brookside | $2,082,518 |
| Caring Companion | $616 |
| Caring Professionals | $1,616,487 |
| Cayuga Ridge | $56,795 |
| Clear Choice | $0 |
| Clinical Staffing Resources | $449,516 |
| Cold Spring | $4,669,750 |
| Comfort Loving | $26,539 |
| Comprehensive Orleans | $256,372 |
| Comprehensive Williamsville | $52,046 |
| Curis Medical | $339 |
| Cypress Gardens | $239,341 |
| Diamond Hill | $72,556 |
| Ditmas | $8,132 |
| Eagle Home Care | $59,806 |
| Eastchester | $403,749 |
| Edison | $840,031 |
| Elcor | $348,340 |
| Evergreen Court | $23,689 |
| Exclusive Nursing | $115,878 |
| Expert Care Staffing | $177,247 |
| Fiddlers Green | $654,752 |
| Five Star | $6,287,223 |
| Garden Care | $526,406 |
| Golden Gate | $707,259 |
| Golden Hill | $3,027,182 |
| Golden Living | $81,590 |
| Grace Plaza | $1,064,528 |
| Greater New York | $164,573 |
| Greater New York Services | $2,230 |
| Greenbriar | $1,217 |
| Hamptons | $2,450,079 |
| Harbour Health | $669,119 |
| Harrys Nurses | $185,981 |

| | |
|---|---|
| HCS Home Care | $1,433,220 |
| Home Attendant Services of Hyde Park | $4,676,799 |
| Home Health Management | $285,176 |
| Hudson Pointe | $236,422 |
| Kingsbridge | $1,152,766 |
| Laconia | $342,805 |
| Little Neck | $559,237 |
| Living Waters | $15,467 |
| Magna | $1,462 |
| MB Food Processing | $5,205,735 |
| Mega Staffing | $341,777 |
| Monsey Family Drugstore | $508 |
| Mrs. Mary's | $368,837 |
| Nassau | $2,753,939 |
| Nathan Miller | $8,432 |
| New Carlton | $370,422 |
| New Roc | $11,565 |
| New Surfside | $129,750 |
| Northwoods | $19,244 |
| Norwich Rehab | $4,374 |
| Palffy | $12,165 |
| Park Avenue | $1,907,804 |
| Parkview | $527,670 |
| Pathways | $231,653 |
| Pharney | $13,879 |
| Preferred Home Care | $436,785 |
| Prokeep | $1,491 |
| Putnam Ridge | $793,491 |
| Ramapo | $783 |
| Riverdale | $2,722,124 |
| Rosewood | $297,308 |
| Ross Health | $258,701 |
| SC & BP | $1,647,681 |
| Seagate | $1,573,258 |
| Sentosa | $7,623 |
| Southpoint | $2,043,778 |
| Springcreek | $405,378 |
| STAT Portable | $1,324 |
| Sunharbor | $707,397 |
| The Landa Group | $5,060,662 |
| The Plaza Rehab | $3,524,976 |
| Throgs Neck | $1,891,317 |

| | |
|---|---|
| Townhouse | $1,074,854 |
| Upstate Diary | $32,188 |
| West Lawrence | $94,907 |
| White Plains | $512,383 |
| Woodmere | $954,718 |

8.      On the Eighth Cause of Action a Declaratory Judgment declaring that the acts of the Employer Defendants, Owner Operator Defendants, and the Union Defendant are illegal employment practices in violation of 42 U.S.C. § 2000e-2, and award to the Plaintiff on behalf of the Class, actual damages for lost wages, for lost opportunity and compensation as money damages to be determined at trial in this litigation;

9.      On the Ninth Cause of Action a Judgment in favor of the Plaintiff against each of the named Employer Defendants as set forth in the Second, Third, Fourth, Fifth, Sixth and Seventh Causes of Action;

10.      On the Tenth Cause of Action a Judgment in favor of the Plaintiff against each of the named Employer Defendants as set forth in the Second, Third, Fourth, Fifth, Sixth and Seventh Causes of Action;

11.      On the Eleventh Cause of Action a Judgment in favor of the Plaintiff against each of the named Employer Defendants as set forth in the Second, Third, Fourth, Fifth, Sixth and Seventh Causes of Action;

12.      On the Twelfth Cause of Action against the Employer Defendants by Plaintiffs as Third-Party Beneficiaries for Benefits Provided for in a Stipulation of Settlement of September 24, 2013;

This is all together with interest and the costs and disbursements of this action;

All together with such other and further relief as shall seem just and proper under the circumstances.

**Pursuant to Fed. R. Civ. P. 39, demand is made for trial by jury on all the issues so triable.**

Dated: March 15, 2021

KERNAN PROFESSIONAL GROUP, LLP
James M. Kernan, Esq., of Counsel
Bar Role # JK1242
26 Broadway, 19th Floor,
New York, New York 10004
Phone:(212) 697-9084

Fax (212) 656-1213
[jkernan@kernanllp.com](mailto:jkernan@kernanllp.com)